Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
          mdelaney@bakerlaw.com
          ffarivar@bakerlaw.com

Proposed Attorneys for
Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Lead Case No.: 8:17-bk-13077-TA |
| HOAG URGENT CARE-TUSTIN, INC., et al., | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8:17-bk-13079-TA; 8:17-bk-13080-TA; 8:17-bk-13089-TA; 8:17-bk-13090-TA) |

Affects:

■  All Debtors

☐  Cypress Urgent Care, Inc., a California corporation, ONLY

☐  Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY

☐  Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY

☐  Hoag Urgent Care – Orange, Inc., a California corporation, ONLY

☐  Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY

☐  Laguna-Dana Urgent Care, Inc., a California corporation, ONLY

**EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. 363, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED PURSUANT TO 11 U.S.C. 361 AND 363, AND (3) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF**

Hearing:
Date:    August 4, 2017
Time:    10:00 a.m.
Place:    Courtroom 5B
          U.S. Bankruptcy Court
          411 West Fourth Street
          Santa Ana, CA 92701

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

**JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL INTERESTED**

**PARTIES AND/OR THEIR COUNSEL OF RECORD:**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned, jointly administered bankruptcy cases (the "Bankruptcy Cases") hereby respectfully submit the within motion (the "Motion"), pursuant to pursuant to sections 105, 361, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Central District of California (the "Local Rules"), seeking entry of an order (the "Interim Order") authorizing the Debtors to utilize cash collateral for a term of no less than sixty (60) days in accordance with the terms discussed *infra* and budget appended hereto as **Exhibit B**, and scheduling a hearing on the authorization to utilize cash collateral on a final basis. In support thereof, the Debtors respectfully submit the following:

<div align="center"><b><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></b></div>

**I.        BASIS FOR EMERGENCY RELIEF**

The Debtors move for entry of the Interim Order on an emergency basis pursuant to Rule 9075-1 of the Local Rules.

The Debtors operate five (5) urgent care clinics throughout Southern California (the "Clinics"). Opus Bank ("Opus") asserts a cross-collateralized security interest in most, if not all, of the Debtors' assets, including, without limitation, inventory, equipment, accounts receivables (including healthcare-insurance receivables), fixtures and general intangibles (collectively, the "Collateral"), pursuant to a Commercial Security Agreement dated September 26, 2013. The Debtors require the use of cash collateral in order to pay the costs and expenses associated with the operation of the Clinics, including, without limitation, vendors and suppliers as well as payroll, which the Debtors must pay in short order or risk serious and irreparable injury to the business and the envisioned reorganization.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## II.      STATEMENT OF FACTS

### A.      Jurisdiction and Venue

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue of the Bankruptcy Cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

### B.      The Debtors and the Chapter 11 Filings

2.      On August 2, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").  The Court authorized the joint administration of the Bankruptcy Cases by order entered on August 3, 2017.  The Debtors continue to operate and manage their affairs as debtors and debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee, examiner, or patient care ombudsman, and no committee has been appointed in any of the Bankruptcy Cases.

3.      The Debtors operate five (5) urgent care medical clinics located throughout Southern California.  The operation of the Clinics depends on several key elements: (a) the availability of the requisite equipment, products, and medication used to examine, diagnose, and treat patients; (b) the services of the healthcare professionals employed by the Debtors; (c) the services of Radiant Physician Group ("RPG"), which provides managerial services for the Debtors as well as the doctors and physician assistants that treat patients at the Clinics; and (d) the availability of suitable facilities in which to operate the Clinics.  In sum, the Debtors have monthly operational expenses of approximately $629,000.  In order to finance these essential expenditures, the Debtors primarily rely upon revenues from the operation of the Clinics.  In total, the Debtors generate approximately $674,000 per month from the operation of the Clinics.  An analysis of the Debtors' operational revenues and expenses is set forth in the budget (the

- 3 -

611143862.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"Budget") attached to the Declaration of Chad Kurtz as **Exhibit B** and incorporated herein by reference.

### C.    Opus Security Interest[1]

4.      On or about September 26, 2013, the Debtors entered into a series of loans with Opus.  More precisely, on or about September 26, 2013, debtors Laguna-Dana Urgent Care, Inc. ("LDUC") and Cypress Urgent Care, Inc. ("CUC") borrowed from Opus the principal amount of $1,435,000.00 and, in exchange for such loan, issued a Promissory Note dated September 26, 2013 (the "Laguna Note 1") and executed a Commercial Security Agreement.  At present, the balance due under the Laguna Note 1 is approximately $1,209,465.00.  The principal and interest payments under the Laguna Note 1 total $12,453.30 per month, with interest accruing at a rate of 6.350% *per annum*.

5.      On or about September 26, 2013, LDUC and CUC also borrowed from Opus the principal amount of $250,000.00 and, in exchange for such loan, issued a Promissory Note dated September 26, 2013 (the "Laguna Note 2" and, together with Laguna Note 1, the "Laguna Notes") and executed the Security Agreement.  At present, the balance due under the Laguna Note 2 is approximately $206,612.00.  Payment of the balance due under the Laguna Note 2 is due in full with interest upon demand.

6.      On or about September 26, 2013, debtors Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., and Hoag Urgent Care-Tustin, Inc. (collectively, the "Hoag Debtors") borrowed from Opus the principal amount of $2,320,000.00 and, in exchange for such loan, issued a Promissory Note dated September 26, 2013 (the "Hoag Note") and executed the Security Agreement.  At present, the balance due under the Laguna Note is approximately $1,977,774.00.  The current principal and interest payments under Hoag Note total $20,133.56, with interest accruing at a rate of 6.350% *per annum*.

7.      Under the Security Agreement, the indebtedness incurred by LDUC, CUC, and the Hoag Debtors pursuant to the Laguna Notes and Hoag Note is purportedly secured by, among

---

[1] The Debtors believe that Opus is the only secured creditors asserting a security interest in the Collateral or other assets utilized in the operation of the Debtors' business.

611143862.1

1   other things, accounts, accounts receivable, general intangibles, monies, and equipment of one or

2   more of the Debtors, and any revenues and proceeds derived therefrom.

