BARRY A. SMITH (SBN: 48697)
    bsmith@buchalter.com
STEVEN M. SPECTOR (SBN: 51623)
    sspector@buchalter.com
ANTHONY J. NAPOLITANO (SBN: 227691)
    anapolitano@buchalter.com
BUCHALTER, A Professional Corporation
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891.0700
Facsimile: (213) 896.0400

Attorneys for Secured Creditor Opus Bank

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>HOAG URGENT CARE-TUSTIN, INC., et al.,<br><br>Debtors and Debtors in Possession. | Lead Case No. 8:17-bk-13077-TA<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:17-bk-13078-TA, 8:17-bk-13079-TA, 8:17-bk-13080-TA, 8:17-bk-13089-TA, 8:17-bk-13090-TA) |
| Affects:<br><br>☒ All Debtors<br><br>☐ Cypress Urgent Care, Inc., a California corporation, ONLY<br><br>☐ Hoag Urgent Care- Anaheim Hills, Inc., a California corporation, ONLY<br><br>☐ Hoag Urgent Care- Huntington Harbour, Inc., a California corporation, ONLY<br><br>☐ Hoag Urgent Care- Orange, Inc., a California corporation, ONLY<br><br>☐ Hoag Urgent Care- Tustin, Inc., a California corporation, ONLY<br><br>☐ Laguna-Dana Urgent Care, Inc., a California corporation, ONLY | **OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543(a) AND (b); AND (II) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br><br>[Application to Set Hearing on Shortened Notice concurrently filed]<br><br>**Hearing If Shortened Time Granted:**<br>Date:  August 29, 2017<br>Time:  2:00 p.m.<br><br>**Hearing If On Regular Notice:**<br>Date:  September 6, 2017<br>Time:  10:00 a.m.<br>Place:  United States Bankruptcy Court<br>        Courtroom 5B<br>        411 West Fourth Street<br>        Santa Ana, California 92701 |

1

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** Opus Bank, senior secured creditor of Hoag Urgent Care – Tustin, Inc., and its affiliated debtors in the above-captioned, jointly-administered chapter 11 bankruptcy cases (collectively, the "Debtors"),[1] hereby moves the Court for entry of an order (i) partially excusing David P. Stapleton, the state-court appointed receiver (the "Receiver")[2] from compliance with the requirements of 11 U.S.C. § 543(a) and (b) to permit the Receiver to monitor the Debtors in an oversight capacity, and (ii) granting limited relief from the automatic stay (the "Motion").

**PLEASE TAKE FURTHER NOTICE THAT** Opus Bank submits this Motion under 11 U.S.C. § 543(d) and that this Motion is based upon this Notice of Motion, the appended Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed Declarations of David P. Stapleton and Steven M. Spector, and such other evidence as may be presented in connection with this Motion or at the hearing.

**PLEASE TAKE FURTHER NOTICE THAT** Opus Bank has filed an *Application for Order Setting Hearing on Shortened Notice* (the "Application") asking the Court to set the Motion to be heard on August 29, 2019 at 2:00 p.m., which is the date presently set for the continued hearing on the Debtors' cash collateral motion. If the Court grants the Application, further notice will be filed and served by Opus Bank setting forth the deadlines to file an opposition to this Motion.

**PLEASE TAKE FURTHER NOTICE THAT** in the event that the Court does not grant the Application, this Motion will be heard on September 6, 2017 at 10:00 a.m. in the above-

---

[1] The Debtors include Hoag Urgent Care – Tustin, Inc. (Case No. 8:17-bk-13077-TA), Hoag Urgent Care – Huntington Harbour, Inc. (Case No. 8:17-bk-13078-TA); Hoag Urgent Care – Orange, Inc. (Case No. 8:17-bk-13079-TA); Hoag Urgent Care – Anaheim Hills, Inc. (Case No. 8:17-bk-13079-TA); Cypress Urgent Care, Inc. (Case No. 8:17-bk-13089-TA); and Laguna Dana Urgent Care, Inc. (Case No. 8:17-bk-13090-TA).

[2] Prior to the commencement of these proceedings, by stipulation, the Receiver was appointed by the state court as receiver over the assets and operations of the Debtors. These proceedings were filed about one hour prior to the Receiver's appearance in state court where he was seeking court authorization to "sell" the Hoag Urgent Care clinics to Newport Healthcare Center, an affiliate of Hoag Memorial Hospital. The Debtors did not oppose the Receiver's motion either at the court hearing or prior thereto.

