1 Ashley M. McDow (245114)
 Michael T. Delaney (261714)
2 Fahim Farivar (252153)
 **BAKER & HOSTETLER LLP**
3 11601 Wilshire Boulevard, Suite 1400
 Los Angeles, CA  90025-0509
4 Telephone: 310.820.8800
 Facsimile: 310.820.8859
5 Email: amcdow@bakerlaw.com
  mdelaney@bakerlaw.com
6  ffarivar@bakerlaw.com

7 [Proposed] Attorneys for Debtors and
 Debtors in Possession

8

   **UNITED STATES BANKRUPTCY COURT**

9

   **CENTRAL DISTRICT OF CALIFORNIA**

10

   **SANTA ANA DIVISION**

11

| | |
|---|---|
| In re | Lead Case No.: 8:17-bk-13077-TA |
| HOAG URGENT CARE-TUSTIN, INC., et al., | Chapter 11 |
|    Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8-17-bk-13079-TA; 8:17-bk-13080-TA; 8-17-bk-13089-TA; 8-17-bk-13090-TA) |
| Affects: | **REPLY TO OPPOSITION OF OPUS BANK TO EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED, AND (3) GRANTING RELATED RELIEF** |
| ☐ All Debtors | |
| ☐ Cypress Urgent Care, Inc., a California corporation, ONLY | Hearing:<br>Date: August 29, 2017 |
| ☐ Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY | Time: 2:00 p.m.<br>Place: Courtroom 5B |
| ☐ Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY |   U.S. Bankruptcy Court<br>  411 West Fourth Street<br>  Santa Ana, CA 92701 |
| ☐ Hoag Urgent Care – Orange, Inc., a California corporation, ONLY | |
| ☐ Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY | |
| ☐ Laguna-Dana Urgent Care, Inc., a California corporation, ONLY | |

1  Cypress Urgent Care, Inc., Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-

2  Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., Hoag Urgent Care-Tustin, Inc., and

3  Laguna-Dana Urgent Care, Inc. (collectively, the "Debtors"),[1] the debtors and debtors in

4  possession in the above-captioned, jointly administered bankruptcy cases (collectively, the

5  "Bankruptcy Cases"), hereby submit the within reply (the "Reply") to the *Opposition of Opus*

6  *Bank to the Debtor's Emergency Motion for Order (1) Authorizing the Interim Use of Cash*

7  *Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected, and (3) Granting*

8  *Related Relief* (the "Opposition") [Docket Entry ("D.E.") 51].

## I.    INTRODUCTION

10  Bankruptcy is designed to provide debtors respite from their creditors and a full and fair

11  opportunity to reorganize their affairs or otherwise address the claims of their creditors in an

12  orderly fashion.  Whether the instant Bankruptcy Cases end in a sale of the businesses or a

13  reorganization, the continued operation of the clinics operated by the Debtors (collectively, the

14  "Clinics") is paramount to the protection of all creditors.  Opus Bank ("Opus"), however, has

15  demonstrated a consistent disregard for the interests of any creditors but itself.  The Opposition is

16  merely the most recent manifestation of its self-interested agenda.

17  More precisely, by and through the Opposition, Opus does not seek to establish a right to

18  cash collateral—indeed, Opus offers no evidence or other support for the conclusion that it holds

19  a valid interest in any funds collected by the Debtors post-petition (despite the express

20  requirement that it do so pursuant to 11 U.S.C. § 363(p)(2))—or propose what it believes would

21  constitute adequate protection if it could in fact establish a right to adequate protection.  To the

22  contrary, Opus adopts a draconian position premised on little more than opinion and a flawed

23  analysis of financial projections.  More precisely, relying solely on an "analysis" prepared by

24  David P. Stapleton (the "Receiver"), Opus contends that the Bankruptcy Cases are doomed and

25  that the Court should *sua sponte* dismiss the Bankruptcy Cases because the Debtors filed to

26

27

28

---

[1] Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., and Hoag Urgent Care-Tustin, Inc. may be referred to herein collectively as the "Hoag Debtors".

