Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
    mdelaney@bakerlaw.com
    ffarivar@bakerlaw.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Lead Case No.: 8:17-bk-13077-TA |
| HOAG URGENT CARE-TUSTIN, INC., et al., | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8-17-bk-13079-TA; 8:17-bk-13080-TA; 8-17-bk-13089-TA; 8-17-bk-13090-TA) |
| Affects: | |
| ■ All Debtors | **NOTICE OF ERRATA RE REPLY TO OPPOSITION OF OPUS BANK TO EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED, AND (3) GRANTING RELATED RELIEF** |
| ☐ Cypress Urgent Care, Inc., a California corporation, ONLY | |
| ☐ Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY | |
| ☐ Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY | Hearing:<br>Date:    August 29, 2017<br>Time:    2:00 p.m.<br>Place:    Courtroom 5B |
| ☐ Hoag Urgent Care – Orange, Inc., a California corporation, ONLY | U.S. Bankruptcy Court<br>411 West Fourth Street<br>Santa Ana, CA 92701 |
| ☐ Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY | |
| ☐ Laguna-Dana Urgent Care, Inc., a California corporation, ONLY | |

**TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY JUDGE, INTERESTED PARTIES AND/OR THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Cypress Urgent Care, Inc., Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., Hoag Urgent Care-Tustin, Inc., and Laguna-Dana Urgent Care, Inc. erroneously filed a draft of the *Reply to Opposition of Opus Bank to the Debtor's Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected, and (3) Granting Related Relief* (the "Reply") [Docket Entry 61]. The correct version of the Reply is attached hereto.

Dated: August 23, 2017            Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  /s/ Michael T. Delaney
     Ashley M. McDow
     Michael T. Delaney
     Fahim Farivar

[Proposed] Attorneys for Debtors and
Debtors in Possession

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    amcdow@bakerlaw.com
    mdelaney@bakerlaw.com
    ffarivar@bakerlaw.com

[Proposed] Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>HOAG URGENT CARE-TUSTIN, INC., et al.,<br><br>Debtors and Debtors in Possession.<br><br>Affects:<br><br>■  All Debtors<br><br>☐  Cypress Urgent Care, Inc., a California corporation, ONLY<br><br>☐  Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY<br><br>☐  Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY<br><br>☐  Hoag Urgent Care – Orange, Inc., a California corporation, ONLY<br><br>☐  Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY<br><br>☐  Laguna-Dana Urgent Care, Inc., a California corporation, ONLY | Lead Case No.: 8:17-bk-13077-TA<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8-17-bk-13079-TA; 8:17-bk-13080-TA; 8-17-bk-13089-TA; 8-17-bk-13090-TA)<br><br>**REPLY TO OPPOSITION OF OPUS BANK TO EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED, AND (3) GRANTING RELATED RELIEF**<br><br>Hearing:<br>Date:    August 29, 2017<br>Time:    2:00 p.m.<br>Place:    Courtroom 5B<br>    U.S. Bankruptcy Court<br>    411 West Fourth Street<br>    Santa Ana, CA 92701 |

Cypress Urgent Care, Inc., Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., Hoag Urgent Care-Tustin, Inc., and Laguna-Dana Urgent Care, Inc. (collectively, the "Debtors"),[1] the debtors and debtors in possession in the above-captioned, jointly administered bankruptcy cases (collectively, the "Bankruptcy Cases"), hereby submit the within reply (the "Reply") to the *Opposition of Opus Bank to the Debtor's Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected, and (3) Granting Related Relief* (the "Opposition") [Docket Entry ("D.E.") 51].

## I.    INTRODUCTION

Bankruptcy is designed to provide debtors respite from their creditors and a full and fair opportunity to reorganize their affairs or otherwise address the claims of their creditors in an orderly fashion. Whether the instant Bankruptcy Cases end in a sale of the businesses or a reorganization, the continued operation of the clinics operated by the Debtors (collectively, the "Clinics") is paramount to the protection of all creditors. Opus Bank ("Opus"), however, has demonstrated a consistent disregard for the interests of any creditors but itself. The Opposition is merely the most recent manifestation of its self-interested agenda.

