Ashley M. McDow (245114)
Michael T. Delaney (261714)
Fahim Farivar (252153)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:       amcdow@bakerlaw.com
             mdelaney@bakerlaw.com
             ffarivar@bakerlaw.com

[Proposed] Attorneys for
Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Lead Case No.: 8:17-bk-13077-TA |
| HOAG URGENT CARE-TUSTIN, INC., et al., | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8:17-bk-13079-TA; 8:17-bk-13080-TA; 8:17-bk-13089-TA; 8:17-bk-13090-TA) |

Affects:

■ All Debtors

□ Cypress Urgent Care, Inc., a California corporation, ONLY

□ Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY

□ Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY

□ Hoag Urgent Care – Orange, Inc., a California corporation, ONLY

□ Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY

□ Laguna-Dana Urgent Care, Inc., a California corporation, ONLY

**OPPOSITION TO OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543(a) AND (b); AND (II) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF ASHLEY M. MCDOW IN SUPPORT THEREOF**

Hearing:
Date:     September 6, 2017
Time:     10:00 a.m.
Place:    Courtroom 5B
          U.S. Bankruptcy Court
          411 West Fourth Street
          Santa Ana, CA 92701

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS CONTINUED**

|  |  |  | **Page** |
|---|---|---|---|
| I. | INTRODUCTION | | 3 |
| II. | STATEMENT OF FACTS | | 5 |
| III. | DISCUSSION | | 8 |
| | A. | Opus has Failed to Establish Cause to Justify Excusing Turnover under Section 543(d) | 8 |
| | B. | The Motion Should be Denied Because Opus Fails to Provide Essential Information Regarding the Purported Role of the Receiver | 14 |
| | C. | Adjudication of the Motion is Premature Due to Pending Discovery | 15 |
| | D. | Relief From Stay is Unnecessary | 15 |
| IV. | CONCLUSION | | 16 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

APPLICATION TO EMPLOY BAKER & HOSTETLER LLP AS GENERAL INSOLVENCY COUNSEL

611230233.1

1  **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

2  **JUDGE:**

3      Cypress Urgent Care, Inc., Hoag Urgent Care – Anaheim Hills, Inc., Hoag Urgent Care –

4  Huntington Harbour, Inc., Hoag Urgent Care – Orange, Inc., Hoag Urgent Care – Tustin, Inc.,

5  and Laguna-Dana Urgent Care, Inc. (collectively, the "Debtors"),[1] the debtors and debtors in

6  possession in the above-captioned, jointly administered bankruptcy cases (collectively, the

7  "Bankruptcy Cases"), hereby respectfully submits the within opposition (the "Opposition") to

8  *Opus Bank's Motion for Order (I) Partially Excusing Receiver's Compliance with 11 U.S.C.*

9  *§ 543(a) and (b); and (II) Granting Limited Relief from the Automatic Stay Under 11 U.S.C.*

10  *§ 362* (the "Motion") [Docket Entry ("D.E.") 41].

11  **I.    INTRODUCTION**

12      By and through the Motion, Opus Bank ("Opus") seeks an order excusing David Stapleton

13  (the "Receiver") from turning over property of the bankruptcy estates (collectively, the "Estates")

14  pursuant to section 543(d) of the Bankruptcy Code.[2]  *See, generally*, Motion, D.E. 41.  Opus,

15  however, has failed to establish any benefit to creditors (other than Opus) or otherwise satisfy the

16  requirements for excusing a custodian from turnover under section 543(d).  Opus has failed to

17  present any evidence even suggesting that the Debtors are incapable of reorganizing or lack the

18  funds necessary to reorganize.  Opus has failed to demonstrate mismanagement of the Debtors or

19  their businesses.  Opus has failed to provide any factual basis to conclude that the Debtors will

20  not use the assets of the Estates for the benefit of creditors or creditors will suffer if the Motion is

21  denied and the Debtors remain in possession (indeed, Opus does not even seek to deprive the

22  Debtors of possession of any assets of the Estates—thereby demonstrating that even Opus does

23  not believe there is a risk to creditors by the Debtors' continued control of the Estates).

24  Additionally, Opus has failed to identify a single benefit to creditors from the continued

25  involvement of the Receiver.  Rather, Opus merely suggests that the Receiver having "oversight"

26

---

27  [1] Hoag Urgent Care – Anaheim Hills, Inc., Hoag Urgent Care – Huntington Harbour, Inc., Hoag Urgent Care –
Orange, Inc., and Hoag Urgent Care – Tustin, Inc. may be referred to herein collectively as the "Hoag Debtors".

28  [2] As used herein, "Bankruptcy Code" refers to title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*) and,
unless otherwise noted, "section _____" refers to the specified section of the Bankruptcy Code.

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  will benefit creditors.  Additional oversight, however, will not benefit creditors—especially since

2  the Debtors are already subject to the oversight of the United States Trustee, a soon-to-be-

3  appointed Patient Care Ombudsman, and the Court, under heightened reporting requirements.

4  Under the circumstances presented, the continued involvement of the Receiver will provide no

5  benefit to creditors through increased transparency, while saddling the Estates with the

6  administrative expenses of yet another fiduciary.

7       In fact, given recent facts of which the Debtors have just been made aware, the Debtors

8  actually believe that the presence of the Receiver will be a detriment to the Estates.  As a

9  principal matter, the Receiver is not impartial.  The Receiver was appointed at the request of

10  Opus and, since that time, has served the interests of Opus in the negotiations of the pre-petition

11  settlement and in the course of the Bankruptcy Cases.  Similarly, the Receiver has taken

12  numerous actions against the interests of the general creditor body that evidence his incapability

13  of serving the interest of all creditors equally.  Most importantly, throughout his appointment, the

14  Receiver has demonstrated a willingness to disregard the scope of his appointment and engaged

15  in conduct prohibited under applicable law and the order appointing him as receiver.  More

16  precisely, on August 2, 2017—i.e., the day the Debtors filed for bankruptcy—the Receiver

17  transferred to himself more than $100,000.00 of property of the Estates from the Debtors' bank

18  accounts.  Such transfers either violate section 547 or 549 of the Bankruptcy Code, in addition to

19  the express terms of the order appointing the Receiver and applicable California law, both of

20  which required the state court to approve any receivership fees or expenses prior to the payment

21  of the same.