3          **D.     Use of Cash Collateral is Essential to Continued Operations**

4        8.     Opus asserts a security interest in the funds held by the Debtors as well as the

5   other assets of the Debtors convertible to cash, including, without limitation, the inventory,

6   equipment and accounts receivable of the Debtors.  The Debtors require funds to maintain

7   operations and pay expenses related thereto, including, without limitation, payroll, insurance,

8   trade payables, real property lease obligations, and utilities.  Some of these expenses, including

9   payroll and trade payables, are reoccurring obligations for which payment is presently due or will

10   become due within the next 48 hours, which necessitates immediate access to liquid funds to

11   cover such expenses.  Given the breadth of the security interest asserted by Opus, the Debtors are

12   unable to pay the obligations and expenses essential to the operation of the Clinics and, by

13   extension, the prospective reorganization, without first obtaining Court approval.

14        9.     Absent the authority to use cash collateral, the Debtors will immediately default on

15   payroll obligations, the management fee obligations due to RPG, as well as lease obligations

16   related to one or more of the properties housing the Clinics.  If the Debtors were unable to meet

17   these obligations, the Debtors believe that they may lose key employees as well as the services of

18   the doctors and healthcare professionals provided by RPG, and, as a result, could be rendered

19   unable to continue operations, which would render reorganization improbably, if not impossible.

20          **E.     Business Valuation and Adequate Protection**

21        10.     At present, the balances owing to Opus on account of the Laguna Notes and Hoag

22   Note total approximately $3,393,850.00.  As discussed *infra*, the Debtors intend to use the cash

23   collateral to finance their continued business operations and, thereby, preserve the value of the

24   Collateral.  As such, the Debtors believe that Opus' interest in the cash collateral is adequately

25   protected.  Despite the protections afforded to Opus by the continued operation of the businesses,

26   Opus has not consented to the use of the cash collateral.

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611143862.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## III.    DISCUSSION

Section 363(c)(2) of the Bankruptcy Code governs a debtor's use of cash collateral and provides, in pertinent part, as follows:

> (2) The trustee may not use, sell or lease cash collateral…. unless: …[¶]… (A) each entity that has an interest in such cash collateral consents; or …[¶]… (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363 (c)(2).  Pursuant to § 1107(a), a debtor-in-possession has all the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in accordance with § 363. *See* 11 U.S.C. § 1107(a).

As with most debtors whose primary assets are subject to liens, the Debtors have an exigent and compelling need to use cash collateral.  As noted in *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its effort to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

727 F.2d 1017, 1019 (11th Cir. 1984)(internal citation omitted)(*upholding lower court's finding that, where a secured lender's collateral was worth less than the amount of the secured lender's claims, lender would nevertheless by adequately protected even if the debtor used gross profits obtained in the debtor's business operation so long as the debtor paid the secured lender the amount the lender would receive from the inventory in liquidation*).

Section 363(e) of the Bankruptcy Code provides, however, that upon the request of an entity that has an interest in property proposed to be used by the debtor, the court may prohibit or condition such use "as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363.  In other words, the Court may authorize the Debtors' use of any cash collateral of Opus upon determining that the interest of Opus will be adequately protected if such use is authorized. *See In re McCombs Properties VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988).

Section 361 of the Bankruptcy Code identifies various methods for providing adequate protection.  11 U.S.C. § 361.  The interest requiring adequate protection under § 363(e) is the

611143862.1

value of the collateral subject to the secured creditor's security interest. *See United States v. Timbers of Inwood Forest*, 484 U.S. 362, 108 S.Ct 626 (1988). Such security interest is adequately protected, regardless of the method utilized, so long as the debtor's use of the collateral will not place the collateral at risk. *Id.*, 108 S.Ct at 633. In evaluating the sufficiency of adequate protection, courts must (1) establish the value of the secured creditor's interest in the debtor's property, (2) identify the risk, if any, to the value of the secured creditor's cash collateral resulting from the debtor's use, and (3) determine whether the proposed adequate protection protects the value of the cash collateral as nearly as possible against risk to the diminution of that value. *McCombs, supra*, 86 B.R. at 267, *quoting In re Martin*, 761 F.2d 472 (8th Cir. 1985).

If there is a question as to whether Opus is adequately protected, the Court should find that the proposed adequate protection is sufficient in deference to the public policy favoring reorganization. *See Chrysler Credit Corp., supra*, 727 F.2d at 1019.

> Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor … are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of Cash Collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.

*Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987) (internal citations omitted). In granting the debtor's motion to use cash collateral, the Court in *In re Heaton Inc.* further stated:

> At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.

6 B.R. 493, 496 (Bankr. W.D. Mo. 1980).

In the instant case, the purported cash collateral includes, *inter alia*, cash and deposits, inventory, and accounts receivables. Due to the nature of Debtors' businesses, the value of the Collateral depends on the continued operation of the Clinics, which ensures that the Debtors

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611143862.1

1 continue generating accounts receivable and revenues necessary to maintain the business during

2 the Bankruptcy Cases.  Thus, the greatest threat to the value of the cash collateral (and Opus'

3 interest therein) is not its use; rather, it is the harm coincident with the cessation or reduction of

4 the Debtors' operation, which is all but guaranteed if the Debtors are not permitted to utilize cash

5 collateral immediately.  *See In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, (Bankr. D. Del.

6 1996)("*[I]f there is no actual diminution in the value of collateral through the date of the*

7 *hearing, and the [Debtor] can operate profitably post-petition, [the secured creditor] is*

8 *adequately protected for the use of its cash collateral.*"); *see also In re Wrecclesham Grange,*

9 *Inc.*, 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) ("as long as the debtor generates a continuous

10 income stream, the debtors use of [cash collateral] does not diminish the value of the collateral.");

11 *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 52, 56 (Bankr. N.D.N.Y. 1992) (finding a

12 secured creditor's interest in collateral adequately protected when cash collateral was applied to

13 normal operating and maintenance expenditures on the collateral); *In re Cardinal Indus., Inc.*, 118

14 B.R. 971, 981 (Bankr. S.D. Ohio 1990) (ruling that secured lenders were adequate protected by

15 debtors' use of funds to maintain and manage the encumbered assets).  Accordingly, the Debtors'

16 continued operation of the Clinics, in and of itself, constitutes adequate protection for Opus'

17 interest in the Collateral.