2

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

captioned court.  Pursuant to Local Bankruptcy Rule 9013-1(f), any party in interest who opposes this Motion shall, not less than fourteen (14) days prior to the referenced hearing, file with the Court, and serve upon counsel for Opus Bank, a brief but complete written statement of all reasons in opposition thereto, with points and authorities and any declarations or evidence upon which such opposing party intends to rely.  The failure to file an opposition may be deemed by the Court to have consented to the granting of the requested relief.

DATED:  August 8, 2017                    BUCHALTER, a Professional Corporation


                                          By:   */s/ Anthony J. Napolitano*
                                                BARRY A. SMITH
                                                STEVEN M. SPECTOR
                                                ANTHONY J. NAPOLITANO

                                          Attorneys for Secured Creditor Opus Bank

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

3

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................................... 2

    A. The Hoag Borrowers' Secured Obligations to Opus Bank. .................................... 2

    B. The Cypress-Laguna Borrowers' Secured Obligations to Opus Bank.................... 3

    C. Opus Bank Obtains the Appointment of the Receiver. ........................................... 5

    D. The Receiver's Consensual Sale of the Assets of the Hoag Borrowers.................. 6

    E. The Debtors Commence Their Chapter 11 Bankruptcy Cases. .............................. 7

III. ARGUMENT .......................................................................................................................... 7

    A. Bankruptcy Code Section 543(d) Authorizes the Court to Relieve a State Court Receiver of the Statutory Turnover Obligations. ..................................... 7

    B. Cause For Application of Section 543(d)(1) Exists in This Case. ......................... 8

        1. Likelihood of Successful Reorganization. ................................................... 9

        2. Available Funds for Reorganization. ........................................................... 9

        3. Prior Instances of Mismanagement............................................................ 10

        4. Use of Turned Over Property for Benefit of Creditors. ............................ 11

        5. Other Creditors' Interests........................................................................... 11

    C. Cause Exists to Grant the Receiver Limited Relief From the Automatic Stay..... 12

IV. CONCLUSION ..................................................................................................................... 13

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

i

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bal Harbour Club, Inc. v. AVA Dev., Inc. (In re Bal Harbour Club, Inc.)*,
   316 F.3d 1192 (11th Cir. 2003) ............................................................................................. 10

*In re Constable Plaza Associates, L.P.*,
   125 B.R. 98 (Bankr. S.D.N.Y. 1991) .................................................................................... 10

*In re Corporate & Leisure Event Prods.*,
   351 B.R. 724 (Bankr. D. Ariz. 2006) ...................................................................................... 8

*In re Foundry of Barrington Partnership*,
   129 B.R. 550 (Bankr. N.D. Ill. 1991) ................................................................................ 9, 11

*In re KCC-Fund V, Ltd.*,
   96 B.R. 237 (Bankr. W.D. Mo. 1989) ..................................................................................... 8

*In re Orchards Vill. Invs., LLC*,
   405 B.R 341 (Bankr. D. Or. 2009) ............................................................................... 8, 9, 10

*In re Poplar Springs Apartments of Atlantic, Ltd.*,
   103 B.R. 146 (Bankr. S.D. Ohio 1989) ................................................................................... 9

*In re Sundance Corp.*,
   149 B.R. 641 (Bankr. E.D. Wash. 1993) ............................................................................ 8, 9

*In re Trident Associates Ltd. Partnership*,
   52 F.3d 127 (6th Cir. 1995) .................................................................................................. 12

*In re Tucson Estate, Inc.*,
   912 F.2d 1162 (9th Cir. 1990) .............................................................................................. 12

**Statutes**

11 U.S.C. § 101(11)(A) ................................................................................................................. 8

11 U.S.C. § 362(d)(1) .................................................................................................................. 12

11 U.S.C. § 362(g) ....................................................................................................................... 12

11 U.S.C. § 543(a) ................................................................................................... 1, 2, 7, 8, 12, 13

11 U.S.C. § 543(b) .............................................................................................................. 1, 12, 13

11 U.S.C. § 543(b)(1) ................................................................................................................ 7, 8

11 U.S.C. § 543(d) ......................................................................................................................... 8

**Other Authorities**

5 COLLIER ON BANKRUPTCY
   ¶ 543.05 at 543-18 (16th ed. rev. 2011) .................................................................................. 9

ii

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

# MEMORANDUM OF POINTS AND AUTHORITIES

Opus Bank, senior secured creditor of Hoag Urgent Care – Tustin, Inc., and its affiliated debtors in the above-captioned, chapter 11 bankruptcy cases (collectively, the "Debtors"),[3] respectfully submits the following memorandum of points and authorities in support of its *Motion for Order: (I) Partially Excusing Receiver's Compliance with 11 U.S.C. § 543(a) and (b); and (II) Granting Limited Relief from the Automatic Stay* (the "Motion").