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  submit an alternate proposal for the liquidation of the Debtors' business *within the first **two weeks***

2  *of the Bankruptcy Cases*.

3      In addition to the absurd and arbitrary deadlines and suggested dispositions proposed in

4  the Opposition, the Opposition (and any request for adequate protection) suffers from several

5  fatal flaws.  As a preliminary matter, Opus has failed to carry its burden of establishing an interest

6  in any "cash collateral."  Indeed, as discussed *infra*, Opus cannot establish any security interest in

7  the proceeds (the "Proceeds") from the pre-petition accounts receivable derived from the Clinics

8  (the "Clinic AR") as Opus failed to perfect such a security interest prior to the commencement of

9  the Bankruptcy Cases and, by virtue of section 549 of the Bankruptcy Code,[2] is now precluded

10  from establishing such an interest.  As Opus has not, and, indeed, cannot, establish a security

11  interest in the Proceeds, no authority or adequate protection is required in order to use the

12  Proceeds in the ordinary course of the Debtors' respective businesses.  Furthermore, with respect

13  to the assets subject to the security interest asserted by Opus, no (or *de minimis*) adequate

14  protection is required as the "use" of these assets does not diminish the security interest (if any)

15  Opus asserts in the same.

16      Accordingly, the Debtors request that the Court find that Opus lacks any interest in the

17  Proceeds and, as such, the Proceeds do not constitute cash collateral and that any security interest

18  Opus possesses in the assets of the Debtors is adequately protected, to the extent necessary, and,

19  based thereon, grant the continued use of cash collateral in accordance with the budget filed in

20  support of the *Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral*

21  *Pursuant to 11 U.S.C. § 363, (2) Finding Prepetition Secured Creditors Adequately Protected*

22  *Pursuant to 11 U.S.C. §§ 361 and 363, and (3) Granting Related Relief* (the "Motion") [D.E. 12].

23  **II.    DISCUSSION**

24      The central questions presented by the Opposition are whether Opus has any cash

25  collateral and, if so, what "adequate protection," if any, Opus is entitled to receive for the use of

26

27

28

---

[2] As used herein, "Bankruptcy Code" refers to title 11 of the United States Code (11 U.S.C. §§ 101, *et seq*.).  Unless otherwise noted, any reference to "section _____ " refers to the corresponding section and/or subsection of the Bankruptcy Code.

611224206.1

"cash collateral."  "Cash collateral" is a concept established under section 363 of the Bankruptcy Code.  As used in section 363:

> "[C]ash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property … whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).  Pursuant to section 363(c), a debtor in possession "may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  Pursuant to section 363(e), the authority to use cash collateral may be conditioned upon the provision of "adequate protection of such interest."  More precisely, section 363(e) provides, in pertinent part: "[A]t any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

The foundation inquiry in determining whether "adequate protection," among other things, is required as a condition to the use of cash collateral is whether "an entity other than the estate" has an interest in subject assets.  In making this determination, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest."  11 U.S.C. § 363(p)(2).

### A. Opus Failed Establish a Security Interest in the Proceeds or a Right to Adequate Protection Based on the Use of the Same

By and through the Opposition, Opus presumes that it possesses a security interest in the Proceeds and, thus, the Proceeds constitute "cash collateral" under section 363—thereby entitling Opus to "adequate protection" for the use of the same.  In support of this position, Opus ostensibly relies on two commercial security agreements between the Debtors and Opus (the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

611224206.1

1  "Security Agreements").  In describing the collateral for the associated loans, the Security

2  Agreements contain substantively similar (if not identical) provisions:

3  The word "Collateral" as used in this Agreement means the Following described
4  property, whether now owned or hereafter acquired, whether now existing or
   hereafter arising, and wherever located, in which Grantor is giving to Lender a
   security interest for the payment of the indebtedness and performance of all other
5  obligations under the Note and this Agreement:

6  All inventory, equipment, accounts (including but not limited to all health-
   care-insurance receivables), chattel paper, instruments (including but not
7  limited to all promissory notes), letter-of-credit rights, letters of credit,
   documents, deposit accounts, investment property, money, other rights to
8  payment and performance, and general intangibles ...; all fixtures; ... all
   attachments, accessions, accessories, fittings, increases, tools, parts, repairs,
9  supplies, and commingled goods relating to the foregoing property, and all
   additions, replacements of and substitutions for all or any part of the
10 foregoing property; all insurance refunds relating to the foregoing property;
   all good will relating to the foregoing property; all records and data and
11 embedded software relating to the foregoing property, and all equipment,
   inventory and software to utilize, create, maintain and process any such
12 records and data on electronic media; and all supporting obligations
   relating to the foregoing property; all whether now existing or hereafter
13 arising, whether now owned or hereafter acquired or whether now or
   hereafter subject to any rights in the foregoing property; and all products
14 and proceeds (including but not limited to all insurance payments) of or
   relating to the foregoing property.
15
16 In addition, the word "Collateral" also includes all the following, whether now
   owned or hereafter acquired, whether now existing or hereafter arising, and
17 wherever located:

18 (A) All accessions, attachments, accessories, tools, parts, supplies,
   replacements of or additions to any of the collateral described herein,
19 whether added now or later.

20 (B) All products and produce of any of the property described in this
   Collateral section.

21 (C) All accounts, general intangibles, instruments, rents, monies, payments,
22 and all other rights, arising out of a sale, lease, consignment or other
   disposition of any of the property described in this Collateral section.

23 (D) All proceeds (including insurance proceeds) from the sale, destruction,
24 loss, or other disposition of any of the property described in this Collateral
   section, and sums due from a third party who has damaged or destroyed the
25 Collateral or from the party's insurer, whether due to judgment, settlement
   or other process.

26 (E) All records and data relating to any of the property described in this
   Collateral section, whether in the form of a writing, photograph, micro
27 film, microchip, or electronic media, together with all of Grantor's right,
   title, and interest in and to all computer software required to utilize, create,
28 maintain, and process any such records or data on electronic media.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

611224206.1

1 | *See* D.E. 16, at pp. 25, 69.

2 |     The description of the purported collateral in the Security Agreements, however, is not

3 | proof of a valid and enforceable security interest in the identified assets.  To the contrary, a

4 | security agreement is merely that—an agreement to grant a security interest.  To possess a

5 | security interest, the grantee of such an interest must perfect the interest in accordance with

6 | applicable law—here, the laws of the State of California.  *See* D.E. 16, at pp. 29, 73.  In this case,

7 | Opus filed Uniform Commercial Code ("<u>UCC</u>") Financing Statements (the "<u>UCC-1s</u>") in an

8 | effort to perfect a security interest in the collateral described in the Security Agreements (the

9 | "<u>Collateral</u>").  *See* D.E. 16, at pp. 33, 85.  In so doing, Opus possibly perfected a security interest

10 | in, among other things, the Clinic AR.[3]  Such a security interest, if any, however, is limited by

11 | applicable law.

12 |     Pursuant to section 552, the commencement of the Bankruptcy Cases terminated any

13 | interest Opus might have in the accounts receivable generated by the operation of the Clinic

14 | following the Petition Date.  More precisely, section 552 provides, in pertinent part:

> (a) Except as provided in subjection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> (b)(1) … if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law ….

22 | 11 U.S.C. § 552.  Thus, in application, Opus may only claim a security interest in the Clinic AR

23 | and proceed derived therefrom (i.e., the Proceeds)—not the accounts receivable generated by the

24 | operation of the Clinic following the Petition Date.  Additionally, Opus may only claim a security

25 | interest in the Proceeds to the extent permitted by applicable nonbankruptcy law.  Opus has failed

26 | to establish that its security interest, if any, attaches to the Proceeds under applicable

---

[3] To avoid any confusion, as used here, "Clinic AR" refers solely to the accounts receivable generate by the Debtors prior to the petition date—August 2, 2017 (the "<u>Petition Date</u>").  "Clinic AR" <u>does not</u> include or refer to any accounts receivable generate by the Debtors following the Petition Date.

611224206.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  nonbankruptcy law.  Indeed, as discuss *infra*, Opus cannot, as a matter of law, establish a security

2  interest in the Proceeds under applicable nonbankruptcy law.