More precisely, by and through the Opposition, Opus does not seek to establish a right to cash collateral—indeed, Opus offers no evidence or other support for the conclusion that it holds a valid interest in any funds collected by the Debtors post-petition (despite the express requirement that it do so pursuant to 11 U.S.C. § 363(p)(2))—or propose what it believes would constitute adequate protection if it could in fact establish a right to adequate protection. To the contrary, Opus adopts a draconian position premised on little more than opinion and a flawed analysis of financial projections. More precisely, relying solely on an "analysis" prepared by David P. Stapleton (the "Receiver"), Opus contends that the Bankruptcy Cases are doomed and that the Court should *sua sponte* dismiss the Bankruptcy Cases because the Debtors filed to

---

[1] Hoag Urgent Care-Anaheim Hills, Inc., Hoag Urgent Care-Huntington Harbour, Inc., Hoag Urgent Care-Orange, Inc., and Hoag Urgent Care-Tustin, Inc. may be referred to herein collectively as the "Hoag Debtors".

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

submit an alternate proposal for the liquidation of the Debtors' business *within the first **two weeks** of the Bankruptcy Cases*.

In addition to the absurd and arbitrary deadlines and suggested dispositions proposed in the Opposition, the Opposition (and any request for adequate protection) suffers from several fatal flaws. As a preliminary matter, Opus has failed to carry its burden of establishing an interest in any "cash collateral." Indeed, as discussed *infra*, Opus cannot establish any security interest in the proceeds (the "Proceeds") from the pre-petition accounts receivable derived from the Clinics (the "Clinic AR") as Opus failed to perfect such a security interest prior to the commencement of the Bankruptcy Cases and, by virtue of section 549 of the Bankruptcy Code,[2] is now precluded from establishing such an interest. As Opus has not, and, indeed, cannot, establish a security interest in the Proceeds, no authority or adequate protection is required in order to use the Proceeds in the ordinary course of the Debtors' respective businesses. Furthermore, with respect to the assets subject to the security interest asserted by Opus, no (or *de minimis*) adequate protection is required as the "use" of these assets does not diminish the security interest (if any) Opus asserts in the same.

Accordingly, the Debtors request that the Court find that Opus lacks any interest in the Proceeds and, as such, the Proceeds do not constitute cash collateral and that any security interest Opus possesses in the assets of the Debtors is adequately protected, to the extent necessary, and, based thereon, grant the continued use of cash collateral in accordance with the budget filed in support of the *Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11 U.S.C. §§ 361 and 363, and (3) Granting Related Relief* (the "Motion") [D.E. 12].

**II.    DISCUSSION**

The central questions presented by the Opposition are whether Opus has any cash collateral and, if so, what "adequate protection," if any, Opus is entitled to receive for the use of

---

[2] As used herein, "Bankruptcy Code" refers to title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*). Unless otherwise noted, any reference to "section ____" refers to the corresponding section and/or subsection of the Bankruptcy Code.

- 3 -
REPLY TO OPUS BANK OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL

611224206.3

"cash collateral." "Cash collateral" is a concept established under section 363 of the Bankruptcy Code. As used in section 363:

> "[C]ash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property … whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Pursuant to section 363(c), a debtor in possession "may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Pursuant to section 363(e), the authority to use cash collateral may be conditioned upon the provision of "adequate protection of such interest." More precisely, section 363(e) provides, in pertinent part: "[A]t any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor in possession], the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

The foundational inquiry in determining whether "adequate protection," among other things, is required as a condition to the use of cash collateral is whether "an entity other than the estate" has an interest in the subject assets. In making this determination, "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." 11 U.S.C. § 363(p)(2).

**A.    Opus Failed Establish a Security Interest in the Proceeds or a Right to Adequate Protection Based on the Use of the Same**

By and through the Opposition, Opus presumes that it possesses a security interest in the Proceeds and, thus, the Proceeds constitute "cash collateral" under section 363—thereby entitling Opus to "adequate protection" for the use of the same. In support of this position, Opus ostensibly relies on two commercial security agreements between the Debtors and Opus (the "Security Agreements"). In describing the collateral for the associated loans, the Security Agreements contain substantively similar (if not identical) provisions:

- 4 -

> The word "Collateral" as used in this Agreement means the Following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:
>
> > All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles …; all fixtures; … all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.
>
> In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:
>
> > (A) All accessions, attachments, accessories, tools, parts, supplies, replacements of or additions to any of the collateral described herein, whether added now or later.
> >
> > (B) All products and produce of any of the property described in this Collateral section.
> >
> > (C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.
> >
> > (D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from the party's insurer, whether due to judgment, settlement or other process.
> >
> > (E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, micro film, microchip, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

*See* D.E. 16, at pp. 25, 69.