22       In sum, Opus has failed to establish any basis to authorize the involvement of yet another

23  proposed fiduciary in the Bankruptcy Cases—let alone the Receiver, who has indisputably

24  engaged in grievous misconduct immediately preceding or during the Bankruptcy Cases.[3]

25  Accordingly, the Debtors respectfully request that the Court deny the Motion in its entirety.

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[3] The Debtors are presently unaware of any evidence suggesting that Opus was aware of the blatant misconduct of the Receiver when filing the Motion.

## II.   STATEMENT OF FACTS

1.      On or about September 26, 2013, the Debtors entered into a series of loan agreements (the "Opus Loans") with Opus in order to refinance then-existing debt.  In association with the Opus Loans, Opus purportedly obtained a security interest in certain assets of the Clinics.  Unfortunately, the Debtors were unable to continue servicing the Opus Loans.  Thereafter, the Debtors and Opus entered into negotiations in an effort to restructure the Opus Loans.

2.      As a result of the Debtors default under the Opus Loans, Opus filed two actions against the Debtors in the California Superior Court—namely, *Opus Bank v. Hoag Urgent Care-Tustin, Inc., et al.*, case no. 30-2017-00911945-CU-BC-CJC, and *Opus Bank v. Laguna-Dana Urgent Care, Inc., et al.*, case no. 30-2017-00912132-CU-BC-CJC (collectively, the "State Court Actions").

3.      As part of the ongoing negotiations between Opus and the Debtors to restructure the obligations under the Opus Loans, on or about May 25, 2017, the Debtors and Opus entered into two stipulations to appoint a receiver over the Debtors, which stipulations were filed in the State Court Actions.  On or about May 25, 2017, the California Superior Court entered order approving the stipulations and appointment of the Receiver as receiver for the Debtors (the "Receivership Orders").  *See* D.E. 44-1, at pp. 63-82; D.E. 44-2, at pp. 1-3.

4.      Thereafter, the Receiver became involved in pre-existing negotiations involving the Debtors, Opus, and Newport Healthcare Center LLC ("Newport"), the lessor of the properties utilized by the Hoag Debtors, to resolve certain disputes amongst the parties thereto.  Initially, the Debtors continued to participate in the negotiations as the parties principally affected by any agreement resulting therefrom.  However, in the course of the negotiations, the Debtors refused to capitulate to some of the unreasonable demands and proposals made by Opus and Newport.  As a result, the Debtors were summarily excluded from future negotiations and, in their stead, the Receiver purportedly represented the interests of the Debtors.  Although the Debtors protested their exclusion from the discussions, neither the Receiver nor Opus agreed to permit the Debtors to actively participate in further negotiations.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5.      In or about July 2017, the Receiver and Opus informed the Debtors that an agreement had been reached.  As the Debtors were excluded from the negotiations, the Debtors requested a copy of the agreement in order to evaluate the impact of the same on the Debtors and their creditors.  The Receiver, however, refused to provide a copy of the proposed agreement—despite several requests—until the agreement had been fully executed by the Receiver (on behalf of the non-consenting Debtors), Opus and Newport.

6.      On or about July 20, 2017, the Receiver (on behalf of the non-consenting Debtors), Opus and Newport entered into a Settlement Agreement (the "Opus Agreement").  *See* D.E. 43, at pp. 35-53.  By and through the Opus Agreement, the Receiver agreed to turnover the Hoag clinics to Newport—thereby divesting the Hoag Debtors of any interest in the Hoag clinics—in exchange for $116,000.00, which the Receiver was obligated to pay to Opus upon receipt.  Moreover, certain property owned by the Debtors was to be "relinquished" to Hoag Memorial Hospital Presbyterian ("Hoag").  Thus, in addition to nearly every asset of the Hoag Debtors to Hoag for only $116,000—which was the value of the equipment alone based on an appraisal that had been conducted by Opus—the Opus Agreement ensured that only account receivables were retained by the receivership estate so that they could be collected solely for the benefit of Opus.

7.      At the time the Receiver entered into the Opus Agreement on behalf of the Debtors, the Debtors had not had an opportunity to review the Opus Agreement or provide any comments regarding the structure of the agreement or potential impact of the same on the Debtors and their creditors.  After receiving a copy of the Opus Agreement, the Debtors expressed numerous concerns about the Opus Agreement and the transaction therein contemplated.  The Receiver, however, disregarded the serious issues identified by the Debtors—issues that substantially impacted the rights of creditors other than Opus—and moved on an *ex parte* basis for approval of the Opus Agreement.  The *ex parte* hearing was scheduled for August 2, 2017.

8.      As the Receiver was unwilling to consider the interests of the Debtors or creditors negatively affected by the Opus Agreement, the Debtors were left with no choice but to file voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Accordingly, in the morning of August 2, 2017 (the "Petition Date"), the Debtors commenced the Bankruptcy Cases.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

9.     Shortly after the Petition Date, the Debtors requested that the Receiver provide copies of all bank records for the period during which the Receiver served as receiver for the Debtors prior to the Petition Date.  After numerous requests for the Receiver to comply, on or about August 16, 2017, the Receiver provided several select (as opposed to complete) bank records for the period preceding the Petition Date.  Among these records were copies of five (5) checks paid from the bank accounts of the Debtors on the Petition Date to the Receiver (the "Petition Date Payments").  True and correct copies of the checks relating to the Petition Date Payments are attached to the Declaration of Ashley M. McDow (the "McDow Declaration") as **Exhibit A** and incorporated herein by reference.  In total, the Petition Date Payments totaled $103,840.75.  *See* Ex. A.  The Petition Date Payments were made to the Receiver and the associated checks were executed by the Receiver on behalf of the Debtors.[4]  Based on the circumstances presented, it appears that the Petition Date Payments were made by and to the Receiver in satisfaction of the pre-Petition Date fees and expenses purportedly incurred by the Receiver on or before the Petition Date (the "Receiver Compensation").  Under the Receivership Order, the Receiver was required to obtain approval of the state court and comply with the proceeds set forth in Rule 3.1183 of the California Rules of Court before paying any portion of the Receiver Compensation.  *See* D.E. 44-1, at pp. 68, 80.  The Receiver failed to obtain authority from the state court or comply with the requirements of Rule 3.1183 of the California Rules of Court before making the Petition Date Payments or retaining any portion thereof.