18 **IV.    NOTICE**

19       Per the Court's instruction, notice of the emergency hearing was provided telephonically

20 and/or by electronic mail to and copies of the Motion has been served via electronic-mail or

21 overnight mail on (a) the Office of the United States Trustee, (b) the ten largest unsecured

22 creditors in each of the Debtors' estates, (c) secured creditors and/or counsel, if any, and (d) any

23 party who has requested special notice.

24 **V.    CONCLUSION**

25       WHEREFORE, the Debtors respectfully request that the Court enter an order: (1) granting

26 the Motion in its entirety; (2) finding notice of the motion due and proper; (3) finding adequate

27 grounds to issues such order on an emergency basis; (4) finding adequate grounds to authorize the

28 use of cash collateral on an interim basis; (5) authorizing the Debtors, directly or through RPG, to

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

611143862.1

1   use and expend on behalf of the Debtors and their estate, on an interim basis, proceeds of the

2   Collateral for a period of no less than sixty (60) days, but up to and including the date of any final

3   hearing on the Debtors' use of cash collateral, as may be set by the Court pursuant to the Budget;

4   (6) authorizing the Debtors, directly or through RPG, to make monthly expenditures in an amount

5   not to exceed 115% of the expenditures set forth in the Budget without approval of Opus or

6   further Court order; (7) authorizing the Debtors, directly or through RPG, to make monthly

7   expenditures in an amount in excess of 115% of the expenditures set forth in the Budget with

8   written approval of Opus, which approval shall not be unreasonably withheld, but without further

9   Court order; (8) authorizing the Debtors, directly or through RPG, to carry-forward any unused

10  portion of the Budget in any monthly period into the following period(s) and, thereby, increase

11  the funds available to the Debtors, *provided, however,* that such funds may only be used to pay

12  expenses related to the operations of the Debtors or expenses related to the Bankruptcy Cases; (9)

13  finding that Opus is adequately protected by the maintenance of the Debtors' business; (10)

14  ordering any and all financial institutions holding assets of the bankruptcy estates to allow the

15  Debtors to utilize such funds notwithstanding any contrary direction from Opus or any other third

16  party; and (11) granting such further and additional relief deemed warranted by the Court.

17

18  Dated:    August 3, 2017              Respectfully submitted,

19

20                                       **BAKER & HOSTETLER LLP**

21                                       By:    /s/ Michael T. Delaney
                                                Ashley M. McDow
22                                              Michael T. Delaney
                                                Fahim Farivar
23

24                                       Proposed Attorneys for
                                         Debtors and Debtors in Possession
25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611143862.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## DECLARATION OF JENNIFER AMSTER

I, Jennifer Amster, declare as follow:

1.      I am the Chief Executive Officer of Radiant Physician Group, the management company for the debtors and debtors in possession (the "Debtors") in the Bankruptcy Cases.  As such, I am generally responsible for managing the operations of the Debtors and, thus, am familiar with the Debtors' operations, assets, and liabilities.  I make this declaration in support of the *Emergency Motion for Order (1) Authorizing the Debtors to Utilize Cash Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11 U.S.C. § 362 and 363, and (3) Granting Relating Relief* (the "Motion").  Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to the same.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

2.      The Debtors operate five (5) urgent care medical clinics located throughout Southern California (collectively, the "Clinics").  By and through the clinics, the Debtors provide a wide-array of non-emergency medical services.

3.      The operation of the Clinics depends on several key elements: (a) the availability of the requisite equipment, products, and medication used to examine, diagnose, and treat patients; (b) the services of the healthcare professionals employed by the Debtors; (c) the services of Radiant Physician Group ("RPG"), which provides managerial services for the Debtors as well as the doctors and physician assistants that treat patients at the Clinics; and (d) the availability of suitable facilities in which to operate the Clinics.  In sum, the Debtors have monthly operational expenses of approximately $629,000.  In order to finance these essential expenditures, the Debtors primarily rely upon revenues from the operation of the Clinics.  In total, the Debtors generate approximately $674,000 per month from the operation of the Clinics.

4.      On or about September 26, 2013, the Debtors entered into a series of loans with Opus.  More precisely, on or about September 26, 2013, debtors Laguna-Dana Urgent Care, Inc. and Cypress Urgent Care, Inc. borrowed from Opus the principal amount of $1,435,000.00 and, in exchange for such loan, issued a Promissory Note dated September 26, 2013 and executed a

1   Commercial Security Agreement.  At present, the balance due under the Laguna Note 1 is

2   $1,209,465.00.  The principal and interest payments under the Laguna Note 1 total $12,453.30

3   per month, with interest accruing at a rate of 6.350% *per annum*.

4        5.     On or about September 26, 2013, LDUC and CUC also borrowed from Opus the

5   principal amount of $250,000.00 and, in exchange for such loan, issued a Promissory Note dated

6   September 26, 2013 and executed the Security Agreement.  At present, the balance due under the

7   Laguna Note 2 is $206,612.00.  Payment of the balance due under the Laguna Note 2 is due in

8   full with interest upon demand.

9        6.     On or about September 26, 2013, debtors Hoag Urgent Care-Anaheim Hills, Inc.,

10  Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., and Hoag Urgent

11  Care-Tustin, Inc. borrowed from Opus the principal amount of $2,320,000.00 and, in exchange

12  for such loan, issued a Promissory Note dated September 26, 2013 and executed a Commercial

13  Security Agreement.  At present, the balance due under the Laguna Note is $1,977,774.00.  The

14  current principal and interest payments under Hoag Note total $20,133.56, with interest accruing

15  at a rate of 6.350% *per annum*.

16       7.     As of the Petition Date, the balance due under the Laguna Notes and Hoag note

17  was approximately $3,393,850.00.