## I.   INTRODUCTION

Opus Bank obtained the appointment of David Stapleton (the "Receiver") as the receiver over the assets of the Debtors primarily due to the Debtors' failure to pay their obligations to Opus Bank since at least August 2016.[4]  Since his appointment, the Receiver has taken steps to safeguard the bank's interest in its collateral and to work with the Debtors' existing management to stabilize operations and maximize the value of the Debtors' assets.  Indeed, the Receiver orchestrated a sale transaction with respect to the four Hoag Borrowers (as defined below) that resolved the substantial claims of Opus Bank as well as the substantial claims of Newport Healthcare Center ("Newport"), an affiliate of Hoag Memorial Hospital Presbyterian ("Hoag Memorial"), who is the Hoag Borrowers' landlord, equipment lessor and trademark licensor.[5] Despite having voiced no objection to the proposed sale transaction, the Hoag Borrowers prevented the sale from occurring by filing their bankruptcy petitions less than one hour before the state court hearing at which the Receiver sought approval of the sale transaction.

In connection with the commencement of their bankruptcy cases, the Debtors filed a series of "first-day" motions seeking authorization to Opus Bank's cash collateral, to pay prepetition employee wage claims, and to maintain their cash management systems and existing accounts.

---

[3] The Debtors include Hoag Urgent Care – Tustin, Inc. (Case No. 8:17-bk-13077-TA), Hoag Urgent Care – Huntington Harbour, Inc. (Case No. 8:17-bk-13078-TA); Hoag Urgent Care – Orange, Inc. (Case No. 8:17-bk-13079-TA); Hoag Urgent Care – Anaheim Hills, Inc. (Case No. 8:17-bk-13079-TA); Cypress Urgent Care, Inc. (Case No. 8:17-bk-13089-TA); and Laguna Dana Urgent Care, Inc. (Case No. 8:17-bk-13090-TA).

[4] The monthly payment obligations of the Debtors are not insignificant.  They exceed at a default rate over $32,000.00 per month.  It is significant to note that all financial information and projections omit debt service let alone the legal fees and costs of Opus Bank.

[5] The Debtors' obligations to Newport and Hoag Memorial were likewise in material default and debt service payments were likewise not being made.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

At that first-day hearing, Opus Bank expressed an interest and the Court suggested an option whereby the Receiver might remain in place under a "hybrid" scenario in an oversight role in order to provide adequate information to Opus Bank, and other parties in interest including, presumably, the Court. Following that hearing, Opus Bank and the Debtors began discussions regarding a stipulation to resolve continued use of cash collateral beyond the interim period, which included a partial relief from the Receiver's section 543 turnover obligations. As of the date of this Motion, Opus Bank prepared and has provided the Debtors' counsel with a comprehensive draft stipulation.

In order to preserve its rights, Opus Bank has filed this Motion for two reasons. First, to avoid the automatic turnover requirements as set forth in the state-court orders appointing the Receiver that would result if such a motion were not filed within seven court days from the date of the bankruptcy filing. Second, in the event that the parties are unable to work out a cash collateral/partial turnover stipulation, Opus Bank believes that keeping the Receiver in place in an oversight and monitoring capacity is justified. Given the magnitude of the secured debts owed to Opus Bank (collectively, about $4,000,000.00), and given the amounts owed to Newport/Hoag Memorial, and given <u>the operating losses at the clinics</u>, the adequate protection offered to Opus Bank is inadequate.[6]

For these reasons, Opus Bank seeks an order permitting the Receiver to remain in place as the receiver over the assets of the Debtors.

## II. **STATEMENT OF FACTS**

### A. **The Hoag Borrowers' Secured Obligations to Opus Bank.**

On September 26, 2013, Hoag Urgent Care-Tustin, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc. and Hoag Urgent Care-Anaheim Hills, Inc., as borrowers (collectively, the "Hoag Borrowers"), and Opus Bank, as lender, executed that certain Business Loan Agreement, which provided that Opus Bank would make advances to the Hoag Borrowers up to the principal amount of $2,320,000.00 in accordance with the terms of the loan

---

[6] To Opus Bank's knowledge, no form of adequate protection has been offered to Newport/Hoag Memorial likely in derogation of their rights.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

2

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

agreement (the "Hoag Loan Agreement"). A copy of the Hoag Loan Agreement is included within Exhibit 1 to the concurrently filed Declaration of Steven M. Spector (the "Spector Decl.").

On September 26, 2013, the Hoag Borrowers executed that certain Promissory Note pursuant to which the Hoag Borrowers promised to pay Opus Bank the principal sum of $2,320,000.00 million together with interest on the unpaid principal balance until paid in full (the "Hoag Note"). A copy of the Hoag Note is included within Exhibit 1 to the Spector Decl.