3     The Proceeds consist of revenues from healthcare receivables or "health-care-insurance

4  receivables."  Unif. Comm. Code § 9-102(46) ("'[H]ealth-care-insurance receivable' means an

5  interest in or claim under a policy of insurance which is a right to payment of a monetary

6  obligation for health-care goods or services provided.").  Ordinarily, a lender may perfect a

7  security interest in healthcare receivables by filing a UCC financing statement, which grants the

8  lender a security interest in the proceeds from the healthcare receivables.  *See* Cal. Comm. Code

9  § 9315(b)(3).  Opus filed the UCC-1s, which purported to grant a security interest in the Clinic

10  AR and, thus, purportedly the Proceeds.  The issue arises upon collection of the Clinic AR.

11     Upon collection, the Clinic AR is converted into cash—i.e., the Proceeds—which is

12  deposited into a bank account in the Debtors' names and, thereafter, pursuant to the Debtors' cash

13  management system, is transferred into the debtor in possession accounts.  Under California law,

14  the act of transferring funds strips-off any security interest in the funds—whether the interest

15  attached to the funds due to the fact the funds were the proceeds of collateral or were held in a

16  deposit account subject to a perfected security interest.  *See* Cal. Comm. Code § 9332 ("(a) A

17  transferee of money takes the money free of a security interest …. (b) A transferee of funds from

18  a deposit account takes the funds free of a security interest in the deposit account …."); *see also*

19  *In re Machinery, Inc.*, 342 B.R. 790, 795-96 (Bankr. E.D. Mo. 2006) (applying analogous

20  Missouri law).  As the transfer of the Proceeds stripped-off any lien(s) Opus may claim therein,

21  the only way for Opus to assert a security interest over the Proceeds is for Opus to possess a lien

22  over the account into which the Proceeds were deposited.

23     Pursuant to Cal. Comm. Code §§ 9312 and 9314, a security interest in a deposit account is

24  established through control of the account.  Cal. Comm. Code §§ 9312, 9314.  Under Cal. Comm.

25  Code § 9104, a secured party has "control" of a deposit account if the secured party is the bank

26  with which the deposit account is maintained or the secured party, the debtor and the depository

27  enter into a control agreement.  Under Cal. Comm. Code § 9104(a).  Opus has failed to establish

28  control of the debtor in possession accounts and, as such, Opus has failed to establish an interest

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611224206.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   in the Proceeds which therein reside.  More importantly, however, Opus does not have control

2   over the debtor in possession accounts.  The debtor in possession accounts are not on deposit with

3   Opus and Opus, the Debtors and the depository have not entered into any control agreement with

4   respect to the debtor in possession accounts.  As such, Opus does not have a security interest in

5   the Proceeds.

6       Opus also lacks the ability to establish a security interest in the depository accounts under

7   applicable nonbankruptcy law.  The Proceeds consist, in part, of payments from Medicare and

8   Medicaid.  Disbursements from Medicare and Medicaid are governed by certain anti-assignment

9   statutes.  The provisions prohibit the payment of any Medicare and Medicaid disbursements to

10  anyone other than the provider or billing medical professional.  *See* 42 U.S.C. §§ 1396g(c),

11  1396a(32).  Additionally, the regulations governing the payment of Medicare and Medicaid

12  disbursements strictly governs the role of banks and the ability of banks to assert any control over

13  deposit accounts into which such funds are deposited.  More precisely, section 3488.2 of the

14  Centers for Medicare and Medicaid Services Intermediary Manual provides that the medical

15  service provider must exercise exclusive control over any and all bank accounts into which

16  Medicare and Medicaid funds are deposited.  Thus, as Opus may only assert a security interest in

17  the Proceeds via control of the subject accounts and Opus, as a matter of law, cannot assert

18  control over such accounts, Opus cannot, as a matter of law, assert a security interest in the

19  Proceeds—notwithstanding the Security Agreements and UCC-1s.

20      In sum, Opus is only entitled to adequate protection if the Debtors use and, in so doing,

21  diminish cash collateral.  As Opus cannot assert a security interest in the Proceeds under