The description of the purported collateral in the Security Agreements, however, is not proof of a valid and enforceable security interest in the identified assets. To the contrary, a security agreement is merely that—an agreement to grant a security interest. To possess a security interest, the grantee of such an interest must perfect the interest in accordance with applicable law—here, the laws of the State of California. *See* D.E. 16, at pp. 29, 73. In this case, Opus filed Uniform Commercial Code ("UCC") Financing Statements (the "UCC-1s") in an effort to perfect a security interest in the collateral described in the Security Agreements (the "Collateral"). *See* D.E. 16, at pp. 33, 85. In so doing, Opus possibly perfected a security interest in, among other things, the Clinic AR.[3] Such a security interest, if any, however, is limited by applicable law.

Pursuant to section 552, the commencement of the Bankruptcy Cases terminated any interest Opus might have in the accounts receivable generated by the operation of the Clinic following the Petition Date. More precisely, section 552 provides, in pertinent part:

> (a) Except as provided in subjection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> (b)(1) … if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law ….

11 U.S.C. § 552. Thus, as a basic premise (and setting aside the imposition of any "replacement liens" and any collateral other than the Clinic AR),[4] Opus only has a security interest in the Clinic

---

[3] To avoid any confusion, as used here, "Clinic AR" refers solely to the accounts receivable generated by the Debtors prior to the petition date—August 2, 2017 (the "Petition Date"). "Clinic AR" does not include or refer to any accounts receivable generated by the Debtors following the Petition Date.

[4] Pursuant to the Order Granting the Debtors' Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral Pursuant to 11 U.S.C. 363, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11 U.S.C. 361 and 363, and (3) Granting Related Relief (the "Cash Collateral Order"), Opus was granted a temporary and limited replacement lien in certain assets. While this lien may encompass accounts receivables generated after the Petition Date, Opus has failed to establish the nature, validity and scope of the potential lien. Additionally, as the temporary lien is coextensive with the pre-Petition Date security interest, it does not establish a security interest in any of the proceeds from accounts receivable generated after the Petition Date.

AR and proceeds generated on account thereof (i.e., the Proceeds)—not the accounts receivable generated by the operation of the Clinic following the Petition Date.  Additionally, Opus only has a security interest in the Proceeds to the extent permitted by applicable nonbankruptcy law.  Opus has failed to establish that its security interest, if any, attaches to the Proceeds under applicable nonbankruptcy law.  Indeed, as discuss *infra*, Opus cannot, as a matter of law, establish a security interest in the Proceeds under applicable nonbankruptcy law.

The Proceeds consist of revenues from healthcare receivables or "health-care-insurance receivables." Unif. Comm. Code § 9-102(46) ("'[H]ealth-care-insurance receivable' means an interest in or claim under a policy of insurance which is a right to payment of a monetary obligation for health-care goods or services provided.").  As a matter of state law, a lender can perfect their security interest in a healthcare receivable by filing a UCC financing statement and, if that security interest is properly perfected, any and all identifiable proceeds generated from or on account of these receivables will be automatically perfected.[5]  *See* Cal. Comm. Code § 9315(b)(3).

However, the specific facts and circumstances of this case, as well as the interplay of bankruptcy and public health and welfare law, mandate a different result.  More specifically, both commercial and government payors deposit funds on account of the Clinic AR (i.e., the Proceeds) directly into the Debtors' bank account, which are currently held at Opus.  Consistent with pre-petition operations, and pursuant to the *Order Granting the Debtors' Emergency Motion for Order (1) Authorizing the Maintenance of Existing Bank Accounts and (2) Authorizing the Continued Use of Cash Management System* [D.E. 29], those funds are then regularly swept (approximately once a week) into accounts held by the Debtors at Pacific Enterprise Bank.  Under applicable nonbankruptcy law, once the funds are swept to Pacific Enterprise Bank, any security interest in the Proceeds which is perfected by virtue of Cal. Comm. Code § 9315(b)(3) (automatic perfection) is extinguished by virtue of Cal. Comm. Code § 9332.  *See* Cal. Comm. Code § 9332 ("(a) A transferee of money takes the money free of a security interest …. (b) A transferee of

---

[5] Under Cal. Comm. Code § 9315, a security interest in proceeds becomes unperfected on the 21st day after the attachment thereof unless certain conditions are satisfied.  The Debtors do not address the limitation herein.

funds from a deposit account takes the funds free of a security interest in the deposit account …."); *see also In re Machinery, Inc.*, 342 B.R. 790, 795-96 (Bankr. E.D. Mo. 2006) (applying analogous Missouri law).