10.     The financial records provided by the Receiver also demonstrated that, on August 4, 2017 (two days after the Petition Date), the Receiver returned a total of $15,781.71 to the Debtors via five (5) checks drawn on the Receiver's accounts (which indicates that the Petition Date Payments were deposited by the Receiver into non-Debtor accounts) and made payable to the Debtors (the "Receiver Refunds").  True and correct copies of the checks relating to the Receiver Refunds are attached to the McDow Declaration as **Exhibit B** and incorporated herein

---

[4] The precise time the Petition Date Payments were made on August 2, 2017 is unknown; however, the Debtors are presently conducting discovery regarding the Petition Date Payments, among other things, as the timing of the payments bear directly on the suitability of the Receiver to serve in any capacity in the Bankruptcy Cases.

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

1    by reference.  After accounting for the Receiver Refunds, the Receiver received payments from

2    the Debtors on the Petition Date totaling $88,059.04 (the "Receiver Preference").

3        11.    Upon learning of the Receiver Preference, the Debtors sent an email to the

4    Receiver demanding the immediate return of the Receiver Preference due to the Receiver's failure

5    to comply with the Receivership Order and Rule 3.1183 of the California Rules of Court as well

6    as the clear violation of either section 547 or 549 of the Bankruptcy Code.  A true and correct

7    copy of the correspondence is attached to the McDow Declaration as **Exhibit C** and incorporated

8    herein by reference.  The Receiver refused to provide any justification for the Petition Date

9    Payment or refute the characterization of these payments as Receiver Compensation, or comply

10   with the Debtors' demand for the return of the Receiver Preference.  As of the filing of this

11   Opposition, continues to hold the Receiver Preference in violation of the Receivership Order and

12   Rule 3.1183 of the California Rules of Court as well as section 547 or 549 of the Bankruptcy

13   Code.

14   **III.    DISCUSSION**

15       **A.    Opus has Failed to Establish Cause to Justify Excusing Turnover under**

16           **Section 543(d)**

17       Section 543(d) states, in relevant part, that "[a]fter notice and a hearing, the bankruptcy

18   court (1) may excuse compliance with (a), (b) or (c) if the interests of creditors, and if the debtor

19   is not insolvent, of equity security holders would be better served by permitting a custodian to

20   continue in possession, custody, or control of such property…."  11 U.S.C. § 543(d)(1).  "In

21   determining whether to excuse compliance with the turnover requirements, the basic equities

22   generally favor a debtor or debtor-in-possession since, if nothing more, a substantial weight is

23   added to the debtor's burden of attempting to reorganize and to promulgate an acceptable plan of

24   reorganization…."  *In re KCC-Fund V, Ltd.*, 96 B.R. 237 (Bankr. W.D. Mo. 1989); *In re*

25   *Orchards Village Investments, LLC*, 405 B.R. 341, 352 (D. Or. 2009) ("Reorganization polity

26   generally favors turnover of business assets to the debtor in a chapter 11 case.").  "Thus, a mere

27   showing that the creditors will feel more comfortable with certain assets (such as cash or cash

28   equivalents) controlled by a third party rather than the debtor is not sufficient to excuse

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

1   compliance with the turnover requirements." *Id.* However, "[i]f turnover is opposed, courts

2   consider a number of factors in determining whether to order turnover, including (1) whether

3   there will be sufficient income to fund a successful reorganization; (2) whether the debtor will use

4   the property for the benefit of its creditors; and (3) whether there has been mismanagement by the

5   debtor." *In re Orchards Village Investments, LLC*, 405 B.R. at 352. The party seeking to excuse

6   a custodian from turnover under section 543(d) bears the burden of proof on all issues. *See In re*

7   *Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990).

8           Opus fails to provide any cognizable justification or evidentiary support for a finding of

9   cause to excuse the Receiver from turnover under section 543(d)(1). With respect to the

10  likelihood of reorganization, Opus provides no basis to conclude that the Debtors are unable to

11  reorganize; rather, Opus merely provides unsubstantiated allegations that "the Debtors have

12  incurred significant arrearages to its landlords and trademark licensor" and have failed "to make

13  any loan payments since August 2016" and surmises that "given that a successful reorganization

14  appears unknown and speculative, at best, and given that a 'quick sale' is still undisclosed,

15  keeping the Receiver in place in an oversight capacity seems to be in the best interests of all

16  parties." *See* <u>Motion</u>, D.E. 41, at pp. 14-15. With respect to the arguments regarding the

17  "significant arrearages" and missing loan payments, Opus provides absolutely not evidence in

18  support of these contentions. Indeed, despite submitting declarations from the Receiver and

19  counsel for Opus, along with hundreds of pages of exhibits, Opus has not provided any

20  testimonial or documentary evidence in support of the Motion substantiating that the Debtors

21  "have incurred significant arrearages to its landlords and trademark licensor" (or are the cause of

22  any arrears, as opposed to any missed payments by the Receiver) or have failed "to make any

23  loan payments since August 2016." *See* D.E. 43, 44.

24          Similarly, Opus provides not justification for its conclusion that (1) the Debtors are unable

25  to reorganize, (2) that a quick sale would be the most beneficial to creditors, or (3) that in light of

26  the foregoing, creditors would be better served by the continued involvement of the Receiver.

27  The reason for these omissions, perhaps, is that they are unsupportable. With respect to the first

28  conclusion, the Debtors possesses the ability to reorganize their operations through a plan of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611230233.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   reorganization.  As noted in the financial projection submitted by the Debtors in support of the

2   *Emergency Motion for Order (1) Authorizing the Interim Use of Cash Collateral Pursuant to 11*

3   *U.S.C. § 363, (2) Finding Prepetition Secured Creditors Adequately Protected Pursuant to 11*

4   *U.S.C. §§ 361 and 363, and (3) Granting Related Relief* (the "Cash Collateral Motion") [D.E. 12],

5   the Debtors have positive (and, indeed, increasing) cash flow, which could be used to fund a plan.