18       8.     The Debtors require funds to maintain operations and pay expenses related thereto,

19  including, without limitation, payroll, insurance, trade payables, real property lease obligations,

20  and utilities.  Some of these expenses, including payroll and trade payables, are reoccurring

21  obligations for which payment is presently due or will become due within the next 48 hours,

22  which necessitates immediate access to liquid funds to cover such expenses.  Given the breadth of

23  the security interest asserted by Opus, the Debtors are unable to pay the obligations and expenses

24  essential to the operation of the Clinics and, by extension, the prospective reorganization.

25       9.     Absent the authority to use cash collateral, the Debtors will default on payroll

26  obligations, the management fee obligations due to RPG, as well as lease obligations related to

27  one or more of the properties housing the Clinics.  If the Debtors were unable to meet these

28  obligations, the Debtors may lose key employees and, as a result, could be incapable of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

611143862.1

continuing operations, which would render reorganization improbably, if not impossible.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of August 2017, at Orange, California.

/s/ Jennifer Amster (signature to follow)
Jennifer Amster

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

611143862.1

**DECLARATION OF CHAD KURTZ**

I, Chad Kurtz, hereby declare:

1.      I am a director of Force 10 Partners, LLC (the "Force 10"), the proposed financial advisor for the debtors and debtors in possession in the above-captioned bankruptcy cases.  I submit the within declaration in support of the *Emergency Motion for Order (1) Authorizing the Debtors to Utilize Cash Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11 U.S.C. § 362 and 363, and (3) Granting Relating Relief* (the "Motion"). Unless otherwise stated, I have personal knowledge of the matters set forth herein, and if called as a witness, could and would competently testify to the same.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

2.      Force 10 provides financial consulting and advice to public and private companies regarding complex transactions, including, without limitation, business restructurings, litigation support, fiduciary services, and investment banking services.  I received an MBA from New York University, Stern School of Business and am an inactive Certified Public Accountant.  True and correct copies of my biography and firm profile are attached hereto as **Exhibit A**, and incorporated herein and into the Motion by this reference.

3.      Over the past several weeks, I have worked closely with the Debtors to assist the Debtors with analyzing their financial affairs.  In this process, I have reviewed and analyzed historical financial data for the Debtors.  Based on the information I reviewed regarding historical financial performance of the Debtors, information and documentation regarding the current financial performance of the Debtors provided by the Debtors, and certain assumptions and estimates made regarding future potential income, among other things, my colleagues and I have prepared financial projections outlining the Debtors' operational revenues and expenses, which are set forth in the budget attached hereto as **Exhibit B**.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 3rd day of August 2017, at Newport Beach, California.

Chad Kurtz
_____
Chad Kurtz

Baker & Hostetler LLP
ATTORNEYS AT LAW
Los Angeles

EMERGENCY MOTION FOR ORDER AUTHORIZING THE INTERIM USE OF CASH COLLATERAL

# EXHIBIT A



HOME (/#HOME-SECTION)    COMPANY OVERVIEW (/#OVERVIEW-SECTION)
SERVICES (/#OUR-SERVICES-SECTION)

TEAM (/#TEAM-SECTION)    RECORD (/#TRACK-RECORD-SECTION)

CONTACT (/#CONTACT-US-SECTION)

# CHAD KURTZ

Office: (917) 514-6500
Email: ckurtz@force10partners.com (Mailto: ckurtz@force10partners.com)

Chad specializes in insolvency matters, buy and sell side M&A transactions, and complex modeling/financial analysis. Chad works closely with clients to develop cash collateral forecasts, analyze and improve business operations/cost structures, prepare bankruptcy compliance forms, develop bankruptcy plan projections, and analyze creditor claims. Prior to joining Force 10, Chad worked at BSW & Associates. Chad also spent 10 years at Ernst & Young LLP, including serving as a Director in its Corporate Finance practice, where he led restructuring advisory engagements. In that capacity, Chad has represented debtors, secured lenders, and creditors' committees, advising on businesses that ranged from start-ups to Fortune 500 companies. He started his career with Ernst & Young's Audit department in New York City and ultimately transferred to the Los Angeles office, where he helped lead the West Coast restructuring group that was part of the Corporate Finance practice.

Chad received his MBA from New York University, Stern School of Business and his bachelor's degree from Williams College, and he is a CPA (inactive).

BACK TO TEAM (/#TEAM-SECTION)

FORCE 10 PARTNERS, 20341 SOUTHWEST BIRCH STREET, SUITE 220, NEWPORT BEACH, CA, 92660  949 357 2360  CONTACT@FORCE10PARTNERS.COM (MAILTO:CONTACT@FORCE10PARTNERS.COM)