To secure the obligations under the Hoag Note and the Hoag Loan Agreement, the Hoag Borrowers, as grantor, and Opus Bank, as lender, entered into a Commercial Security Agreement on September 26, 2013 (the "Hoag Security Agreement"), whereby the Hoag Borrowers granted Opus Bank a security interest in certain collateral, including all of the Hoag Borrowers' personal property and other assets, including, without limitation, all cash and cash equivalents and the proceeds of the following (collectively, the "Hoag Cash Collateral"): accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, sums on deposit in any collateral account, and any items in any lockbox, as further defined and described in the Hoag Security Agreement (collectively, the "Hoag Collateral"). A copy of the Hoag Security is included within Exhibit 1 to the Spector Decl.

Opus Bank perfected its security interest in the Hoag Collateral by, among other things, filing a UCC-1 Financing Statement on September 30, 2013, with the California Secretary of State, as file number 13-7380125585 (the "Hoag Financing Statement"). A copy of the Hoag Financing Statement is included within Exhibit 1 to the Spector Decl.

**B.    The Cypress-Laguna Borrowers' Secured Obligations to Opus Bank.**

On September 26, 2013, Cypress Urgent Care, Inc., Laguna Dana Urgent Care Inc. and Your Neighborhood Urgent Care, LLC,[7] as borrowers (collectively, the "Cypress-Laguna Borrowers"), and Opus Bank, as lender, executed that certain Business Loan Agreement, which provided that Opus Bank would make advances to the Cypress-Laguna Borrowers up to the

---

[7] Your Neighborhood Urgent Care, LLC, an affiliate of the Debtors by virtue of common equity ownership, has not filed a bankruptcy petition.

3
BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

principal amount of $1,435,000.00 in accordance with the terms of the loan agreement (as amended, the "Cypress-Laguna Primary Loan Agreement"). A copy of the Cypress-Laguna Primary Loan Agreement is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, the Cypress-Laguna Borrowers executed that certain Promissory Note pursuant to which the Cypress-Laguna Borrowers promised to pay Opus Bank the principal sum of $1,435,000.00 together with interest on the unpaid principal balance until paid in full (as amended, the "Cypress-Laguna Primary Note"). A copy of the Cypress-Laguna Primary Note is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, the Cypress-Laguna Borrowers, as borrowers, and Opus Bank, as lender, executed that certain Business Loan Agreement, which provided that Opus Bank would make advances to the Cypress-Laguna Borrowers up to the principal amount of $250,000.00 in accordance with the terms of the loan agreement (as amended, the "Cypress-Laguna Secondary Loan Agreement"). A copy of the Cypress-Laguna Secondary Loan Agreement is included within Exhibit 2 to the Spector Decl.

On September 26, 2013, the Cypress-Laguna Borrowers executed that certain Promissory Note pursuant to which the Cypress-Laguna Borrowers promised to pay Opus Bank the principal sum of $250,000.00 together with interest on the unpaid principal balance until paid in full (as amended, the "Cypress-Laguna Secondary Note"). A copy of the Cypress-Laguna Secondary Note is included within Exhibit 2 to the Spector Decl.

To secure the obligations under the Cypress-Laguna Primary Note, the Cypress-Laguna Primary Loan Agreement, the Cypress-Laguna Secondary Note and the Cypress-Laguna Secondary Loan Agreement, the Cypress-Laguna Borrowers, as grantor, and Opus Bank, as lender, entered into a two separate Commercial Security Agreement on September 26, 2013 for each of the outstanding notes (collectively, the "Cypress-Laguna Security Agreements"), whereby the Cypress-Laguna Borrowers granted Opus Bank a security interest in certain collateral, including all of the Cypress-Laguna Borrowers' personal property and other assets, including, without limitation, all cash and cash equivalents and the proceeds of the following (collectively,

4

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

the "Cypress-Laguna Cash Collateral"): accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, sums on deposit in any collateral account, and any items in any lockbox, as further defined and described in the Cypress-Laguna Security Agreement (collectively, the "Cypress-Laguna Collateral"). Copies of the Cypress-Laguna Security Agreements are included within Exhibit 2 to the Spector Decl.

Opus Bank perfected its security interest in the Cypress-Laguna Collateral by, among other things, filing UCC-1 Financing Statements on October 3, 2013, with the California Secretary of State, as file numbers 13-7380725167 and 13-7380725420 (collectively, the "Cypress-Laguna Financing Statements"). Copies of the Cypress-Laguna Financing Statements are included within Exhibit 2 to the Spector Decl.