22  applicable nonbankruptcy law, and, thus, the Proceeds cannot constitute "cash collateral" as a

23  matter of law, Opus is not entitled to adequate protection for the use or diminution of the

24  Proceeds during the pendency of the bankruptcy.[4]

25

26

27  ---
[4] To the extent legally possible, Opus cannot now attempt to establish a security interest in the Proceeds as the
creation of a security interest in one of the most valuable assets of the Debtors post-petition would not only violated
28  section 549, it would substantially disadvantage general unsecured creditors, which may benefit from the availability
of these funds to finance business operations and fund a plan of reorganization.

REPLY TO OPUS BANK OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL

611224206.1

**B.    Opus is Not Entitled to Adequate Protection on Account of Any interest in the Clinic AR**

Although lacking any valid security interest in the Proceeds, Opus may possess a security interest in the Clinic AR.[5]  However, even assuming, *arguendo*, Opus has an interest in the Clinic AR, Opus is not entitled to adequate protection on account of such interest because the Debtors are not using, selling or leasing the Clinic AR or causing any diminution in the value of the Clinic AR.  To the contrary, the Clinic AR is collected by the Debtors in the ordinary course of business and, often times, without any affirmative action aside from presenting a bill for services rendered.  Additionally, adequate protection is designed to protect any diminution in the value of the collateral.  *See* 11 U.S.C. § 361.  The collection of the Clinic AR does not diminish the value of the Clinic AR.  Rather, the collection merely converts the Clinic AR into Proceeds.  Any harm to Opus resulting from the collection of Clinic AR is the result of Opus failing to perfect its interest in the Proceeds (to the extent legally possible) prior to the commencement of the Bankruptcy Cases.  Notwithstanding, to the extent the Court determines that Opus is entitled to adequate protection, the Debtors respectfully submit that the continuation of the replacement lien provided under the Cash Collateral Order provides sufficient adequate protection for the collection of the Clinic AR.

**C.    Opus is Not Entitled to Substantial Adequate Protection on Account of Any Interest in Equipment**

Pursuant to the Security Agreements and UCC-1s, Opus has asserted a security interest in certain equipment utilized by the Debtors in the course of their operations.  The equipment utilized by the Debtors is primarily for medical diagnostic purposes and, as such, the use of the equipment does not generally decrease its usefulness or inherent value.  Accordingly, any diminution in the value of the equipment is the result of depreciation.  As the equipment is older,

---

[5] Pursuant to the Order Granting the Debtors' Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral Pursuant to 11 U.S.C. 363, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11 U.S.C. 361 and 363, and (3) Granting Related Relief (the "Cash Collateral Order"), Opus was granted a temporary and limited replacement lien in certain assets.  While this lien may encompass accounts receivables generated after the Petition Date, Opus has failed to establish the nature, validity and scope of the potential lien.  Additionally, as the temporary lien is coextensive with the pre-Petition Date security interest, it does not establish a security interest in any of the proceeds from accounts receivable generated after the Petition Date.

611224206.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   the depreciation is minimal and, in all likelihood, does not exceed $1,000 per year.  Accordingly,

2   as adequate protection for the continued use of the equipment, the Debtors shall segregate the

3   amount of $1,000 per year in a cash collateral account.[6]

4       **D.**    **If Secured by the Proceeds, an Evidentiary Hearing is Warranted to**

5       **Determine the Proper Adequate Protection**

6          In the event the Court determines that Opus is secured by the Proceeds or is entitled to

7   adequate protection on account of the collection of the Clinic AR (or any post-Petition Date

8   accounts receivable), the Debtors respectfully request that the Court continue the interim period

9   under the Cash Collateral Order and set the Motion for an evidentiary hearing to what, if any,

10  adequate protection the Debtors must provide and the form in which such adequate protection

11  must be provided.  Such a hearing is warranted given the number of issues identified by the

12  projections and financial report submitted by Opus in support of the Opposition (the "Receiver

13  Report") and the inaccurate representation regarding the Debtors' budget and cash flow

14  projections submitted in support of the Motion.  *See* D.E. 52.