Moreover, Opus does not and cannot have a perfected security interest in the account held at Pacific Enterprise Bank on the theory that the account is a "proceed" of the deposit account held at Opus because 42 U.S.C. § 1396g(c) prohibits Opus from exercising the control required under Cal. Comm. Code § 9314 to perfect a security interest in the underlying collateral absent a revocable standing Medicare/Medicaid deposit account service or control agreement (also known as a "double lockbox"), which was not in place here. More precisely, disbursements from Medicare and Medicaid are governed by certain anti-assignment statutes. The provisions prohibit the payment of any Medicare and Medicaid disbursements to anyone other than the provider or billing medical professional. *See* 42 U.S.C. §§ 1396g(c), 1396a(32). Additionally, the regulations governing the payment of Medicare and Medicaid disbursements strictly governs the role of banks and the ability of banks to assert any control over deposit accounts into which such funds are deposited. More precisely, section 3488.2 of the Centers for Medicare and Medicaid Services Intermediary Manual provides that the medical service provider must exercise exclusive control over any and all bank accounts into which Medicare and Medicaid funds are deposited. In order to account for the strict anti-assignment provisions, it is now common place for lenders to utilize "double lockboxes" to protect interests in Medicare and Medicaid receivables; however, Opus did not do so here.

As Opus cannot assert a security interest in the Proceeds under applicable nonbankruptcy law, the Proceeds cannot constitute "cash collateral" as a matter of law.[6]

---

[6] To the extent legally possible, Opus cannot now attempt to establish a security interest in the Proceeds as the creation of a security interest in one of the most valuable assets of the Debtors post-petition would not only violate section 549, it would substantially disadvantage general unsecured creditors, which may benefit from the availability of these funds to finance business operations and fund a plan of reorganization.

**B. Opus is Not Entitled to Adequate Protection on Account of Any interest in the Clinic AR**

Opus has sought relief solely under 11 U.S.C. § 363, and therefore is entitled to protection only against any decreased value that results from the debtors continued use of cash collateral. *See* COLLIER ON BANKRUPTCY § 363.05. As it is not the Debtors' "use" of the Clinic AR that is causing the value thereof to decrease, but rather the inability of Opus to obtain a security interest in the Proceeds (whether because of applicable nonbankruptcy law and/or the failure of Opus to implement a "double lockbox"), the Debtors are not obligated to provide Opus with adequate protection pursuant to 11 U.S.C. § 363 on account of any interest(s) in the Clinic AR. Notwithstanding, to the extent the Court determines that Opus is entitled to adequate protection, the Debtors respectfully submit that the continuation of the replacement lien provided under the Cash Collateral Order provides sufficient adequate protection for the collection of the Clinic AR.

**C. Opus is Not Entitled to Substantial Adequate Protection on Account of Any Interest in Equipment**

Pursuant to the Security Agreements and UCC-1s, Opus has also asserted a security interest in certain equipment and other items of personal property related to the Debtors and/or the Clinics. Any diminution in the value of such property is primarily the result of depreciation of such asset and, in all likelihood, does not exceed $1,000 per year. Accordingly, as adequate protection for the continued use of the equipment, the Debtors shall segregate the amount of $1,000 per year in a cash collateral account.[7]

**D. If Secured by the Proceeds, an Evidentiary Hearing is Warranted to Determine the Proper Adequate Protection**

In the event the Court determines that Opus has a properly perfected security interest in the Proceeds and/or is entitled to adequate protection on account of the collection of the Clinic AR (or any post-Petition Date accounts receivable), the Debtors respectfully request that the

---

[7] Prior to the Petition Date, Opus executed a settlement agreement with Newport Healthcare Center LLC ("Newport") and the former receiver—therein acknowledging a dispute regarding the respective interest of Opus and Newport to the equipment. Until resolved, the Debtors submit that paying adequate protection directly to either Opus or Newport may result in harm to the bankruptcy estate if the payments are made to the party that is not legally entitled to it. Segregating funds permits the Debtors to avoid any potential harm.