6   The ability to fund a plan is further improved by the fact that Opus has a dubious claim (if any) to

7   the post-Petition Date healthcare receivables and revenues derived from the collection thereof.

8   With respect to the benefit of a quick sale, at present, it is unknown whether a quick sale or

9   reorganization would be most beneficial—especially since the primary creditor (Opus) may have

10  an unenforceable security interest, which would permit the Debtors to alter the treatment of Opus

11  through the Bankruptcy Cases and associated plan and, thereby, potentially increase distributions

12  to other creditors.  Notwithstanding, what is certain, is that the Opus Agreement does not provide

13  any benefit to creditors.  Accordingly, to the extent Opus filed the Motion in an effort to proceed

14  with a sale pursuant to the Opus Agreement (as it seems they might be), granting the Motion

15  would be essentially a worst case scenario for creditors (other than Opus).

16         Lastly, with respect to the continued involvement of the Receiver, Opus has provided no

17  support for the contention that the continued involvement of the Receiver would be beneficial.

18  Indeed, all available information seems to suggest the contrary.  The Debtors are already subject

19  to increased supervision by the United States Trustee and the Court by virtue of the requirement

20  that the Debtors file bi-monthly operating reports.  Additionally, the Debtors have entered into a

21  stipulation with the United States Trustee for the appointment of a Patient Care Ombudsman,

22  which would provide even further oversight over the operations of the Debtors.  Accordingly, it is

23  unclear what additional "oversight" the Receiver could provide that would be beneficial to all

24  creditors (as opposed to merely providing comfort to Opus, which is not the standard to excuse

25  turnover under section 543(d)(1)).  Indeed, based on available information, it appears that the

26  involvement of the Receiver would merely place creditors at risk.  First, the Receiver has

27  continually demonstrated prior to the commencement of the Bankruptcy Cases and thereafter, that

28  he is principally concerned with protecting the interests of Opus regardless of the impact on the

1   rights of other creditors.  Such objective is clearly evident from the terms of the Opus Agreement,

2   which substantially benefit Opus and Newport while rendering the Hoag Debtors unable to pay

3   any other creditors—especially since the Opus Agreement was carefully crafted to ensure Opus

4   retained the maximum deficiency claim against the Hoag Debtors by "relinquishing" instead of

5   selling assets to Newport.  Additionally, the Receiver has proven that he is willing and able to

6   take actions exceeding the scope of his appointment and in contravention of applicable law—

7   thereby making the Receiver a substantial threat to the Debtors and other creditors.  Such

8   willingness is evident from the Receiver's prior conduct, including, without limitation,

9   misappropriating funds via the Petition Date Payment and, thereafter, apparently depositing these

10  funds into the Receiver's business account as payment for some purported debt—an action that

11  violated the Receivership Order, Rule 3.1183 of the California Rules of Court, and sections 547

12  and/or 549 of the Bankruptcy Code.

13      Opus has also failed to demonstrate that the Debtors will not use the subject property for

14  the benefit of creditors.  Once again, instead of providing any cognizable argument or evidentiary

15  support for its position, Opus proffers mere speculation.  More precisely, in support of this second

16  factor, Opus contends that "with the commencement of the bankruptcy cases, there is a concern

17  and a risk that the Debtors will be operated in a manner solely for the benefit of the Debtors'

18  insiders and their affiliates."  *See* Motion, D.E. 41, at p. 16.  The contention is ridiculous.  In

19  bankruptcy, the Debtors are under far more scrutiny that the Debtors were prior to the

20  commencement of the Bankruptcy Cases.  In bankruptcy, the Debtors are required to provide bi-

21  monthly operating reports supported by financial documents and bank records, which clearly

22  demonstrate how the Debtors are utilizing their funds.  Additionally, to the extent cash collateral

23  is required, the Debtors are required to perform within the confines of an approved budget—

24  another aspect missing outside of bankruptcy.  Furthermore, in bankruptcy, the Debtors are

25  subject to the oversight of the Court, the United States Trustee, creditors (by virtue of the

26  aforementioned bi-monthly operating reports), (if appointed) a committee of unsecured creditors,

27  and, with respect to their business operations (as opposed to cash management), a patient care

28  ombudsmen.  In bankruptcy, the Debtors' every action is subject to scrutiny.  In addition to the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

1   multiple layers of existing oversight, Opus has not provided any basis to conclude that the

2   insiders or management of the Debtors have (or will) engage in any misconduct.[5]  Accordingly, it

3   is disingenuous (to say the least) to suggest that the Receiver is needed to ensure the Debtors do

4   not operate the businesses or administer the Estates for the sole benefit of insiders.

5          Opus also fails to provide any justification to conclude that the Debtors (or their

6   management or insiders) have engaged in any misconduct.  As with the other arguments

7   presented by Opus, the purported concern of potential misconduct is made out of whole cloth.

8   Indeed, Opus does not submit any evidence suggesting that the Debtors (or their management or

9   insiders) ever mismanagement the enterprises or funds relating thereto.  In place of any rationale

10  argument, position or justification, Opus merely contends that the Debtors are being mismanaged

11  because they are making payments to insiders during the pendency of the Bankruptcy Cases.

12  First, the insiders of the Debtors are not passive equity interest holders receiving distributions on

13  account of their ownership interest; rather, the insiders the Debtors seek to pay—namely, Dr.

14  Robert C. Amster, Jennifer Amster, and Faye Amster—all provide actual services to the Debtors

15  in exchange for their compensation.  In the case of Dr. Amster, he is the president of the Debtors

16  and provides medical services at the clinics operated by the Debtors.  Jennifer Amster, in turn,

17  manages the operational aspects of the Debtors.  Faye Amster also provides administrative

18  support for the Debtors and their operations.  Paying these individuals for the necessary services

19  they provide is not mismanagement.  Indeed, refusing to pay them for the services they provide

20  would likely constitute mismanagement as the Debtors would be unable to operate without their

21  services.  Furthermore, the contention that the Receiver is needed to ensure "mismanagement"

22  does not occur through the payment of insiders is ridiculous as (1) the scope of the Receiver's

23  proposed authority would involve "oversight," not control of the funds, so the Receiver would not

24  be in charge of managing payments to insiders even if he was involved and (2) **the Receiver paid**

25  **insiders for services rendered prior to the Petition Date**.  Thus, if paying insiders constitutes

26  mismanagement of the Debtors or their assets, the Receiver is equally guilty.  Lastly, the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[5] It is important to note that the initial appointment of the Receiver had absolutely nothing to do with any misconduct on the part of the insiders or management of the Debtors.  To the contrary, the Receiver was appointed pursuant to a stipulation between the parties.