© 2017 Force Ten Partners LLC

# EXHIBIT B

**Radiant Physician Group**
**Cash Flow Projections - Opus Clinics**
HUCA, HUCH, HUCT, CUC & LDUC

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| **Cash Receipts** | | | | | |
| Receipts from Patients & Insurance | 714,553 | 576,856 | 700,445 | 1,991,854 | 100.0% |
| | 714,553 | 576,856 | 700,445 | 1,991,854 | 100.0% |
| | | | | | |
| **Operating Disbursements** | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (202,106) | (202,106) | (202,106) | (606,319) | -30.4% |
| Payroll (incl Taxes) | (129,152) | (129,152) | (129,152) | (387,457) | -19.5% |
| Employee Benefits | (17,500) | (17,500) | (17,500) | (52,500) | -2.6% |
| Rent | (62,251) | (62,251) | (62,251) | (186,752) | -9.4% |
| Deferred Rent | (5,769) | (5,769) | (5,769) | (17,307) | -0.9% |
| Equipment Leases | (6,578) | (6,578) | (6,578) | (19,734) | -1.0% |
| Royalty Expense | (16,486) | 0 | 0 | (16,486) | -0.8% |
| Outsourced Billing Fees | (35,728) | (28,843) | (35,022) | (99,593) | -5.0% |
| Medical Supplies | (19,269) | (20,246) | (19,200) | (58,715) | -2.9% |
| Utilities | (14,396) | (14,396) | (14,396) | (43,188) | -2.2% |
| Allocated Malpractice Insurance | (8,125) | (8,125) | (8,125) | (24,375) | -1.2% |
| Allocated Insurance (WC, GL, Auto) | (11,696) | (11,696) | (11,696) | (35,088) | -1.8% |
| Radiology Fees | (4,591) | (4,831) | (4,596) | (14,018) | -0.7% |
| Office Expenses | (9,940) | (9,940) | (9,940) | (29,819) | -1.5% |
| Marketing | (1,396) | (1,396) | (1,396) | (4,187) | -0.2% |
| Outside Services | (4,714) | (4,714) | (4,714) | (14,143) | -0.7% |
| Repairs & Maintenance | (6,608) | (6,608) | (6,608) | (19,823) | -1.0% |
| Credit Card Processing | (3,393) | (4,077) | (3,307) | (10,777) | -0.5% |
| Bank Fees | (2,337) | (2,337) | (2,337) | (7,012) | -0.4% |
| Electronic Medical Record Fees | (2,291) | (2,291) | (2,291) | (6,873) | -0.3% |
| Automobile | (1,429) | (1,429) | (1,429) | (4,286) | -0.2% |
| Recruiting | (1,125) | (1,125) | (1,125) | (3,375) | -0.2% |
| Licenses & Permits | (207) | (207) | (207) | (622) | 0.0% |
| Laboratory Fees | (340) | (356) | (338) | (1,034) | -0.1% |
| Personal Property Taxes | (19,682) | 0 | 0 | (19,682) | -1.0% |
| Other Operating | (1,848) | (1,848) | (1,848) | (5,544) | -0.3% |
| | (588,956) | (547,821) | (551,931) | (1,688,709) | -84.8% |
| | | | | | |
| **Clinic-level Cash Flows** | 125,596 | 29,035 | 148,514 | 303,145 | 15.2% |
| | | | | | |
| RPG Management Fees | (51,949) | (51,949) | (51,949) | (155,847) | -7.8% |
| | | | | | |
| **Net Operating Cash Flows** | 73,647 | (22,914) | 96,565 | 147,298 | 7.4% |
| | | | | | |
| **Restructuring Disbursements** | | | | | |
| Debtor's Legal Counsel | 0 | 0 | (35,000) | (35,000) | -1.8% |
| Debtor's Financial Advisor | 0 | 0 | (17,500) | (17,500) | -0.9% |
| | 0 | 0 | (52,500) | (52,500) | -2.6% |
| | | | | | |
| **Net Cash Flows** | 73,647 | (22,914) | 44,065 | 94,798 | 4.8% |
| Beginning Cash | 279,793 | 353,440 | 330,526 | 279,793 | |
| | | | | | |
| **Ending Cash** | 353,440 | 330,526 | 374,590 | 374,590 | |

| | Petition Date | | | | |
|---|---|---|---|---|---|
| **Collateral Package** | | | | | |
| Cash | 279,793 | 353,440 | 330,526 | 374,590 | |
| Accounts Receivable, net | 1,581,583 | 1,476,127 | 1,538,484 | 1,445,150 | |
| | 1,861,375 | 1,829,566 | 1,869,010 | 1,819,740 | |
| | | | | | |
| Estimated Opus Bank Debt | 3,393,850 | 3,393,850 | 3,393,850 | 3,393,850 | |
| Interest Accruing at Default Rate | 0 | 32,169 | 64,338 | 96,507 | |
| | 3,393,850 | 3,426,019 | 3,458,188 | 3,490,357 | |
| | | | | | |
| Equity Cushion (Deficiency) in $ | (1,532,475) | (1,596,453) | (1,589,179) | (1,670,617) | |
| Equity Cushion (Deficiency) % | -45.2% | -46.6% | -46.0% | -47.9% | |

Radiant Physician Group
**Cash Flow Projections - HUCA**

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Receipts from Patients & Insurance | 137,944 | 118,705 | 130,289 | 386,938 | 100.0% |
| | 137,944 | 118,705 | 130,289 | 386,938 | 100.0% |
| | | | | | |
| Operating Disbursements | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (39,590) | (39,590) | (39,590) | (118,770) | -30.7% |
| Payroll (incl Taxes) | (25,334) | (25,334) | (25,334) | (76,002) | -19.6% |
| Employee Benefits | (3,500) | (3,500) | (3,500) | (10,500) | -2.7% |
| Rent | (13,904) | (13,904) | (13,904) | (41,711) | -10.8% |
| Deferred Rent | (3,011) | (3,011) | (3,011) | (9,034) | -2.3% |
| Equipment Leases | (2,238) | (2,238) | (2,238) | (6,715) | -1.7% |
| Royalty Expense | (6,240) | 0 | 0 | (6,240) | -1.6% |
| Outsourced Billing Fees | (6,897) | (5,935) | (6,514) | (19,347) | -5.0% |
| Medical Supplies | (4,368) | (4,902) | (4,696) | (13,966) | -3.6% |
| Utilities | (2,775) | (2,775) | (2,775) | (8,326) | -2.2% |
| Allocated Malpractice Insurance | (1,625) | (1,625) | (1,625) | (4,875) | -1.3% |
| Allocated Insurance (WC, GL, Auto) | (2,339) | (2,339) | (2,339) | (7,018) | -1.8% |
| Radiology Fees | (931) | (1,045) | (1,001) | (2,978) | -0.8% |
| Office Expenses | (2,050) | (2,050) | (2,050) | (6,150) | -1.6% |
| Marketing | (279) | (279) | (279) | (837) | -0.2% |
| Outside Services | (1,337) | (1,337) | (1,337) | (4,011) | -1.0% |
| Repairs & Maintenance | (1,085) | (1,085) | (1,085) | (3,254) | -0.8% |
| Credit Card Processing | (1,175) | (1,085) | (934) | (3,194) | -0.8% |
| Bank Fees | (336) | (336) | (336) | (1,007) | -0.3% |
| Electronic Medical Record Fees | (458) | (458) | (458) | (1,375) | -0.4% |
| Automobile | (259) | (259) | (259) | (776) | -0.2% |
| Recruiting | (225) | (225) | (225) | (675) | -0.2% |
| Licenses & Permits | (40) | (40) | (40) | (120) | 0.0% |
| Laboratory Fees | (41) | (46) | (44) | (130) | 0.0% |
| Personal Property Taxes | (4,525) | 0 | 0 | (4,525) | -1.2% |
| Other Operating | (338) | (338) | (338) | (1,015) | -0.3% |
| | (124,901) | (113,737) | (113,914) | (352,552) | -91.1% |
| | | | | | |
| **Clinic-level Cash Flows** | 13,043 | 4,968 | 16,375 | 34,386 | 8.9% |
| | | | | | |
| RPG Management Fees | (8,321) | (8,321) | (8,321) | (24,962) | -6.5% |
| | | | | | |
| **Net Operating Cash Flows** | 4,722 | (3,353) | 8,054 | 9,424 | 2.4% |
| | | | | | |
| Restructuring Disbursements | | | | | |
| Debtor's Legal Counsel | 0 | 0 | 0 | 0 | 0.0% |
| Debtor's Financial Advisor | 0 | 0 | 0 | 0 | 0.0% |
| | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | |
| **Net Cash Flows** | 4,722 | (3,353) | 8,054 | 9,424 | 2.4% |
| Beginning Cash | 58,267 | 62,989 | 59,636 | 58,267 | |
| | | | | | |
| **Ending Cash** | 62,989 | 59,636 | 67,691 | 67,691 | |