The Hoag Loan Agreement, the Hoag Note, the Hoag Security Agreement, the Hoag Financing Statement, the Cypress-Laguna Primary Loan Agreement, the Cypress-Laguna Primary Note, the Cypress-Laguna Secondary Loan Agreement, the Cypress-Laguna Secondary Note, the Cypress-Laguna Security Agreements, and the Cypress-Laguna Financing Statements are collectively referred to herein as the "Loan Documents." The Hoag Collateral and the Cypress-Laguna Collateral are collectively referred to herein as the "Collateral."

### C. **Opus Bank Obtains the Appointment of the Receiver.**

On March 30, 2017, Opus Bank filed a state court action against the Hoag Borrowers, among others, in the California Superior Court, County of Orange, designated as *Opus Bank v. Hoag Urgent Care-Tustin, Inc., et al.*, Case No. 30-2017-00911945-CU-BC-CJC (the "Hoag State Court Action"). A copy of the Verified Complaint commencing the Hoag State Court Action is attached as Exhibit 1 to the Spector Decl. On or about May 25, 2017, by stipulation, the Receiver was appointed as the receiver in that action over the assets of the Hoag Borrowers. A copy of the *Order Appointing Receiver and Issuance of Preliminary Injunction in Aid of Receiver* entered in the Hoag State Court Action is attached as Exhibit 3 to the Spector Declaration (the "Hoag Receivership Order").

5

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 29831280V2

Main Document    Page 11 of 19

On March 30, 2017, Opus Bank filed a state court action against the Cypress-Laguna Borrowers, among others, in the California Superior Court, County of Orange, designated as *Opus Bank v. Laguna-Dana Urgent Care, Inc., et al.*, Case No. 30-2017-00912132-CU-BC-CJC (the "Cypress-Laguna State Court Action"). A copy of the Verified Complaint commencing the Cypress-Laguna State Court Action is attached as Exhibit 2 to the Spector Decl. On or about May 25, 2017, by stipulation, the Receiver was appointed as the receiver in that action over the assets of the Cypress-Laguna Borrowers. A copy of the *Order Appointing Receiver and Issuance of Preliminary Injunction in Aid of Receiver* entered in the Cypress-Laguna State Court Action is attached as Exhibit 4 to the Spector Declaration (the "Cypress-Laguna Receivership Order").

Until the filing of these chapter 11 cases, the Receiver operated the businesses of the Hoag Borrowers and the Cypress-Laguna Borrowers without objection and, indeed, with the cooperation of the Debtors. Stapleton Decl., ¶ 6.

**D.    The Receiver's Consensual Sale of the Assets of the Hoag Borrowers.**

After a series of protracted negotiations, in which Dr. Amster and the Debtors sporadically participated through counsel (now bankruptcy counsel), the Receiver, Opus Bank, Newport and Hoag Memorial entered into a Settlement Agreement dated July 20, 2017 (the "Settlement Agreement"). *See* Declaration of David Stapleton concurrently filed herewith (the "Stapleton Decl."), ¶ 7. A copy of the Settlement Agreement is included within Exhibit 2 and Exhibit 3 to the Stapleton Decl.

The Settlement Agreement resolved many things respecting the clinics of the Hoag Borrowers. It provided for Newport/Hoag Memorial to be the new operator of the clinics. It settled a dispute between Opus Bank and Newport over the equipment. It settled the financial issues respecting the clinics. It resulted in Opus Bank receiving payment of the appraised liquidation value of the equipment. It allowed the employees of the clinics to continue to be employed. It ended the receivership over the clinics (except for collecting receivables). Most importantly, it did not impact receivables. They were to be collected by the Receiver for the benefit of Opus Bank. Stapleton Decl., ¶ 8.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

Approval from the state court was required. As a result, the Receiver filed and served his motions for approval of the Settlement Agreement on August 1, 2017 with a hearing date on August 2, 2017 at 1:30 p.m. Stapleton Decl., ¶ 9, Exhs. 2 and 3. The Hoag Borrowers' bankruptcy cases were filed an hour before the state court hearing where the Hoag Borrowers' sale transaction was to take place (which, of course, did not occur). Stapleton Decl., ¶ 10.

### E. The Debtors Commence Their Chapter 11 Bankruptcy Cases.

On August 2, 2017 (the "Petition Date"), the Debtors each filed their own voluntary chapter 11 petitions thereby triggering the Receiver's turnover obligations under section 543 of the Bankruptcy Code. On August 4, 2017, at the hearing on the Debtors' "first-day" motions seeking authorization (1) for the Debtors' interim use of cash collateral [Docket No. 12][8]; (2) to continue the maintenance of existing bank accounts and cash management systems [Docket No. 10]; and (3) the payment of prepetition wages and continuation of employee programs [Docket No. 13], the parties and the Court discussed a "hybrid scenario" whereby the Receiver would turnover control of the operations of the Debtors to the Debtors' management company, Radian Physician Group ("RPG"), but would remain in place as receiver for oversight purposes. On August 7, 2017, the Court entered its *Order Granting the Debtors' Emergency Motion for Order Authorizing the Interim Use of Cash Collateral* [Docket No. 27] on an interim basis through the continued hearing of August 29, 2017 at 2:00 p.m. on the Debtors' motion for use of cash collateral.