15         More precisely, additional time is warranted in order to better understand the manner in

16  which the parties prepared their respective reports.  Indeed, evaluating the question of adequate

17  protection at this junction is all but impossible given the dearth of information and substantiation

18  provided for the Receiver Report.  Indeed, at this time, it is even unclear what methodology Opus

19  employed in the Receiver Report.  Based on available information, it appears that the Receiver

20  Report is based upon June and July 2017 estimates derived from recent cash activity, which is a

21  far less reliable method for projecting future billings, collections and revenues than the

22  methodology employed by the Debtors' proposed financial advisor, Force 10 Partners ("F10").

23  However, the Debtors have no way of determining what methodology was used due to the

24  incomplete information provided.  As Opus has provided so little information in support of the

25

26  ─────────────

[6] Prior to the Petition Date, Opus executed a settlement agreement with Newport Healthcare Center LLC

27  ("Newport") and the pre-Petition Date receiver—therein acknowledging a dispute regarding the respective interest of
    Opus and Newport to the equipment.  Until resolved, the Debtors submit that paying adequate protection directly to
    either Opus or Newport may result in harm to the bankruptcy estate if the payments are made to the party that is not

28  ultimately determined to be the senior lienholder against or owner of the equipment.  Segregating funds permits the
    Debtors to avoid any potential harm.

611224206.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Receiver Report, the Debtors respectfully submit that the Court (and the Debtors) would benefit

2    from an opportunity to hear testimony on the financial projections submitted by the parties before

3    rendering any decision on adequate protection, which is directly informed by the financial reports,

4    or, as Opus seems to request, reaching a determination about the ultimate disposition of the

5    Bankruptcy Cases.

6    **III.    CONCLUSION**

7             WHEREFORE, the Debtors respectfully request that the Court enter an order (1) finding

8    that Opus lacks any security interest in the Proceeds, (2) finding that Opus lacks any interest in

9    post-Petition Date accounts receivables or the proceeds therefrom, (3) finding that Opus is not

10   entitled to any adequate protection on account of the use of the Proceeds or collection of the

11   Clinic AR and/or post-Petition Date accounts receivables or, alternatively, that the continuation of

12   the replacement lien provided under the Cash Collateral Order provides adequate protection for

13   any interest held by Opus, (4) finding that segregating $1,000 per year until Opus resolves any

14   disputes regarding its interest in the equipment utilized by the Debtors constitutes adequate

15   protection of any interest Opus may have therein, (5) authorizing the Debtors to use any cash

16   collateral of Opus in the ordinary course of their business in accordance with the previously-

17   proposed and approved budget, and (6) granting any further or additional relief the Court deems

18   due and proper.

19

20   Dated:    August 22, 2017               Respectfully submitted,

21

22                                           **BAKER & HOSTETLER LLP**

23                                           By:    /s/ Michael T. Delaney
                                                    _____
24                                                  Ashley M. McDow
                                                    Michael T. Delaney
25                                                  Fahim Farivar

26                                           [Proposed] Attorneys for Debtors and
                                             Debtors in Possession
27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY TO OPUS BANK OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL

611224206.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): REPLY TO OPPOSITION OF OPUS BANK TO EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED, AND (3) GRANTING RELATED RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 22, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael T Delaney     mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
Michael J Hauser     michael.hauser@usdoj.gov
Ashley M McDow     amcdow@bakerlaw.com,
mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com;nbrazil@bakerlaw.com
Anthony J Napolitano     anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
Mary H Rose     mrose@buchalter.com, salarcon@buchalter.com
Randye B Soref     rsoref@polsinelli.com, acruickshank@polsinelli.com
Steven M Spector     sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY ~~PERSONAL DELIVERY,~~ OVERNIGHT MAIL~~, FACSIMILE TRANSMISSION OR EMAIL~~** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 22, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Presiding Judge
Hon. Theodor C. Albert
U.S. Bankruptcy Court
411 West Fourth St., Ste. 5085
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 22, 2017 | Michael T. Delaney | /s/ Michael T. Delaney |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.