- 9 -

REPLY TO OPUS BANK OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL

611224206.3

1  Court continue the interim period under the Cash Collateral Order and set the Motion for an

2  evidentiary hearing to what, if any, adequate protection the Debtors must provide and the form in

3  which such adequate protection must be provided.  Such a hearing is warranted given the fact that

4  Opus has fallen far short of its burden under 11 U.S.C. § 363(p)(2) and number of issues

5  identified by the projections and financial report submitted by Opus in support of the Opposition

6  (the "Receiver Report") and the inaccurate representation(s) regarding the Debtors' budget and

7  cash flow projections submitted in support of the Motion.  *See* D.E. 52.

8  More precisely, additional time is warranted in order to better understand the manner in

9  which the parties prepared their respective reports.  Indeed, evaluating the question of adequate

10 protection at this juncture is all but impossible given the dearth of information and substantiation

11 provided for the Receiver Report.  Indeed, at this time, it is even unclear what methodology Opus

12 employed in the Receiver Report.  Based on available information, it appears that the Receiver

13 Report is based upon June and July 2017 estimates derived from recent cash activity, which is a

14 far less reliable method for projecting future billings, collections and revenues than the

15 methodology employed by the Debtors' proposed financial advisor, Force 10 Partners ("F10").

16 However, the Debtors have no way of determining what methodology was used due to the

17 incomplete information provided.  As Opus has provided so little information in support of the

18 Receiver Report, the Debtors respectfully submit that the Court (and the Debtors) would benefit

19 from an opportunity to hear testimony on the financial projections submitted by the parties before

20 rendering any decision on adequate protection, which is directly informed by the financial reports,

21 or, as Opus seems to request, reaching a determination about the ultimate disposition of the

22 Bankruptcy Cases.

23 **III.    CONCLUSION**

24 WHEREFORE, the Debtors respectfully request that the Court enter an order (1) finding

25 that Opus lacks any security interest in the Proceeds, (2) finding that Opus lacks any interest in

26 post-Petition Date accounts receivables or the proceeds therefrom, (3) finding that Opus is not

27 entitled to any adequate protection on account of the use of the Proceeds or collection of the

28 Clinic AR and/or post-Petition Date accounts receivables or, alternatively, that the continuation of

the replacement lien provided under the Cash Collateral Order provides adequate protection for any interest held by Opus, (4) finding that segregating $1,000 per year until Opus resolves any disputes regarding its interest in the equipment utilized by the Debtors constitutes adequate protection of any interest Opus may have therein, (5) authorizing the Debtors to use any cash collateral of Opus in the ordinary course of their business in accordance with the previously-proposed and approved budget, and (6) granting any further or additional relief the Court deems due and proper.

Dated:    August 23, 2017                    Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:    /s/ Michael T. Delaney
      Ashley M. McDow
      Michael T. Delaney
      Fahim Farivar

[Proposed] Attorneys for Debtors and Debtors in Possession

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): NOTICE OF ERRATA RE REPLY TO OPPOSITION OF OPUS BANK TO EMERGENCY MOTION FOR ORDER (1) AUTHORIZING THE INTERIM USE OF CASH COLLATERAL, (2) FINDING PREPETITION SECURED CREDITORS ADEQUATELY PROTECTED, AND (3) GRANTING RELATED RELIEF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 23, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael T Delaney    mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
Michael J Hauser    michael.hauser@usdoj.gov
Ashley M McDow    amcdow@bakerlaw.com, mdelaney@bakerlaw.com; sgaeta@bakerlaw.com; rojeda@bakerlaw.com; ffarivar@bakerlaw.com;nbrazil@bakerlaw.com
Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
Mary H Rose    mrose@buchalter.com, salarcon@buchalter.com
Randye B Soref    rsoref@polsinelli.com, acruickshank@polsinelli.com
Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY ~~PERSONAL DELIVERY,~~ OVERNIGHT MAIL~~, FACSIMILE TRANSMISSION OR EMAIL~~** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 23, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

<u>Presiding Judge</u>
Hon. Theodor C. Albert
U.S. Bankruptcy Court
411 West Fourth St., Ste. 5085
Santa Ana, CA 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 23, 2017 | Michael T. Delaney | /s/ Michael T. Delaney |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                           **F 9013-3.1.PROOF.SERVICE**
611224324.1