611230233.1

1   argument that the Receiver must be involved in a "oversight capacity" to prevent mismanagement

2   is patently contradictory, as the Receiver is the only individual known to have mismanaged or

3   improperly handled the funds of the Debtors (as discussed *supra*).

4        Opus has also failed to demonstrate that the involvement of the Receiver would benefit

5   the interests of creditors (more generally).  Rather, Opus merely contends that it would be more

6   willing to work with the Debtors if the Receiver was in place.  *See* Motion, D.E. 41, at pp. 16-17.

7   There is only one reason the Debtors <u>need</u> to work with Opus during the pendency of the

8   Bankruptcy Cases—namely, if the Debtors require authority to use cash collateral.  As discussed

9   in the *Reply to Opposition of Opus Bank to Emergency Motion for Order (1) Authorizing the*

10  *Interim Use of Cash Collateral, (2) Finding Prepetition Secured Creditors Adequately Protected,*

11  *and (3) Granting Related Relief* (the "<u>Cash Collateral Reply</u>") [D.E. 63], Opus has failed to

12  establish and, based on Debtors reading of applicable law, cannot establish a security interest in

13  any proceeds from healthcare receivables, which make up the vast majority of the Debtors

14  revenues.  Accordingly, it is unclear that any cooperation is necessary (although the Debtors have

15  every intention of working with Opus throughout the Bankruptcy Cases to ensure the smooth

16  administration of the Estates).  Notwithstanding, Opus has made abundantly clear that it has no

17  intention of working with the Debtors on the issue of cash collateral (or anything else for that

18  matter given that Opus has opposed nearly every motion or filing, including the notices of insider

19  compensation that seek authority to pay the same insiders the same amount of money paid by the

20  Receiver prior to the Petition Date).  *See* D.E. 51 (Opus requests that the Court deny any and all

21  use of cash collateral and *sua sponte* dismiss the Bankruptcy Cases).  Setting aside whether

22  cooperation is necessary or will be given by Opus under any circumstances, Opus has failed to

23  provide any evidence (not even a declaration) suggesting that Opus' cooperation is premised upon

24  or that Opus will cooperate if the Receiver remains involved in the Bankruptcy Cases.

25        However, disregarding the purported interests of Opus, one thing is clear, the interest of

26  all other creditors will be better served by <u>not</u> having the Receiver involved.  As discuss *supra*,

27  since his involvement the Receiver has shown a clear favoritism for Opus—going so far as to

28  disregard the interests of the Debtors and their creditors in order to orchestrate (as Opus puts it) as

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

1   sale transaction that benefits solely Opus and Newport, to the exclusion of all other creditors.

2   Indeed, aside from Opus and Newport (as well as Newport's parent company, Hoag Memorial

3   Hospital Presbyterian), the only person to benefit from the proposed sale was…the Receiver.

4   Under the Opus Agreement, not only did the Receiver receive a full release from any and all

5   liability, the Receiver remained in place to continue collecting the Hoag Debtors' accounts

6   receivable, which, upon receipt, would be paid to Opus—thereby entitling the Receiver to

7   compensation.

8        In sum, Opus has utterly failed in providing even a scintilla of evidentiary support for any

9   of the bases cited in the Motion for excusing the Receiver from turnover under section 543(d)(1)

10   and/or permitting the Receiver to remain involve in the Bankruptcy Cases in an "oversight

11   capacity."  Accordingly, the Motion must be denied.

12        **B.**     **The Motion Should be Denied Because Opus Fails to Provide Essential**

13        **Information Regarding the Purported Role of the Receiver**

14        In addition from the legal deficiency of the request, the Motion must be denied because

15   Opus has failed to provide any information regarding the role of the Receiver (if excused from

16   turnover).  Rather, Opus merely provides that the Receiver will assume an "oversight" position.

17   "Oversight" does not describe the scope of the Receiver's authority.  For instance, "oversight"

18   does not make clear whether the Receiver will have a limited role or if the Receiver will retain all

19   authority under the Receivership Order.  As the difference between these two potential roles is

20   incredibly significant, no determination of the Motion may be made until Opus clarifies this

21   point.  Additionally, Opus fails to provide any information about how the Receiver will be

22   compensated.  For example, will the Receiver be paid hourly or a percentage of collections or

23   distributions (if he has a role in collections or distributions)?  If paid hourly, what is the

24   Receiver's rate and is that rate reasonable?  If paid a commission, what is the commission and

25   how is the commission calculated?  Also, who is responsible for paying the Receiver's

26   compensation?  The Estates?  Opus?  In sum, excusing the Receiver from turnover or appointing

27   the Receiver to a quasi-fiduciary role in the Bankruptcy Cases is improper at this time as Opus

28   has failed to provide a great deal of important information.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611230233.1

**C.**     **Adjudication of the Motion is Premature Due to Pending Discovery**

After the filing of the Motion, the Debtors propounded discovery on the Receiver, Opus, Newport, Hoag, and counsel for Newport, Hoag, and Opus, in order to determine, among other things, whether the Receiver has acted as an independent fiduciary throughout the term of his appointment, including with respect to the Opus Agreement.  As the independence of the Receiver informs the determination of whether the Receiver is capable of acting for the benefit of all creditors (if excused from turnover or granted a limited role in the Bankruptcy Cases), the Court should continue the hearing on the Motion until such time as the foregoing parties respond to the Debtors' discovery requests and the Debtors have an adequate opportunity to evaluate the documents provided and present any additional finding to the Court.[6]

**D.**     **Relief From Stay is Unnecessary**

By and through the Motion, Opus requests relief from the automatic stay to the extent necessary to permit the Receiver to assume an "oversight" role in the Bankruptcy Cases.  In addition to the fact that excusing the Receiver from turnover is inappropriate under the circumstances presented, as Opus has failed to define what constitutes "oversight" or why relief from stay is necessary to assume this role, the Debtors respectfully submit that Opus has failed to establish any cause to grant the Receiver relief from stay.[7]

/ / /

/ / /

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[6] The Debtors requested that Opus stipulated to continue the hearing on the Motion until after the parties responded to the limited discovery propounded in association with the Motion.  Opus refused to agree to a continuation.  Accordingly, the Debtors intend to file a motion to continue the hearing on the Motion.