**Radiant Physician Group**
**Cash Flow Projections - HUCH**

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Receipts from Patients & Insurance | 116,267 | 108,403 | 107,660 | 332,330 | 100.0% |
| | 116,267 | 108,403 | 107,660 | 332,330 | 100.0% |
| | | | | | |
| Operating Disbursements | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (35,082) | (35,082) | (35,082) | (105,246) | -31.7% |
| Payroll (incl Taxes) | (22,019) | (22,019) | (22,019) | (66,057) | -19.9% |
| Employee Benefits | (3,500) | (3,500) | (3,500) | (10,500) | -3.2% |
| Rent | (13,705) | (13,705) | (13,705) | (41,116) | -12.4% |
| Deferred Rent | 0 | 0 | 0 | 0 | 0.0% |
| Equipment Leases | (2,192) | (2,192) | (2,192) | (6,576) | -2.0% |
| Royalty Expense | (4,558) | 0 | 0 | (4,558) | -1.4% |
| Outsourced Billing Fees | (5,813) | (5,420) | (5,383) | (16,617) | -5.0% |
| Medical Supplies | (2,188) | (2,288) | (2,238) | (6,714) | -2.0% |
| Utilities | (2,930) | (2,930) | (2,930) | (8,790) | -2.6% |
| Allocated Malpractice Insurance | (1,625) | (1,625) | (1,625) | (4,875) | -1.5% |
| Allocated Insurance (WC, GL, Auto) | (2,339) | (2,339) | (2,339) | (7,018) | -2.1% |
| Radiology Fees | (873) | (912) | (893) | (2,678) | -0.8% |
| Office Expenses | (1,820) | (1,820) | (1,820) | (5,461) | -1.6% |
| Marketing | (279) | (279) | (279) | (837) | -0.3% |
| Outside Services | (797) | (797) | (797) | (2,390) | -0.7% |
| Repairs & Maintenance | (1,151) | (1,151) | (1,151) | (3,453) | -1.0% |
| Credit Card Processing | (485) | (648) | (604) | (1,737) | -0.5% |
| Bank Fees | (389) | (389) | (389) | (1,166) | -0.4% |
| Electronic Medical Record Fees | (458) | (458) | (458) | (1,375) | -0.4% |
| Automobile | (259) | (259) | (259) | (776) | -0.2% |
| Recruiting | (225) | (225) | (225) | (675) | -0.2% |
| Licenses & Permits | (20) | (20) | (20) | (60) | 0.0% |
| Laboratory Fees | (92) | (96) | (94) | (283) | -0.1% |
| Personal Property Taxes | (4,682) | 0 | 0 | (4,682) | -1.4% |
| Other Operating | (381) | (381) | (381) | (1,143) | -0.3% |
| | (107,862) | (98,536) | (98,383) | (304,781) | -91.7% |
| | | | | | |
| **Clinic-level Cash Flows** | 8,405 | 9,867 | 9,277 | 27,549 | 8.3% |
| | | | | | |
| RPG Management Fees | (8,329) | (8,329) | (8,329) | (24,986) | -7.5% |
| | | | | | |
| **Net Operating Cash Flows** | 76 | 1,539 | 948 | 2,563 | 0.8% |
| | | | | | |
| Restructuring Disbursements | | | | | |
| Debtor's Legal Counsel | 0 | 0 | 0 | 0 | 0.0% |
| Debtor's Financial Advisor | 0 | 0 | 0 | 0 | 0.0% |
| | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | |
| **Net Cash Flows** | 76 | 1,539 | 948 | 2,563 | 0.8% |
| Beginning Cash | 40,346 | 40,422 | 41,961 | 40,346 | |
| | | | | | |
| **Ending Cash** | 40,422 | 41,961 | 42,909 | 42,909 | |