## III. ARGUMENT

### A. Bankruptcy Code Section 543(d) Authorizes the Court to Relieve a State Court Receiver of the Statutory Turnover Obligations.

Section 543(a) provides that once a custodian acquires knowledge of the commencement of a case under the Bankruptcy Code, the custodian's administration, in essence, is suspended, except for such action as is necessary to preserve property. Section 543(b)(1) further provides that a custodian shall deliver to the trustee (or debtor in possession) any property of the debtor the

---

[8] All docket references are to the bankruptcy docket in the lead bankruptcy case (Case No. 8:17-bk-13077-TA) unless otherwise noted.

7

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

custodian then holds or controls. "Custodian" is defined as a "receiver . . . of any property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). "Upon the filing of a bankruptcy, a state court receiver generally may not make disbursements, and must turn over the property to the bankruptcy trustee and account to the bankruptcy court for the property which came into its possession." *In re Sundance Corp.*, 149 B.R. 641, 649 (Bankr. E.D. Wash. 1993).

However, section 543(d) provides the Court with authority to excuse a custodian from compliance with the preceding subsections if the interests of creditors (and the debtor under very limited circumstances) would be better served by permitting retention of administrative control and possession of assets. *See In re Orchards Vill. Invs., LLC*, 405 B.R 341, 352 (Bankr. D. Or. 2009); *In re Corporate & Leisure Event Prods.*, 351 B.R. 724, 732 (Bankr. D. Ariz. 2006) ("Even though the ordinary rule is that receivers must turn over estate property to a debtor in possession or trustee . . . the bankruptcy courts have discretion to waive that requirement if the interests of creditors would be better served by continuing the receiver in possession."); *In re KCC-Fund V, Ltd.*, 96 B.R. 237, 238 (Bankr. W.D. Mo. 1989).

### B. Cause For Application of Section 543(d)(1) Exists in This Case.

Sufficient cause exists in this case to partially relieve the Receiver from his obligations under sections 543(a) and (b)(1) so that he may remain in place in an oversight capacity in order to preserve assets for creditors. While the Bankruptcy Code does not provide any specific test for determining whether a custodian should be granted relief under section 543(d), courts have established several exemplary criteria for making this determination. In general, bankruptcy courts have looked at: (1) the likelihood of successful reorganization, (2) the probability that funds required for reorganization will be available, (3) whether there are prior instances of mismanagement by the debtor, (4) whether the debtor will use the turned-over property for the benefit of creditors, and (5) whether there is any reason to believe that other creditors' interests will suffer by keeping the debtor out of possession of the property. *See, e.g.*, *In re Orchards Vill.*

8
**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S
COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 29831280V2

*Invs., LLC*, 405 B.R 341, 352-53 (Bankr. D. Or. 2009); *In re Foundry of Barrington Partnership*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991).

Where turnover is excused, "[p]repetition custodians who continue to serve postpetition are charged with and limited to the preservation and care of the property under their control in accordance with the orders governing their appointment." 5 COLLIER ON BANKRUPTCY ¶ 543.05 at 543-18 (16th ed. rev. 2011). "With regard to state court appointed receivers, such receivers are representatives of the appointing court, holding property in *custodia legis* as court officers, with only the power and authority given to them by the appointing court, which may not be exceeded without court authorization." *Id.*; *see also Sundance*, 149 B.R. at 649.

### 1. Likelihood of Successful Reorganization.

This Court keenly observed at the hearing on the Debtors' "first-day" motions that the this case is not a reorganization "earn-out" case, but rather a "quick-sale" case. Hence, there will be no successful reorganization. Moreover, the Debtors commenced this case by filing the bare minimum case commencement documents, which did not include their schedules or statements of financial affairs. At this time, without a clearer picture of the Debtors' assets, liabilities and financial data, it is difficult to speculate as to the likelihood of a successful reorganization. As the *Poplar Springs* court observed: "[K]eeping this Receiver in place temporarily while books and records are being sorted through, cash flow projections made and decisions regarding disposition of assets are being addressed could be an advantage rather than a disadvantage to the reorganizations of these debtors." *In re Poplar Springs Apartments of Atlantic, Ltd.*, 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989). Accordingly, given that a successful reorganization appears unknown and speculative, at best, and given that a "quick sale" is still undisclosed, keeping the Receiver in place in an oversight capacity seems to be in the best interests of all parties.