[7] It is also unclear whether Opus has standing to move for relief from stay on behalf of the Receiver, even if excused from turnover, as the Receiver is (supposedly) an independent fiduciary unrelated to Opus (although this, among other filings, seem to suggest the contrary).

- 15 -

611230233.1

1    **IV.    CONCLUSION**

2        WHEREFORE, the Debtors respectfully request that the Court deny the Motion in its

3    entirety or, in the alternative, continue the hearing on the Motion to a time and date after the

4    conclusion of discovery related to the Motion and set the matter for an evidentiary hearing so the

5    parties may present their respective positions.

6

7    Dated:    August 23, 2017                Respectfully submitted,

8
                                             **BAKER & HOSTETLER LLP**
9

10                                           By:    /s/ Ashley M. McDow
                                                    Ashley M. McDow
11                                                  Michael T. Delaney
                                                    Fahim Farivar
12
                                             [Proposed] Attorneys for
13                                           Debtors and Debtors in Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    ## DECLARATION OF ASHLEY M. MCDOW

2    I, Ashley M. McDow, hereby declare:

3    1.    I am an attorney duly admitted to practice before the above-referenced court.  I am

4    a partner with the law firm of Baker & Hostetler LLP, proposed general insolvency counsel for

5    the debtors and debtors in possession in the above-captioned, jointly administered bankruptcy

6    cases.  I submit the within declaration in support of the *Opposition to Opus Bank's Motion for*

7    *Order (I) Partially Excusing Receiver's Compliance with 11 U.S.C. § 543(a) and (b); and (II)*

8    *Granting Limited Relief from the Automatic Stay Under 11 U.S.C. § 362* (the "Opposition").

9    Unless otherwise defined herein, all capitalized terms and phrases shall have the same meaning as

10    ascribed to them in the Opposition.  Unless otherwise stated, I have personal knowledge of the

11    matters set forth herein, and if called as a witness, could and would competently testify to the

12    same.

13    2.    On or about May 25, 2017, the Debtors and Opus entered into two stipulations to

14    appoint a receiver over the Debtors, which stipulations were filed in the State Court Actions.  On

15    or about May 25, 2017, the California Superior Court entered order approving the stipulations and

16    appointment of the Receiver as receiver for the Debtors.

17    3.    Thereafter, the Receiver became involved in pre-existing negotiations involving

18    the Debtors, Opus, and Newport Healthcare Center LLC, the lessor of the properties utilized by

19    the Hoag Debtors, to resolve certain disputes amongst the parties.  Initially, I participated in the

20    negotiations on behalf of the Debtors.  However, in the course of the negotiations, the Debtors

21    refused to give into some of the demands and/or proposals made by Opus and/or Newport.

22    Thereafter, I was not permitted to participate in the negotiations.  To the best of my knowledge,

23    the Receiver continued participating in the negotiations as the representative of the Debtors.

24    4.    In or about July 2017, the Receiver and Opus informed me that an agreement had

25    been reached.  Thereafter, I requested a copy of the agreement in order to review the proposed

26    terms.  The Receiver, however, refused to provide a copy of the proposed agreement.  After

27    several additional requested, the Receiver finally agreed to provide a copy of the proposed

28    agreement; however, thereafter, the Receiver refused to provide the agreement until the

611230233.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1  agreement was fully executed.

2       5.     Based on my review of relevant documents, it appears that on or about July 20,

3  2017, the Receiver, Opus and Newport entered into a Settlement Agreement.  At the time the

4  Receiver entered into the Opus Agreement on behalf of the Debtors, I had not had an opportunity

5  to review the Opus Agreement or provide any comments regarding the structure of the agreement

6  or potential impact of the same on the Debtors and their creditors.  After receiving a copy of the

7  Opus Agreement, I expressed numerous concerns about the Opus Agreement and the transaction

8  therein contemplated.  The Receiver, however, without addressing any of these issues, moved on

9  an *ex parte* basis for approval of the Opus Agreement.  The ex parte hearing was scheduled for

10  August 2, 2017.

11       6.     In the morning of August 2, 2017, the Debtors commenced the Bankruptcy Cases.

12       7.     Shortly after the Petition Date, I requested copies of all bank records for the period

13  during which the Receiver served as receiver for the Debtors prior to the Petition Date from the

14  Receiver.  On or about August 16, 2017, the Receiver provided several bank records.  Among

15  these records were copies of five (5) checks paid from the bank accounts of the Debtors on the

16  Petition Date to the Receiver.  True and correct copies of the checks relating to the Petition Date

17  Payments are attached hereto as **Exhibit A**.  Based on the circumstances presented, and the

18  documentation and information I have received regarding the Petition Date Payments, it appears

19  that the Petition Date Payments were made by and to the Receiver in satisfaction of the Receiver

20  Compensation.  The Receiver did not obtain authority from the state court or comply with the

21  requirements of Rule 3.1183 of the California Rules of Court before making the Petition Date

22  Payments.

23       8.     The financial records provided by the Receiver also demonstrated that, on August

24  4, 2017 (two days after the Petition Date), the Receiver returned a total of $15,781.71 to the

25  Debtors via five (5) checks drawn on the Receiver's accounts (which indicates that the Petition

26  Date Payments were deposited by the Receiver into non-Debtor accounts) and made payable to

27  the Debtors (the "Receiver Refunds").  True and correct copies of the checks relating to the

28  Receiver Refunds are attached hereto as **Exhibit B**.

- 18 -

611230233.1

9.     After receiving the bank records from the Receiver, I sent an email to the Receiver demanding the immediate return of the funds.  A true and correct copy of the correspondence is attached hereto as **Exhibit C**.  Except for the Receiver Refund, the Receiver has not returned any portion of the Petition Date Payment.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 23rd day of August, 2017, at Los Angeles, California.