**Radiant Physician Group**
**Cash Flow Projections - HUCT**

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Receipts from Patients & Insurance | 153,027 | 111,617 | 149,526 | 414,170 | 100.0% |
| | 153,027 | 111,617 | 149,526 | 414,170 | 100.0% |
| | | | | | |
| Operating Disbursements | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (41,284) | (41,284) | (41,284) | (123,851) | -29.9% |
| Payroll (incl Taxes) | (27,747) | (27,747) | (27,747) | (83,242) | -20.1% |
| Employee Benefits | (3,500) | (3,500) | (3,500) | (10,500) | -2.5% |
| Rent | (13,837) | (13,837) | (13,837) | (41,510) | -10.0% |
| Deferred Rent | (2,758) | (2,758) | (2,758) | (8,274) | -2.0% |
| Equipment Leases | (2,147) | (2,147) | (2,147) | (6,442) | -1.6% |
| Royalty Expense | (5,688) | 0 | 0 | (5,688) | -1.4% |
| Outsourced Billing Fees | (7,651) | (5,581) | (7,476) | (20,708) | -5.0% |
| Medical Supplies | (4,020) | (4,160) | (4,049) | (12,229) | -3.0% |
| Utilities | (2,140) | (2,140) | (2,140) | (6,419) | -1.5% |
| Allocated Malpractice Insurance | (1,625) | (1,625) | (1,625) | (4,875) | -1.2% |
| Allocated Insurance (WC, GL, Auto) | (2,339) | (2,339) | (2,339) | (7,018) | -1.7% |
| Radiology Fees | (856) | (886) | (862) | (2,604) | -0.6% |
| Office Expenses | (1,314) | (1,314) | (1,314) | (3,943) | -1.0% |
| Marketing | (279) | (279) | (279) | (837) | -0.2% |
| Outside Services | (860) | (860) | (860) | (2,579) | -0.6% |
| Repairs & Maintenance | (1,458) | (1,458) | (1,458) | (4,375) | -1.1% |
| Credit Card Processing | (764) | (1,079) | (787) | (2,630) | -0.6% |
| Bank Fees | (336) | (336) | (336) | (1,008) | -0.2% |
| Electronic Medical Record Fees | (458) | (458) | (458) | (1,375) | -0.3% |
| Automobile | (259) | (259) | (259) | (776) | -0.2% |
| Recruiting | (225) | (225) | (225) | (675) | -0.2% |
| Licenses & Permits | (43) | (43) | (43) | (129) | 0.0% |
| Laboratory Fees | (34) | (36) | (35) | (105) | 0.0% |
| Personal Property Taxes | (2,326) | 0 | 0 | (2,326) | -0.6% |
| Other Operating | (354) | (354) | (354) | (1,063) | -0.3% |
| | (124,302) | (114,704) | (116,173) | (355,180) | -85.8% |
| | | | | | |
| **Clinic-level Cash Flows** | 28,724 | (3,088) | 33,353 | 58,990 | 14.2% |
| | | | | | |
| RPG Management Fees | (8,325) | (8,325) | (8,325) | (24,974) | -6.0% |
| | | | | | |
| **Net Operating Cash Flows** | 20,400 | (11,412) | 25,028 | 34,016 | 8.2% |
| | | | | | |
| Restructuring Disbursements | | | | | |
| Debtor's Legal Counsel | 0 | 0 | 0 | 0 | 0.0% |
| Debtor's Financial Advisor | 0 | 0 | 0 | 0 | 0.0% |
| | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | |
| **Net Cash Flows** | 20,400 | (11,412) | 25,028 | 34,016 | 8.2% |
| Beginning Cash | 83,427 | 103,826 | 92,414 | 83,427 | |
| | | | | | |
| **Ending Cash** | 103,826 | 92,414 | 117,443 | 117,443 | |

**Radiant Physician Group**
**Cash Flow Projections - CUC**

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Receipts from Patients & Insurance | 137,587 | 102,922 | 142,927 | 383,436 | 100.0% |
| | 137,587 | 102,922 | 142,927 | 383,436 | 100.0% |
| | | | | | |
| Operating Disbursements | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (43,250) | (43,250) | (43,250) | (129,749) | -33.8% |
| Payroll (incl Taxes) | (28,978) | (28,978) | (28,978) | (86,934) | -22.7% |
| Employee Benefits | (3,500) | (3,500) | (3,500) | (10,500) | -2.7% |
| Rent | (9,044) | (9,044) | (9,044) | (27,131) | -7.1% |
| Deferred Rent | 0 | 0 | 0 | 0 | 0.0% |
| Equipment Leases | 0 | 0 | 0 | 0 | 0.0% |
| Royalty Expense | 0 | 0 | 0 | 0 | 0.0% |
| Outsourced Billing Fees | (6,879) | (5,146) | (7,146) | (19,172) | -5.0% |
| Medical Supplies | (3,908) | (4,155) | (3,908) | (11,971) | -3.1% |
| Utilities | (3,248) | (3,248) | (3,248) | (9,745) | -2.5% |
| Allocated Malpractice Insurance | (1,625) | (1,625) | (1,625) | (4,875) | -1.3% |
| Allocated Insurance (WC, GL, Auto) | (2,339) | (2,339) | (2,339) | (7,018) | -1.8% |
| Radiology Fees | (1,015) | (1,079) | (1,015) | (3,110) | -0.8% |
| Office Expenses | (1,827) | (1,827) | (1,827) | (5,481) | -1.4% |
| Marketing | (279) | (279) | (279) | (837) | -0.2% |
| Outside Services | (913) | (913) | (913) | (2,740) | -0.7% |
| Repairs & Maintenance | (1,349) | (1,349) | (1,349) | (4,046) | -1.1% |
| Credit Card Processing | (473) | (537) | (401) | (1,411) | -0.4% |
| Bank Fees | (349) | (349) | (349) | (1,048) | -0.3% |
| Electronic Medical Record Fees | (458) | (458) | (458) | (1,375) | -0.4% |
| Automobile | (259) | (259) | (259) | (776) | -0.2% |
| Recruiting | (225) | (225) | (225) | (675) | -0.2% |
| Licenses & Permits | (84) | (84) | (84) | (251) | -0.1% |
| Laboratory Fees | (99) | (105) | (99) | (302) | -0.1% |
| Personal Property Taxes | (2,112) | 0 | 0 | (2,112) | -0.6% |
| Other Operating | (367) | (367) | (367) | (1,100) | -0.3% |
| | (112,579) | (109,115) | (110,663) | (332,356) | -86.7% |
| | | | | | |
| **Clinic-level Cash Flows** | 25,008 | (6,192) | 32,264 | 51,080 | 13.3% |
| | | | | | |
| RPG Management Fees | (8,422) | (8,422) | (8,422) | (25,265) | -6.6% |
| | | | | | |
| **Net Operating Cash Flows** | 16,586 | (14,614) | 23,842 | 25,814 | 6.7% |
| | | | | | |
| Restructuring Disbursements | | | | | |
| Debtor's Legal Counsel | 0 | 0 | 0 | 0 | 0.0% |
| Debtor's Financial Advisor | 0 | 0 | 0 | 0 | 0.0% |
| | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | |
| **Net Cash Flows** | 16,586 | (14,614) | 23,842 | 25,814 | 6.7% |
| Beginning Cash | 46,652 | 63,239 | 48,624 | 46,652 | |
| | | | | | |
| **Ending Cash** | 63,239 | 48,624 | 72,467 | 72,467 | |