### 2. Available Funds for Reorganization.

In *Orchards*, the court found that the receiver should be excused from turnover under section 543 where, "[a]s to the availability of income to fund a reorganization, the receivership action was precipitated by the Debtor's failure to make payments on the Loan, failure to pay

9

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 29831280V2

property taxes and failure to pay the Orchards Village architects . . . ." *Orchards*, 405 B.R. at 353. As in *Orchards*, the Receiver's appointment was precipitated by the Debtors' failure to make loan payments to Opus Bank since at least August 2016. Moreover, the Debtors have incurred significant arrearages to its landlords and trademark licensor. The Debtor's failure to make any loan payments since August 2016, nor rent or licensing payments indicates that they do not have sufficient funds to support a reorganization.

Indeed, this Court recognized at the hearing on the "first-day" motions, that this is not a reorganization "earn-out" case; rather, the Court suggested that this will be a case where the Debtors will need to quickly sell their assets. This Court also admonished that the Debtors should not be using the funds from the profitable operating entities to buttress the operations of the unprofitable operating entities. All of the above weighs in favor of keeping the Receiver in place an oversight capacity.[9]

### 3. Prior Instances of Mismanagement.

In *Orchards*, the court found evidence of mismanagement by the debtor where the debtor was making payments to its equity holders while "the Debtor was not paying its debts as they became due in the ordinary course of its business," including payment of its secured loan obligations and property taxes, which payments the court concluded were "not a reasonable exercise of business judgment." *Id.* at 354; *see also In re Constable Plaza Associates, L.P.*, 125 B.R. 98, 104 (Bankr. S.D.N.Y. 1991) (turnover required where only evidence of mismanagement was "a default in the payment of monthly mortgage interest installments.").

Here, the Debtors have failed to pay their three primary constituencies (*i.e.* the secured creditor, the landlords, and the trademark licensor). In addition, the Debtors propose to make

---

[9] It is curious – indeed mind-boggling – that the Debtors, who knew about the state court sale transaction for weeks, made no protest and no objection to the transaction, asked for no delay and offered no alternative or a "better deal." All they did was file bankruptcy cases. An argument exists that these cases were filed in bad faith—not for the purpose of reorganizing the financial affairs of the Debtors, but merely to gain the benefit of the automatic stay. Further support for this proposition comes from the Debtors who have announced to the Court and parties in interest their intent to "sell to a 'white knight.'" *See Bal Harbour Club, Inc. v. AVA Dev., Inc. (In re Bal Harbour Club, Inc.)*, 316 F.3d 1192 (11th Cir. 2003) (finding that the filing of the debtor's bankruptcy petition to prevent a purchaser from buying real property pursuant to an agreement made before a change in control of the debtor's board of directors constituted bad faith justifying dismissal of the debtor's chapter 11 bankruptcy case).

payments, during the pendency of their cases, to the Debtors' principal, Dr. Amster and his daughter, Jennifer Amster, both statutory insiders of the Debtor, as well as RPG, also a statutory insider by virtue of its being an affiliate of the Debtor. These issues demonstrate that the Receiver should be kept in place in an oversight capacity.

### 4. Use of Turned Over Property for Benefit of Creditors.

Here, the Receiver was appointed to safeguard the Collateral, to stabilize the Debtors' operations and to maximize the recovery of the value of the Collateral for the benefit of Opus Bank and the Debtors' other creditors. The financial projections submitted by the Debtors in connection with their cash collateral motion illustrate that total amount of cash and accounts receivable securing Opus Bank's claim will decrease by approximately $40,000 over a three-month period, and that Opus Bank's secured claim will increase by approximately $96,000 over that same period. *See* Request for Judicial Notice concurrently filed herewith, Exh. 1, at p. 18 of 25. The depletion of Opus Bank's collateral and the increase in its secured claim indicate that Opus Bank <u>is not adequately protected</u> and that the turnover Collateral is not being used for the benefit of Opus Bank. Moreover, with the commencement of the bankruptcy cases, there is a concern and a risk that the Debtors will be operated in a manner solely for the benefit of the Debtors' insiders and their affiliates. Keeping the Receiver in place in an oversight capacity will mitigate against this risk.