/s/ Ashley M. McDow
Ashley M. McDow

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

OPPOSITION TO MOTION TO EXCUSE RECEIVER FROM COMPLIANCE WITH 11 U.S.C. § 543

611230233.1

# EXHIBIT A

## Check Details

| Account | Check number | Reference | Posted Date | Amount |
|---|---|---|---|---|
| ███ 2719 | 101 | ███ | 08/02/2017 | 20,000.00 |



DAVID P. STAPLETON, RECEIVER FOR
CYPRESS URGENT CARE, INC.
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Union Bank
400 California Street
San Francisco, CA 94104

16-49-6/1220

**101**

08/02/17

**** TWENTY THOUSAND AND 00/100 DOLLARS

$20,000.00**

PAY TO THE
ORDER OF
Stapleton Group
514 Via de la Valle, Suite 206
Solana Beach, CA 92075



Seq: 65
Batch: 589477
Date: 08/02/

## Check Details

| Account | Check number | Reference | Posted Date | Amount |
|---------|--------------|-----------|-------------|--------|
| ■■■■4584 | 101 | ■■■■■ | 08/02/2017 | 24,000.00 |



## Check Details

| Account | Check number | Reference | Posted Date | Amount |
|---|---|---|---|---|
| ███4592 | 101 | ████████ | 08/02/2017 | 15,000.00 |





## Check Details

| Account | Check number | Reference | Posted Date | Amount |
|---------|--------------|-----------|-------------|--------|
| ████4606 | 103 | ████████ | 08/02/2017 | 25,360.25 |





## Check Details

| Account | Check number | Reference | Posted Date | Amount |
|---|---|---|---|---|
| ████4576 | 102 | ████████ | 08/02/2017 | 19,480.50 |



**DAVID P. STAPLETON, RECEIVER FOR**
**LAGUNA-DANA URGENT CARE, INC.**
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Union Bank
400 California Street
San Francisco, CA 94104

16-49-6/1220

**102**

**08/02/17**

**\*\*\*\* NINETEEN THOUSAND FOUR HUNDRED EIGHTY AND 50/100 DOLLARS**    **$19,480.50\*\***

PAY TO THE
ORDER OF

Stapleton Group
514 Via de la Valle, Suite 206
Solana Beach, CA   92075

Seq:  63
Batch:  589477
Date: 08/02/17

# EXHIBIT B





**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| ▉ 2719 | ▉ | 08/04/2017 | $ 3,994.89 |

STAPLETON GROUP
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Bank of America
405 S. Highway 101
Solana Beach, CA 92075

122000661

**8029**

08/04/17

**** THREE THOUSAND NINE HUNDRED NINETY FOUR AND 89/100 DOLLARS

$3,994.89***

PAY TO THE
ORDER OF    Cypress Urgent Care, Inc.



**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| ████4584 | ████ | 08/04/2017 | $ 2,597.31 |



STAPLETON GROUP
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Bank of America
405 S. Highway 101
Solana Beach, CA 92075
122000661

8030

08/04/17

**** TWO THOUSAND FIVE HUNDRED NINETY SEVEN AND 31/100 DOLLARS          $2,597.31***

PAY TO THE
ORDER OF     Hoag Urgent Care-Anaheim Hills, Inc.

ENDORSEMENT AREA. Know Your Endorser. Require Identification.
X
CREDITED TO THE ACCOUNT OF
WITHIN NAMED PAYEE(S)
Union Bank, N.A.
DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE *





**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| ▮4592 | ▮ | 08/04/2017 | $ 2,597.31 |

STAPLETON GROUP
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Bank of America
403 S. Highway 101
Solana Beach, CA 92075
122000661

8031

08/04/17

**** TWO THOUSAND FIVE HUNDRED NINETY SEVEN AND 31/100 DOLLARS        $2,597.31***

PAY TO THE
ORDER OF      Hoag Urgent Care-Huntington Harbour, Inc





**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| ▆▆▆▆4606 | ▆▆▆▆▆▆ | 08/04/2017 | $ 2,597.31 |

STAPLETON GROUP
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Bank of America
403 S. Highway 101
Solana Beach, CA 92075
122000661

8032

08/04/17

**** TWO THOUSAND FIVE HUNDRED NINETY SEVEN AND 31/100 DOLLARS     $2,597.31***

PAY TO THE
ORDER OF    Hoag Urgent Care-Tustin, Inc.





**Deposit Slip**

| Deposit account | Deposit ref. number | Posted | Amount |
|---|---|---|---|
| ▮4576 | ▮▮▮▮ | 08/04/2017 | $ 3,994.89 |

STAPLETON GROUP
514 VIA DE LA VALLE, SUITE 206
SOLANA BEACH, CA 92075

Bank of America
405 S. Highway 101
Solana Beach, CA 92075

122000661

8033

08/04/17

**** THREE THOUSAND NINE HUNDRED NINETY FOUR AND 89/100 DOLLARS

$3,994.89***

PAY TO THE
ORDER OF    Laguna-Dana Urgent Care, Inc.

**EXHIBIT C**

**McDow, Ashley M.**

| | |
|---|---|
| **From:** | McDow, Ashley M. |
| **Sent:** | Wednesday, August 16, 2017 6:41 PM |
| **To:** | 'David Stapleton'; Delaney, Michael T. |
| **Cc:** | Jake Diiorio; Farivar, Fahim; jkiindarius@radiantphysician.us |
| **Subject:** | RE: In re Hoag Urgent Care-Tustin, et al. - Financial Documents |

David,

Now that I have picked my jaw up from the floor...