Radiant Physician Group
Cash Flow Projections - LDUC

| Month | Aug-17 | Sep-17 | Oct-17 | 3 Month Total | % |
|---|---|---|---|---|---|
| Cash Receipts | | | | | |
| Receipts from Patients & Insurance | 169,728 | 135,209 | 170,044 | 474,980 | 100.0% |
| | 169,728 | 135,209 | 170,044 | 474,980 | 100.0% |
| | | | | | |
| Operating Disbursements | | | | | |
| Doctor & MA Service Fees (incl Taxes) | (42,901) | (42,901) | (42,901) | (128,703) | -27.1% |
| Payroll (incl Taxes) | (25,074) | (25,074) | (25,074) | (75,222) | -15.8% |
| Employee Benefits | (3,500) | (3,500) | (3,500) | (10,500) | -2.2% |
| Rent | (11,761) | (11,761) | (11,761) | (35,283) | -7.4% |
| Deferred Rent | 0 | 0 | 0 | 0 | 0.0% |
| Equipment Leases | 0 | 0 | 0 | 0 | 0.0% |
| Royalty Expense | 0 | 0 | 0 | 0 | 0.0% |
| Outsourced Billing Fees | (8,486) | (6,760) | (8,502) | (23,749) | -5.0% |
| Medical Supplies | (4,785) | (4,742) | (4,308) | (13,835) | -2.9% |
| Utilities | (3,303) | (3,303) | (3,303) | (9,908) | -2.1% |
| Allocated Malpractice Insurance | (1,625) | (1,625) | (1,625) | (4,875) | -1.0% |
| Allocated Insurance (WC, GL, Auto) | (2,339) | (2,339) | (2,339) | (7,018) | -1.5% |
| Radiology Fees | (916) | (908) | (825) | (2,649) | -0.6% |
| Office Expenses | (2,928) | (2,928) | (2,928) | (8,784) | -1.8% |
| Marketing | (279) | (279) | (279) | (837) | -0.2% |
| Outside Services | (808) | (808) | (808) | (2,425) | -0.5% |
| Repairs & Maintenance | (1,565) | (1,565) | (1,565) | (4,695) | -1.0% |
| Credit Card Processing | (496) | (729) | (580) | (1,805) | -0.4% |
| Bank Fees | (928) | (928) | (928) | (2,784) | -0.6% |
| Electronic Medical Record Fees | (458) | (458) | (458) | (1,375) | -0.3% |
| Automobile | (394) | (394) | (394) | (1,181) | -0.2% |
| Recruiting | (225) | (225) | (225) | (675) | -0.1% |
| Licenses & Permits | (21) | (21) | (21) | (62) | 0.0% |
| Laboratory Fees | (74) | (74) | (67) | (215) | 0.0% |
| Personal Property Taxes | (6,038) | 0 | 0 | (6,038) | -1.3% |
| Other Operating | (408) | (408) | (408) | (1,223) | -0.3% |
| | (119,312) | (111,729) | (112,799) | (343,840) | -72.4% |
| | | | | | |
| Clinic-level Cash Flows | 50,416 | 23,480 | 57,244 | 131,140 | 27.6% |
| | | | | | |
| RPG Management Fees | (18,553) | (18,553) | (18,553) | (55,660) | -11.7% |
| | | | | | |
| Net Operating Cash Flows | 31,863 | 4,926 | 38,691 | 75,480 | 15.9% |
| | | | | | |
| Restructuring Disbursements | | | | | |
| Debtor's Legal Counsel | 0 | 0 | 0 | 0 | 0.0% |
| Debtor's Financial Advisor | 0 | 0 | 0 | 0 | 0.0% |
| | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | |
| Net Cash Flows | 31,863 | 4,926 | 38,691 | 75,480 | 15.9% |
| Beginning Cash | 51,101 | 82,963 | 87,890 | 51,101 | |
| | | | | | |
| Ending Cash | 82,963 | 87,890 | 126,581 | 126,581 | |

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ashley M. McDow (245114)<br>Michael T. Delaney (261714)<br>BAKER & HOSTETLER LLP<br>11601 Wilshire Boulevard, Suite 1400<br>Los Angeles, CA  90025-0509<br>Telephone: 310.820.8800<br>Facsimile: 310.820.8859<br>Email: amcdow@bakerlaw.com<br>        mdelaney@bakerlaw.com | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Debtor and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA -  SANTA ANA DIVISION

| In re:<br><br>HOAG URGENT CARE-TUSTIN, INC., et al.,<br><br>Debtors and Debtors in Possession.<br><br>(Jointly Administered with Case Nos.<br>8:17-bk-13078-TA; 8:17-bk-13079-TA;<br>8:17-bk-13080-TA; 8:17-bk-13089-TA;<br>8:17-bk-13090-TA)<br><br><div align="right">Debtor(s).</div> | CASE NO.:  8:17-bk-13077-TA<br>CHAPTER:  11 |
|---|---|
| | **STATEMENT REGARDING<br>CASH COLLATERAL OR<br>DEBTOR IN POSSESSION FINANCING<br>[FRBP 4001; LBR 4001-2]** |
| | DATE:            08/04/2017<br>TIME:            10:00 a.m.<br>COURTROOM:  Courtroom 5B<br>ADDRESS:      U.S. Bankruptcy Court<br>                    411 West Fourth Street<br>                    Santa Ana, CA 92701 |

Secured party(ies): Opus Bank

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| | Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No.<br>(if applicable) |
|---|---|---|---|
| ☐ | (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ | (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim" | | |
| | ☐  Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law | | |
| | ☐  Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | | |
|---|---|---|---|
| | *Continued from page 1* <br> ☐    Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" <br> ☐    Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)" <br> ☐    The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| | **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No.** <br> **(if applicable)** |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

08/03/2017    Michael T. Delaney                  /s/ Michael T. Delaney
Date             *Printed Name*                          *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.