### 5. Other Creditors' Interests.

In *Foundry*, the court found that the state court-appointed receiver should be excused from turnover where the debtor's largest creditor was undersecured, other creditors had no hope of recovery unless the value of the property at issue was enhanced, and the largest creditor would be more likely to cooperate with a receiver in place "if it should be necessary to advance funds for operating expenses or tenant improvements" which would enhance the value of the property. *Foundry*, 129 B.R. at 558. Here, as in *Foundry*, it appears that the other creditors of the estates only hope of recovery is preservation of the Collateral and the proceeds derived therefrom. Additionally, given the Debtors' demonstrated inability to make their required loan payments,

11

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

rent payments and licensing payments, Opus Bank would be more willing to work with the Debtors provided that the Receiver remains in place in an oversight capacity. Thus, this final factor also weighs in favor of keeping the Receiver in place in an oversight capacity.

For all these reasons, the Receiver must be allowed to remain in place in an oversight capacity. Therefore, Opus Bank requests that, effective as of the Petition Date, and notwithstanding the obligations imposed under section 543(a) and (b), the Receiver shall continue to maintain an oversight role with respect to each of the Debtors, and shall be permitted to obtain financial reporting directly from the Debtors, RPG, the Debtors' financial advisors or investment banker, and the Debtors' counsel. The financial reporting shall include, among other things, financial statements (including balance sheets, income statements and statements of cash flow), budget reports, inventory schedules, accounts receivable schedules, accounts payable schedules, pro forma financial statements, bank account statements, payroll reports and any other report respecting the assets, liabilities, financial condition or operation of the Debtors. The Collateral provides the only source of recovery to Opus Bank and the Debtors' other creditors. Without the retention of the Receiver in an oversight capacity, the creditors face irreparable harm.

### C. Cause Exists to Grant the Receiver Limited Relief From the Automatic Stay.

Additionally, Opus Bank requests that the Court grant limited relief from the automatic stay for cause pursuant to Section 362(d)(1) in order to allow the Receiver to continue in this oversight capacity and to perform all other functions authorized or directed by the Receiver Order to the extent that they are consistent with this oversight capacity.

Upon the request of a party in interest, a court shall grant relief from the automatic stay for cause, which includes the lack of adequate protection of the party's interest in property. 11 U.S.C. § 362(d)(1). The debtor carries the burden of proof to establish adequate protection. 11 U.S.C. § 362(g). In addition to lack of adequate protection, cause can be established by virtue of other factors and is to be determined on a case-by-case basis. *In re Tucson Estate, Inc.*, 912 F.2d 1162 (9th Cir. 1990); *In re Trident Associates Ltd. Partnership*, 52 F.3d 127 (6th Cir. 1995). As

12

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 29831280V2

discussed in detail herein, cause exists to grant the Receiver limited relief from the automatic stay in order to allow the Receiver to continue in this oversight capacity.

## IV.     CONCLUSION

Based on the foregoing, Opus Bank respectfully requests that the Court grant the Motion and partially excuse the Receiver from the turnover requirements of Section 543(a) and (b) in order to permit the Receiver to remain in place principally in an oversight capacity to monitor the business operations of the Debtors and to provide financial reporting to Opus Bank, other creditors of the Debtors, the United States Trustee and this Court.

DATED: August 11, 2017                    BUCHALTER, a Professional Corporation


By:   */s/ Anthony J. Napolitano*

BARRY A. SMITH
STEVEN M. SPECTOR
ANTHONY J. NAPOLITANO

Attorneys for Secured Creditor Opus Bank

13

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543; AND (II) GRANTING LIMITED RELIEF FROM STAY**

BN 29831280V2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
BUCHALTER, 1000 Wilshire Blvd, Suite 1500, Los Angeles, CA 90017

A true and correct copy of the foregoing document entitled (*specify*)**: OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXCUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543(A) AND (B); AND (II) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 11, 2017 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
COUNSEL FOR HOAG URGENT CARE: Michael T Delaney    mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
STAFF ATTY UST: Michael J Hauser    michael.hauser@usdoj.gov
COUNSEL HOAG URGENT CARE: Ashley M McDow    amcdow@bakerlaw.com, mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com
COUNSEL OPUS: Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
COUNSEL HOAG MEMORIAL: Randye B Soref    rsoref@polsinelli.com, acruickshank@polsinelli.com
COUNSEL FOR OPUS: Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
OFFICE UST: United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) August 11, 2017 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*Debtor*
**Hoag Urgent Care-Tustin, Inc.**
PO Box 8979
Newport Beach, CA 92658

David Stapleton, as receiver
515 South Flower Street, 36th Floor
Los Angeles, CA 90071

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 11, 2017 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Via Messenger:
Hon. Theodor C. Albert
U.S. Bankruptcy Court
411 W. Fourth Street, Suite 5085
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 11, 2017 | Sandra I. Alarcon | /s/ Sandra I. Alarcon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**