I want to start by saying that I have always had a great deal of respect for you, and your position as an independent fiduciary; however, I am absolutely floored by what the attachments seem to suggest. Not only does it appear that you misrepresented the facts to me (which is more of a "personal" issue that I can and will get over), but more disconcerting, that you transferred significant funds (in fact, essentially the balance of what was in every account) – in lump sum amounts from each of the clinics - to yourself on the same day that we filed bankruptcy petitions for each of the entities. It then appears that two (2) days after we filed the petitions, you transferred small sums back to each of the entities. The only possible explanation that I can fathom for such a chain of events is that you wanted to take what you felt you were entitled to for the services you had rendered as a receiver (before you even knew what the "value" of those services were), and that rather than comply with the applicable California Rules of Court (e.g. 3.1183) or the governing provisions of the receivership order (e.g. paragraph 15) – and irrespective of the pending (or impending) bankruptcies - you simply took the funds while you were still in control of the accounts (very likely in violation of the automatic stay and in violation of 11 USC 543). Moreover - and to add significant insult to significant injury - my clients have never been provided with the interim statements that would have been required (under both the CRC and the receivership order) before you could have made any such payments to yourself on account of services rendered to or on behalf of the receivership estate. Accordingly, I am sincerely hopeful that there is some other rational explanation for what appears self-evident in the bank records you have just provided.

In addition to the problems surrounding the manner in which the transfers appear to have been made, the transfers also constitute avoidable and recoverable transfers pursuant to 11 USC 547 or 11 USC 549. As such, formal demand is hereby made for the immediate repayment of any and all funds you caused to be transferred to you and/or The Stapleton Group since the inception of the receivership. If we do not receive such payment within ten (10) business days of today, we will file a complaint seeking, amongst other things, the return of those funds.

Lastly, in order to prepare the monthly operating reports which are due on the 22nd, we need you to immediately provide us with the actual bank statements for each of the entities for the period between August 1st and 15th. I look forward to your prompt response in this regard.

Regards,

Ashley

**Ashley McDow**
**BakerHostetler**
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T 310.442.8846

**From:** David Stapleton [mailto:david@stapletoninc.com]
**Sent:** Wednesday, August 16, 2017 4:52 PM
**To:** Delaney, Michael T.
**Cc:** Jake Diiorio; McDow, Ashley M.; Farivar, Fahim
**Subject:** RE: In re Hoag Urgent Care-Tustin, et al. - Financial Documents

Michael:

Sorry for the delay, we have been in meetings on another matter all day.  Please find all of the info.

David

---

**From:** Delaney, Michael T. [mailto:mdelaney@bakerlaw.com]
**Sent:** Wednesday, August 16, 2017 4:45 PM
**To:** David Stapleton <david@stapletoninc.com>
**Cc:** Jake Diiorio <jdiiorio@stapletoninc.com>; McDow, Ashley M. <amcdow@bakerlaw.com>; Farivar, Fahim <ffarivar@bakerlaw.com>
**Subject:** RE: In re Hoag Urgent Care-Tustin, et al. - Financial Documents

David,

We have not heard anything from Jake.  Any update on the provision of the requested document/information?

Michael


**Michael T. Delaney**
BakerHostetler
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T 310.442.8858
F 310.820.8859

---

**From:** Delaney, Michael T.
**Sent:** Wednesday, August 16, 2017 12:10 PM
**To:** 'David Stapleton'
**Cc:** Jake Diiorio; McDow, Ashley M.; Farivar, Fahim
**Subject:** RE: In re Hoag Urgent Care-Tustin, et al. - Financial Documents

Thank you, David.  If you or Jake needs to discuss anything, please feel free to give me a call.

Michael


**Michael T. Delaney**
BakerHostetler
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T 310.442.8858
F 310.820.8859

---

**From:** David Stapleton [mailto:david@stapletoninc.com]
**Sent:** Wednesday, August 16, 2017 12:06 PM
**To:** Delaney, Michael T.

2

Cc: Jake Diiorio; McDow, Ashley M.; Farivar, Fahim
Subject: RE: In re Hoag Urgent Care-Tustin, et al. - Financial Documents

Thanks, Jake will work to get you what you need.

From: Delaney, Michael T. [mailto:mdelaney@bakerlaw.com]
Sent: Wednesday, August 16, 2017 11:46 AM
To: David Stapleton <david@stapletoninc.com>
Cc: Jake Diiorio <jdiiorio@stapletoninc.com>; McDow, Ashley M. <amcdow@bakerlaw.com>; Farivar, Fahim
<ffarivar@bakerlaw.com>
Subject: In re Hoag Urgent Care-Tustin, et al. - Financial Documents

David,

As you are aware, the Debtors are required to submit bi-monthly operating reports.  The first bi-monthly operating
report is due shortly.  In order to complete the report, the Debtors require copies of all bank statements, cancelled
checks, transactional data/records, and financial records for the Debtors for August 1, 2017 and August 2, 2017.  Please
provide these records as soon as possible, but no later than the close of business today.  If you are unable or unwilling to
do so, please provide the reason you are unable or the basis for refusing to provide the requested information and
documentation.

Your prompt attention to this matter is greatly appreciated.

Best,

Michael


**Michael T. Delaney**
Associate

**BakerHostetler**
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T +1.310.442.8858

mdelaney@bakerlaw.com
bakerlaw.com

---

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**Baker & Hostetler LLP, 11601 Wilshire Blvd., Ste. 1400, Los Angeles, CA 90025-0509**

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO OPUS BANK'S MOTION FOR ORDER (I) PARTIALLY EXUSING RECEIVER'S COMPLIANCE WITH 11 U.S.C. § 543(a) AND (b); AND (II) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF ASHLEY M. MCDOW IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 24, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Michael T Delaney    mdelaney@bakerlaw.com, sgaeta@bakerlaw.com
Michael J Hauser    michael.hauser@usdoj.gov
Ashley M McDow    amcdow@bakerlaw.com,
mdelaney@bakerlaw.com;sgaeta@bakerlaw.com;rojeda@bakerlaw.com;ffarivar@bakerlaw.com;nbrazil@bakerlaw.com
Anthony J Napolitano    anapolitano@buchalter.com, IFS_filing@buchalter.com;salarcon@buchalter.com
Mary H Rose    mrose@buchalter.com, salarcon@buchalter.com
Randye B Soref    rsoref@polsinelli.com, acruickshank@polsinelli.com
Steven M Spector    sspector@buchalter.com, IFS_efiling@buchalter.com;salarcon@buchalter.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) August 24, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Presiding Judge
Hon. Theodor C. Albert
U.S. Bankruptcy Court
411 West Fourth St., Ste. 5085
Santa Ana, CA 92701

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 24, 2017 | Michael T. Delaney | /s/ Michael T. Delaney |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.