1  Ashley M. McDow (245114)
   Michael T. Delaney (261714)
2  Fahim Farivar (252153)
   **BAKER & HOSTETLER LLP**
3  11601 Wilshire Boulevard, Suite 1400
   Los Angeles, CA  90025-0509
4  Telephone:    310.820.8800
   Facsimile:    310.820.8859
5  Email:        amcdow@bakerlaw.com
                 mdelaney@bakerlaw.com
6                ffarivar@bakerlaw.com

7  [Proposed] Attorneys for
   Debtors and Debtors in Possession

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## SANTA ANA DIVISION

11

| | |
|---|---|
| In re | Lead Case No.: 8:17-bk-13077-TA |
| HOAG URGENT CARE-TUSTIN, INC., et al., | Chapter 11 |
| Debtors and Debtors in Possession. | (Jointly Administered with Case Nos. 8:17-bk-13078-TA; 8:17-bk-13079-TA; 8:17-bk-13080-TA; 8:17-bk-13089-TA; 8:17-bk-13090-TA) |
| Affects: | |
| ■ All Debtors | **DEBTORS' APPLICATION TO EMPLOY KEEN-SUMMIT CAPITAL PARTNERS LLC AS INVESTMENT BANKER; DECLARATION OF MATTHEW BORDWIN IN SUPPORT THEREOF** |
| □ Cypress Urgent Care, Inc., a California corporation, ONLY | |
| □ Hoag Urgent Care – Anaheim Hills, Inc., a California corporation, ONLY | [No Hearing Required – LBR 9013-1(o)] |
| □ Hoag Urgent Care – Huntington Harbour, Inc., a California corporation, ONLY | |
| □ Hoag Urgent Care – Orange, Inc., a California corporation, ONLY | |
| □ Hoag Urgent Care – Tustin, Inc., a California corporation, ONLY | |
| □ Laguna-Dana Urgent Care, Inc., a California corporation, ONLY | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611162906.2

1  **TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY**

2  **JUDGE:**

3      Cypress Urgent Care, Inc. ("CUC"), a California corporation, Hoag Urgent Care –

4  Anaheim Hills, Inc. ("HUCA"), a California corporation, Hoag Urgent Care – Huntington

5  Harbour, Inc. ("HUCH"), a California corporation, Hoag Urgent Care – Orange, Inc. ("HUCO"),

6  a California corporation, Hoag Urgent Care – Tustin, Inc. ("HUCT"), a California corporation,

7  and Laguna-Dana Urgent Care, Inc. ("LDUC"), a California corporation (collectively, the

8  "Debtors"), the debtors and debtors in possession in the above-captioned, jointly-administered

9  bankruptcy cases (collectively, the "Bankruptcy Cases"), respectfully submit the within

10  application (the "Application") to employ Keen-Summit Capital Partners LLC  ("Keen" or the

11  "Firm") as investment banker to the estate pursuant to 11 U.S.C. §§ 327 and 328(a),[1] Rules 2014,

12  2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule

13  2014-1(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central

14  District of California (the "Local Rules"), and the Guidelines of the Office of the United States

15  Trustee.  The Firm's role shall be to advise the Debtors on potential sale transactions, including

16  soliciting buyers and running any auction(s) of some or all of the Debtors' assets, if necessary. In

17  support thereof, the Debtors respectfully submit as follows:

18  **I.**      **JURISDICTION AND VENUE**

19      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.

20  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The Debtors consent to the entry of a final

21  order by the Court in connection with this Motion to the extent it is later determined that the

22  Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article

23  III of the United States Constitution.  Venue of these cases and this Motion in this district is

24  proper under 28 U.S.C. §§ 1408 and 1409.

25

26

27

28        [1] Unless otherwise noted, all statutory citations refer to title 11 of the United States Code, which may be referred to herein as the "Bankruptcy Code."

## II.     BACKGROUND

1.     The Debtors operate five (5) urgent care clinics located throughout Southern California.  Cypress Urgent Care, Inc. and Laguna-Dana Urgent Care, Inc. operate clinics under the Your Neighborhood Urgent Care trade name (the "YNUC Clinics").  Hoag Urgent Care – Anaheim Hills, Inc., Hoag Urgent Care – Huntington Harbour, Inc., and Hoag Urgent Care – Tustin, Inc. operate Hoag Urgent Care facilities (collectively, the "Hoag Clinics" and, together with the YNUC Clinics, the "Clinics") pursuant to an agreement with Hoag Memorial Hospital Presbyterian ("Hoag").  Hoag Urgent Care – Orange, Inc. previously operated a Hoag Urgent Care facility in Orange, California pursuant to an analogous agreement with Hoag; however, the Orange facility is no longer operating.

2.     The Debtors believe it may be necessary to engage in one or more "Transactions," as that term is defined in the Retention Agreement attached to the Declaration of Matthew Bordwin (the "Bordwin Declaration") as **Exhibit A** (the "Retention Agreement") and incorporated herein by reference, including, without limitation, a sale of the Debtors and/or assets of the Debtors (in whole or in part).[2]  The Debtors seek to employ the Firm, which is experienced in marketing bankruptcy assets, including ones similar to those owned by the Debtors, to advise them regarding transactions and to market the potential Transactions.  The Firm will be the exclusive investment banker to the Debtors during the period set forth in the Retention Agreement.

## III.     SCOPE OF EMPLOYMENT

The Debtors hereby seek authority to retain the Firm as Investment Banker on the terms provided in the Retention Agreement, for the purposes described therein, which include, without limitation, the following:

1.     Reviewing pertinent documents related to marketing and/or sale the Debtors or Debtors' assets.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Retention Agreement.

611162906.2
611254224.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

2.      Working with the Debtors and their financial advisors to develop due diligence materials, an offering memorandum, and a data room (at the Debtors' expense), and developing and implementing a marketing plan in conjunction with the Debtors.

3.      Soliciting offers for a Transaction, advising the Debtors with respect to any Transaction(s), and assisting the Debtors in negotiating and implementing the terms of a proposed Transaction.

4.      Running any auction or overbid process in accordance with Court-approved bidding procedures.

5.      Communicating with the Debtors and their professionals and advisors regularly regarding the foregoing and the status of the Firm's efforts.

6.      Working with the Debtors' counsel and other professionals to implement Transactions and advise them and the Debtors with respect to the review of documents or assisting in resolving problems which may arise related to a proposed Transaction.

7.      Performing such other investment banking services as may be necessary and appropriate for the efficient and economical administration of the Bankruptcy Cases and/or the Estates within the scope of the Retention Agreement.

IV.     **TERMS OF PROPOSED EMPLOYMENT**

The Firm has agreed to be employed by the Debtors, subject to Court approval, on the following terms:

1.      <u>Qualifications and Cost</u>.  The investment bankers assigned to the Bankruptcy Cases are experienced in the marketing and sale of businesses and their assets in Chapter 11, and are competent to handle the proposed representation.  A biography of Matthew Bordwin, the primary investment banker to the Debtors, is attached to the Bordwin Declaration as **Exhibit B**. Mr. Bordwin has been employed by Keen since its formation on January 1, 2015, and by one or another of its predecessor firms since 1996.  Keen is the successor entity to Keen Realty Consultants Inc., a workout and advisory business that was founded by Mr. Bordwin's father in 1982.  With a particular expertise in workouts and restructurings, Keen most typically represents

- 4 -

611162906.2
611254224.1

Chapter 11 debtors-in-possession.  Mr. Bordwin is an active member of the *Turnaround Management Association* and the *American Bankruptcy Institute* and is a frequent speaker on relevant industry topics.  Keen has extensive experience selling financially distressed businesses, including those in Chapter 11.  Recent clients include, among others:

a. **In re Aziz Convenience Stores**, Bankr. S. Dist. TX, McAllen Div., Case No. 14-70427; Sold 28 store gas station/convenience store chain as a going concern, $41,600,000.  Awarded the 2016 TMA Mid-Size Transaction of the Year Award by the TMA;

b. **In re Nirvana,** Bankr. N. Dist. NY Case No. 15-60823: Sold manufacturer and bottler of spring water as a going-concern, $5,750,000;

c. I**n re Newbury Common Associates**, Bankr. D. Del, Case No. 15-12507 (LSS): Sold 3 multifamily properties (231 units), a 115 room Marriot Courtyard hotel, and 335,500 s.f. of office and flex space for $148,240,000.  Awarded the 2017 Turnaround Atlas Award - Real Estate Restructuring of the Year from the Global M&A Network;

d. **Food Management Group,** Bankr. SDNY Case No. 04-22880 (ASH): Sold Dunkin Donuts franchisee (18 locations plus commissary), $18,000,000.

e. **J. Peterman Company** Bankr. E.D. KY Case No. 99-50142 (WSH): Sold catalog retailer as a going concern, $10,000,000;

f. **In re Bakhtaver and Aspi Irani (d/b/a Closter Plaza Shopping Center),** Bankr. D NJ, Case No. 10-47961: Raised $52 million and structured a complex j-v with a private REIT;

g. **Cordillera Golf Club**, Bankr. D. Colo. Case No. 12-24882-ABC: Sold club as a going concern for $14,200,000;

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 5 -

611162906.2
611254224.1

h. **Briar's Creek Golf**, Bankr. D. SC Case No. 15-00712 (JEW): Sold prestigious and exclusive golf club as a going concern for $11,300,000;

i. **Project Protein:** Within five weeks of engagement, sold a distressed food products company as a going concern.  Price undisclosed.

2.    Section 328(a) authorizes the employment of professionals on "any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."   In this instance, the Firm is seeking to be compensated (consistent with its custom and practice and consistent with Section 328(a) of the Bankruptcy Code) with an advisory fee, set off against a percentage fee/contingent fee.  The Firm is not seeking compensation based on an hourly fee.   The Firm will receive a $30,000 Advisory Fee up-front, which shall be credited against any Transaction Fee(s).  The Transaction Fees shall be 5% of the Gross Proceeds of any Transaction, unless the Transaction is closed with one of two prior prospects identified by the Debtors, in which case Keen shall receive 3%, rather than 5%, of Gross Proceeds as the Transaction Fee.  The Firm will be entitled to reimbursement of its reasonable costs and expenses.  The Debtors shall advance an agreed-upon sum to the Firm for marketing expenses.

3.    No Requirement to File Fee Application.  It is not contemplated that the Firm will bill the Debtors for any services on an hourly basis.  Rather, the Firm will be paid the Advisory Fee and the Transactional Fee.  Since the Firm will only be paid a "pre-approved" percentage fee under Section 328 of the Bankruptcy Code, the Debtors submit that the Firm need not keep hourly records of its time nor file a fee application; rather, it may be paid the Advisory Fee upon retention. As and when Debtors seek Bankruptcy Court approval for one or more Transactions, Debtors' applications seeking such approvals shall expressly seek approval for the payment of Keen's fees, which approval, if and when granted, shall be set forth in the Bankruptcy Court order or orders approving the Transaction or Transactions.

4.    No Retainer.  The Firm has not received a retainer.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

611162906.2
611254224.1

5.     <u>Effective Date</u>.  The Debtors seek authority to employ the Firm effective as of the

Petition Date.

**V.     DISCLOSURES AND DISINTERESTEDNESS**

Pursuant to Bankruptcy Code § 327(a), a debtor-in-possession may employ professional

persons who do not hold or represent an interest materially adverse to the estate, and who are

disinterested persons, to represent or assist the debtor-in-possession in carrying out its duties.  *See*

*In re AFI Holding, Inc.*, 530 F.3d 832, 845 (9th Cir. 2008).  "To hold an interest adverse to the

estate means (1) to possess or assert any economic interest that would tend to lessen the value of

the bankruptcy estate or that would create either an actual or potential dispute in which the estate

is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias

against the estate."  *In re Connor*, 52 B.R. 892, 896 (W.D. OK. 1985), *citing In re Roberts*, 46

B.R. 815, 327 (Bankr.D.Utah 1985).  "To represent an adverse interest means to serve as agent or

attorney for any individual or entity holding such an adverse interest."  *Id*.  An adverse interest is

material if it exists by reason of any relationship with the debtor.  *See In re AFI Holding, Inc.*, 530

F.3d at 845-46.  Except as otherwise provided herein, to the best of the Debtors' knowledge and

based upon the Bordwin Declaration**,** the following disclosures are true and correct and the Firm

is disinterested and does not hold or represent an interest materially adverse to the estate.

1.     To the best of the Firm's knowledge, neither the Firm nor any of its partners,

associates or employees have any connection with the Debtors, the principals of the Debtors,

insiders, creditors, any other party or parties in interest, their respective attorneys and/or

accountants, or any person employed in the Office of the United States Trustee; *save and except*

*that* the managing member of the Firm has a relationship with U.S. Bancorp that is wholly

unrelated to this case.

2.     Should the Firm learn of any additional relationships with potentially interested

parties, the Firm shall supplement this Application or otherwise inform the Court.  At present,

there are no potential, perceived or actual conflicts of interest with the foregoing entities.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

611162906.2
611254224.1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3.      Neither the Firm nor any of its partners, associates or employees are creditors, equity security holders or insiders of the Debtors.

4.      Neither the Firm nor any of its partners, associates or employees are or were investment bankers for any outstanding security of the Debtors.

5.      Neither the Firm nor any of its partners, associates or employees have been, within three (3) years before the Petition Date, investment bankers for a security of the Debtors, or attorneys for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

6.      Neither the Firm nor any of its partners, associates or employees are or were, within two (2) years before the Petition Date, directors, officers or employees of the Debtors or of any investment banker for any security of the Debtors.

7.      Except for the relationship with U.S. Bancorp, neither the Firm nor any of its partners, associates or employees represent an individual or entity which holds a potentially adverse interest to the Estate.

8.      Neither the Firm nor any of its partners, associates or employees are related to the United States Trustee or the bankruptcy judge assigned to this Bankruptcy Case.

9.      The Firm and its partners, associates or employees are disinterested within the meaning sections 101(14) and 327(a) of the Bankruptcy Code.

10.      Except for the sharing of profits by and among the partners, members, associates and employees of the Firm, the Firm does not have any fee sharing arrangement, understanding or compensation sharing arrangement with any other individual or entity.

## VI.    CONCLUSION

In sum, the Debtors believe it is necessary to employ the Firm as investment banker to provide the services described herein and/or the Retention Agreement. The Debtors believe that the Firm is qualified for the proposed employment due to its experience in marketing and selling assets in bankruptcy. The Debtors also believe that the fees and/or commission to be paid to the Firm are reasonable and commensurate with the services the Firm may be called upon to provide.

611162906.2
611254224.1

1    WHEREFORE, the Debtors respectfully requests that the Court enter an order:

2    (1) approving this Application in its entirety; (2) authorizing the Debtors to employ the Firm

3    pursuant to 11 U.S.C. §§ 327(a) and 328(a) on the terms and conditions set forth herein and/or in

4    the Retention Agreement effective August 2, 2017; (3) authorizing the Firm to be compensated

5    from the proceeds of any Transaction, in accordance with the Retention Agreement pursuant to

6    Section 328(a) of the Bankruptcy Code, and (4) granting such further and additional relief as the

7    Court deems just and proper.

8
9    Dated:    August 29, 2017                Respectfully submitted,

10

11                                            By:    /s/ Dr. Robert C. Amster
12                                                   Dr. Robert C. Amster

13                                            President of the Debtors and Debtors in Possession

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

611162906.2
611254224.1

# DECLARATION OF MATTHEW BORDWIN

I, Matthew Bordwin, hereby declare:

1.      I am Managing Director of Keen-Summit Capital Partners LLC ("Keen"). Summit Investment Management ("Summit") is the managing member of Keen.  I submit the within declaration in support of the application to employ Keen as the investment banker for the Debtors in the above-captioned Bankruptcy Cases.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the preceding application.  This declaration of disinterestedness is not on behalf of Summit. However, to the best of my knowledge, after due inquiry to Summit, I have been advised that Summit believes it has no connections to the Debtor or creditors.

2.      Unless otherwise stated, the matters set forth herein are based on my personal knowledge, and if called as a witness, I could and would competently testify to the same.

3.      A true and correct copy of the Retention Agreement is attached hereto as **Exhibit A**.

4.      A true and correct copy of my biography is attached hereto as **Exhibit B**.

5.      In association with the retention of Keen, the Debtors' counsel has provided to me the list of creditors in this case and I have reviewed that list.

6.      Based on my review of the information provided, and for the reasons set forth *infra*, I believe Keen is a "disinterested person" within the meaning of 11 U.S.C. Section 101(14). Keen has no business, professional or other connection with the Debtors herein or with their attorneys, and does not represent, nor will it represent, any interest adverse to the estate in the matters in which it is to be engaged.

7.      Keen maintains records of all of its clients. Keen has reviewed the schedule of creditors provided to it by the Debtors and has no connection to any party listed, unless set forth below. This Declaration is based on the information available to Keen on the date hereof.

      a.      Summit has a relationship with U.S. Bancoprp that is wholly unrelated to this case.

8.      Keen may have represented in the past, may currently represent, and likely in the

611162906.2

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1 future will represent parties in interest in connection with matters unrelated to the Debtors and the

2 Bankruptcy Cases. As part of its practice, Keen also appears in cases, proceedings and

3 transactions involving many different attorneys and accountants, some of which may represent

4 claimants and parties-in-interest in the Bankruptcy Cases. Keen does not represent any such entity

5 in connection with the Bankruptcy Cases or have any relationship with any such entity, attorneys,

6 accountants or advisors that would be adverse to the Debtors or their estates.

7   9. Keen is a "disinterested person" as that term is defined in Bankruptcy Code section

8 101(14), as modified by section 1107(b), in that, to the best of my knowledge, Keen, its members

9 and employees:

10   a. are not creditors, equity security holders, or insiders of the Debtors, or any

11    of them;

12   b. are not and were not investment bankers for any outstanding security of the

13    Debtors;

14   c. have not been, within three years before the date of the filing of the

15    petition, investment bankers for a security of the debtors, or attorneys for

16    such an investment bankers in connection with the offer, sale, or issuance

17    of a security of the Debtors;

18   d. are not and were not, within two years before the date of the filing of the

19    petition, a director, officer, or employee of the Debtors or of an investment

20    banker specified in subparagraph (b) or (c) above; and

21   e. do not have an interest materially adverse to the interest of the estate or of

22    any class of creditors or equity security holders, by reason of any direct or

23    indirect relationship to, connection with, or interest in, the Debtors or an

24    investment banker specified in the subparagraph (b) or (c) above, or for any

25    other reason.

26   10. Despite the efforts described above to identify and disclose Keen's connections

27 with parties in interest in the Bankruptcy Cases, Keen is unable to state with certainty that every

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

611162906.2
611254224.1

client relationship or other connection has been disclosed. In this regard, if Keen discovers additional material information that it determines requires disclosure, it will promptly file a supplemental disclosure with this Court.

11.    The scope of the services to be performed by Keen and the Fee Structure are accurately set forth in the Retention Agreement and Application as are the other terms of Keen's retention.

12.    I have agreed to not share with any person except members and consultants of the firm the compensation to be paid for the services rendered in this case unless set forth in the Agreement and/or Application.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of August, 2017, at Melville, New York.

_____
Matthew Bordwin

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

APPLICATION TO EMPLOY KEEN-SUMMIT CAPITAL PARTNERS LLC AS INVESTMENT BANKER

611162906.2
611254224.1

# EXHIBIT A

RETENTION AGREEMENT

*Between*
Cypress Urgent Care, Inc.
Hoag Urgent Care - Anaheim Hills, Inc.
Hoag Urgent Care - Huntington Harbour, Inc.
Hoag Urgent Care - Orange, Inc.
Hoag Urgent Care-Tustin, Inc.
Laguna Dana Urgent Care Inc.

*and*
Keen-Summit Capital Partners LLC

Date:  August 29, 2017

In consideration of the mutual agreements herein contained and subject to the entry of the "Order" (as defined below), "Company" (as defined below) hereby retains "Keen-Summit" (as defined below) to act as Company's investment banker upon the terms and conditions set forth herein.

**I.    Definitions**

The following terms as used herein have the following meanings.

A.    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Central District of California.

B.    "Code" means the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

C.    "Company" means, collectively and individually, as applicable, Cypress Urgent Care, Inc., Hoag Urgent Care - Anaheim Hills, Inc., Hoag Urgent Care - Huntington Harbour, Inc., Hoag Urgent Care - Orange, Inc., Hoag Urgent Care-Tustin, Inc., and Laguna Dana Urgent Care Inc.

D.    "Keen-Summit" means Keen-Summit Capital Partners LLC.

E.    "Effective Date" means the date of mutual execution of this Agreement, subject to entry of an Order.  Regardless of the date of execution, the "Effective Date" shall not occur until the Bankruptcy Court enters an Order approving this agreement.

F.    "Gross Proceeds" means the sum of the total consideration transferred to, or for the benefit of, Company and shall be inclusive of, but not limited to, cash or its equivalent, value of debt assumed or released, liabilities assumed or released, and any other consideration, paid or payable, directly or indirectly, in connection with a Transaction.  The computation of Gross Proceeds as well as the computation of Keen-Summit's fee shall not be affected by the costs of advertising, Company's legal fees, break-up fees, Keen-Summit's expenses nor any closing costs and/or adjustments, including but not limited to adjustments and/or payments of whatever kind to lienholders, secured parties or offerors.  The computation of Gross Proceeds shall include value attributable to personal property related to the Transaction.

G.    "Order" shall mean a final order issued by the Bankruptcy Court approving this Agreement. An order shall be deemed a "final order" fifteen (15) calendar days after its entry *provided that* (a) no timely appeal has been filed challenging the order or, (b) if a timely appeal has been filed, no order staying the effect of the order has been requested or entered.  A



notice of appeal shall be deemed timely if filed within the time allotted under Rule 8002 of the Bankruptcy Rules.

H.    "Transaction" means the sale or transfer of Company's title to or an interest in (a) the Company, or any of them, and/or (b) all or a portion of Company's assets, irrespective of whether the sale or transfer of title or interest is with a third party or with a creditor by means of a credit bid.

## II.    Services

### A.    Authority

1.    Keen-Summit shall have the sole and exclusive authority to represent Company, on an exclusive right to sell basis, in the negotiation of Transactions.

2.    Company may designate additional businesses or property, upon the same terms and conditions, without further application to the Court.

3.    In order to coordinate our efforts with respect to possible Transactions, during the term of this Agreement neither the Company nor any representative thereof (other than Keen-Summit) will initiate discussions with a third party regarding a Transaction except through Keen-Summit.  If the Company, its management, or any of its professional advisors receives an inquiry regarding a Transaction, it will promptly advise Keen-Summit of such inquiry in order that Keen-Summit may evaluate the inquiry and assist the Company in any resulting negotiations.

4.    Company shall retain the complete discretion to accept or reject any proposed Transaction.

### B.    Marketing Services

Keen-Summit's services may include those generally described below, as appropriate. Keen-Summit will:

1.    On request, review pertinent documents and consult with Company's counsel, as appropriate;

2.    Coordinate with Company in the development of due diligence materials, the cost of which shall be Company's sole responsibility. Company has advised that it has engaged or will be engaging a financial advisor who will be putting together financials and assist in the creation of the offering memorandum along with creating the data-room;

3.    Develop, subject to Company's review and approval, a marketing plan and implement each facet of the marketing plan;

4.    Communicate regularly with prospects and maintain records of communications;

5.    Solicit offers for a Transaction;

6.      Assist Company in evaluating, structuring, negotiating and implementing the terms and conditions of a proposed Transaction;

7.      Run any auction or overbid process in accordance with Court-approved bid procedures;

8.      Communicate regularly with Company and its professional advisors regarding the foregoing and the status of its efforts; and

9.      Work with Company's attorneys responsible for the implementation of the proposed Transactions, reviewing documents, negotiating and assisting in resolving problems which may arise.

**III.    Compensation**

A.      <u>Advisory Fee</u>. For the review of documents and the creation of marketing strategy, Company shall pay Keen-Summit a nonrefundable advisory and consulting fee of thirty thousand dollars ($30,000).  The Advisory Fee shall be fully set off against any Transaction Fee(s).

B.      <u>Transaction Fee.</u>  As and when Company closes a Transaction, whether such Transaction is completed individually or as part of a package or as part of a sale of all or a portion of Company's business, Keen-Summit shall have earned a fee equal to five percent (5%) of Gross Proceeds from the Transaction(s) (the "Transaction Fee").

1.      <u>Prior Prospects</u>:  Company has provided the names of two (2) entities it has had discussions with regarding a potential Transaction.  If either of these parties closes a Transaction, then, in this situation only, the Transaction Fee shall be three percent (3%) of Gross Proceeds from the Transaction(s).

C.      <u>Timing of Payment.</u> The Transaction Fees shall be paid, in full, from the Transaction proceeds or otherwise, simultaneously with the closing or other consummation of any Transaction directly from escrow.

D.      <u>Survival</u>:  In the event Company and any third party should enter into an agreement providing for a Transaction before the expiration of this Agreement and the closing does not occur until after said expiration, then Keen-Summit shall be entitled to a fee in accordance with the terms of this Agreement.  If Company, after the expiration of said period, arranges for a Transaction with a third party whom Keen-Summit solicited or otherwise introduced to the Company prior to said expiration ("Survival Prospects"), and the contract signing or closing takes place within four (4) months after said expiration, then Keen-Summit shall be entitled to a Transaction Fee in accordance with the terms of this Agreement.  Keen shall provide Company a list of any and all Survival Prospects no later than fifteen (15) days after the termination of this agreement.  Survival Prospects shall not include the parties identified by Company and subject to the reduced Transaction Fee subject to paragraph III.B.1.

*Hoag Urgent Care*

*August 29, 2017*
*Page 4 of 10*

IV.  **Expenses**

A.    All reasonable out of pocket costs and expenses incurred by Keen-Summit in connection with performing the services required by this Agreement, including but not limited to travel, lodging, FedEx, postage, telephone charges, and photocopying charges, shall be borne by Company.

B.    With regards to the marketing of the Company, Keen-Summit shall prepare a marketing plan and budget.   Following Company's approval of the budget, Company shall advance to Keen-Summit the budgeted amount and agrees to pay all approved, reasonable, additional costs and expenses within five (5) business days of receiving Court approval of the same. Keen-Summit shall be under no obligation to incur marketing expenses until such time as Keen-Summit receives funds from Company.   Marketing expenses shall be capped at twenty-five thousand dollars ($25,000).

C.    Keen-Summit shall not be responsible for any out-of-pocket due diligence costs and expenses.

V.  **Company Responsibilities**

A.    Upon the Effective Date, Company will deliver to Keen-Summit a list of all brokers, principals, or other prospects who have expressed an interest in the Company along with all correspondence and other records that relate to any such interest.

B.    Company shall have the continuing obligation to assess the accuracy of the representations contained herein and to advise Keen-Summit in writing as soon as it becomes aware of any inaccuracy, inconsistency, incompleteness or change of circumstances and to correct same.

C.    Company shall maintain their locations and shall furnish utilities and public liability insurance and shall assist in providing property inspections to prospects.

D.    Accurate & Complete Information:

   1.    Company shall make available to Keen-Summit all information reasonably requested by Keen-Summit for the purpose of enabling Keen-Summit to perform its obligations pursuant to this Agreement.  Company shall employ commercially reasonable efforts to ensure all information provided by Company shall be materially accurate and complete at the time it is furnished and Company shall, as soon as it becomes aware of any inaccuracy or incompleteness in any information then or later provided to Keen-Summit, promptly advise Keen-Summit in writing of such inaccuracy or incompleteness and correct the same.   In performing its services hereunder, Keen-Summit shall under all circumstances be entitled to rely upon and assume, without independent verification, the accuracy and completeness of all information that has been furnished to it by, or on behalf of, the Company and shall have no obligation to verify the accuracy or completeness

*Hoag Urgent Care*

*August 29, 2017*
*Page 5 of 10*

of any such information and shall not be responsible for the inaccuracy or incompleteness of any information provided to Keen-Summit.

2.  Company covenants that when Keen-Summit presents offering materials to Company for review and approval, Company will promptly and diligently review same for accuracy and completeness and will advise Keen-Summit, in writing, of any corrections or modifications.  Once Keen-Summit has revised such offering materials in a manner consistent with Company's recommendations, Company shall promptly review and approve, in writing, such offering materials before Keen-Summit disseminates same.  Keen-Summit shall be under no obligation: (A) to disseminate offering materials that it has reason to believe are inaccurate or are materially misleading, and (B) to disseminate such offering materials until such time as Keen-Summit receives Company's written approval of same.

E.  As soon as practicable following the execution of this agreement, Company shall file an application with the Bankruptcy Court for, and will use its best efforts to obtain, an Order. With respect to the application and Order:

1.  Company acknowledges that this Agreement in its entirety will be attached to and made a part of Company's application to the Bankruptcy Court and will be referenced to in the Order.

2.  The application shall seek an Order authorizing the employment of Keen-Summit as of the date of this Agreement, as professional persons pursuant to Section 327 of the Code (with compensation subject to the standard of review of Section 328(a) of the Code and not any other standard, including that provided in Section 330 of the Code).  The employment application and the Order shall be provided to Keen-Summit sufficiently in advance of their filing, and must be acceptable to Keen-Summit in its sole discretion.  In the event that the Bankruptcy Court does not enter an order acceptable to Keen-Summit, Keen-Summit shall have no further obligations under the terms of this Agreement.

3.  Company agrees that an Order approving Keen-Summit's retention incorporates by reference this entire Agreement inclusive of the below provisions even if not specifically mentioned in the Order.  Company agrees that:

a)  Keen-Summit is exempt from the requirement to keep time records (unless Keen-Summit services are being billed by the hour) and the necessity of filing a fee application;

b)  Keen-Summit's fees and expenses shall be treated as administrative expense claims in the Company's bankruptcy case;

c)  The terms and conditions of this Agreement are "reasonable."  If the Order authorizing the employment of Keen-Summit is obtained, Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Agreement and the Order;

d)  As and when Company seeks Bankruptcy Court approval for one or more Transactions, Company's applications seeking such approvals shall expressly seek approval for the payment of Keen-Summit's fees,

*Hoag Urgent Care*



*August 29, 2017*
*Page 6 of 10*

which approval, if and when granted, shall be set forth in the Bankruptcy Court order or orders approving the Transaction or Transactions; and

e)      Bankruptcy Court has and shall retain core jurisdiction to hear and determine all matters arising from the implementation of this Agreement, and neither the Company nor Keen-Summit shall be required to seek authorization from any other jurisdiction with respect to the relief granted by the Order approving this Agreement.

4.      If Company obtains an order of the Bankruptcy Court authorizing financing or cash collateral use and such order requires the submission of a budget by Company delineating its post-petition expenditures, such budget shall expressly include all amounts projected to be paid to Keen-Summit pursuant to the terms of this Agreement.  In addition, any stipulation or order for financing or cash collateral use shall include all amounts to be paid to Keen-Summit pursuant to the terms of this Agreement among any carve-out to be provided professionals in the Company's bankruptcy case.

5.      The terms of Section V.E are solely for the benefit and protection of Keen-Summit and may be waived, in whole or in part, only by Keen-Summit.

**VI.    <u>Miscellaneous</u>**

A.      <u>Terms & Conditions</u>.  The terms and conditions set forth on Schedule "A" attached hereto are incorporated by reference.  The provisions of this section of the Agreement shall survive the termination of this Agreement.

B.      <u>Notice</u>.  Any correspondence or required notice shall be addressed as follows and shall be sent by Certified Mail, Return Receipt Requested, or by FedEx, either of which notices shall be supplemented by facsimile and/or email transmission, and shall be effective as of the date of actual receipt of the Certified Mail or FedEx.  Such notice shall be addressed as follows:

If to Keen-Summit:          Keen-Summit Capital Partners LLC
                            1 Huntington Quadrangle, Suite 2C04
                            Melville, NY 11747
                            ATTN: Matthew Bordwin
                            Telephone: (646) 381-9202
                            Email: mbordwin@keen-summit.com

With a copy to:             Keen-Summit Capital Partners LLC
                            1460 Broadway
                            New York, NY 10036
                            ATTN: Harold Bordwin
                            Telephone: (646) 381-9201
                            Email: hbordwin@Keen-Summit.com

If to Company:              Hoag Urgent Care
                            Jennifer Amster

*Hoag Urgent Care*



*August 29, 2017*
*Page 7 of 10*

P: (714) 389-5700 ext 1020
F: (714) 389-6973
E: jkiindarius@ynuc.us

With a copy to:

Baker & Hostetler
Ashley M McDow, Esq.
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025
Telephone: 310-820-8800
Email: amcdow@bakerlaw.com.

If the foregoing correctly sets forth the agreement between the Company and Keen-Summit, please sign and return the enclosed copy of this Agreement, whereupon it shall become our binding agreement.

Very truly yours,

**KEEN-SUMMIT CAPITAL PARTNERS LLC**

**AGREED & ACCEPTED**
This ___ day of _____, 2017

**HOAG URGENT CARE on behalf of all related Debtor entities**

By: _____
Matthew Bordwin, as Managing Director
Dated: Aug 29, 2017
7 of 10

By: _____
Name:
Title:

*Hoag Urgent Care*

*August 29, 2017*
*Page 8 of 10*

## SCHEDULE A

### TERMS & CONDITIONS

I.      <u>Term of Agreement.</u>  Subject to the approval of the Bankruptcy Court, the term of Keen-Summit's retention shall be from the date of Company's execution of this Agreement through the confirmation of a plan of reorganization, the closing of all Transactions contemplated by this Agreement or for a period of twelve (12) months, whichever comes first, which term can be extended pursuant to the same terms and conditions and by the mutual consent of the parties without the need for further application to the Bankruptcy Court.

II.      **Announcement**.  Keen-Summit may, at its option and expense, place announcements and advertisements or otherwise publicize Keen-Summit's role  on Keen-Summit's internet web site and in such newspapers and periodicals and in its marketing materials as it may choose stating that Keen-Summit has acted as advisor to the Company with respect to the Transactions.  To the extent that Company has the authority, Company grants Keen-Summit the right to reproduce Company's logo in connection with Keen-Summit's advertising of Keen-Summit's representation of Company.

III.      **Authority**.  The parties hereto warrant and represent that this Agreement has been approved by all requisite corporate action and that the party executing this Agreement has full power and authority to do so.

IV.      **Construction**

    A.      Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

    B.      This Agreement shall be construed fairly as to all parties and there shall be no presumption against the party who drafted this Agreement in the interpretation of this Agreement.  By executing or otherwise accepting this Agreement, Company and Keen-Summit acknowledge and represent that they are represented by and have consulted with legal counsel with respect to the terms and conditions contained herein.

V.      **Counterparts**.  This Agreement may be executed in two or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Facsimile and electronic transmission (including the email delivery of documents in Adobe PDF format) of any signed original counterpart or retransmission of any signed facsimile transmission shall be deemed the same as the delivery of the original.

VI.      **Dispute Resolution.**

    A.      <u>Choice of Law; Jury Trial</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to any principles of conflict of laws.  To the extent permitted by law, the parties to this Agreement waive any right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Keen-Summit pursuant to, or the performance by Keen-Summit of the services contemplated by, this Agreement.

    B.      <u>Attorneys' Fees</u>.  If any party to this Agreement brings an action directly or indirectly based upon this Agreement or the matters contemplated hereby against any other party, the prevailing party shall be entitled to recover from the non-prevailing party, in addition to any other appropriate amounts, its reasonable costs and expenses in connection with such proceeding, including, but not limited to, reasonable attorneys' fees and arbitration and/or court costs.

    C.      <u>Bankruptcy Court Jurisdiction</u>.  The Bankruptcy Court has and shall retain exclusive jurisdiction to hear and determine all matters arising from the implementation or execution of this Agreement.  Any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from, this Agreement or Keen-Summit's services hereunder, shall be settled by the Bankruptcy Court.  The Bankruptcy Court shall be limited to awarding compensatory damages and the parties hereto hereby waive their right to seek punitive, consequential, exemplary or similar types of special damages.

    D.      <u>Survival</u>.  The provisions of this section of the Agreement shall survive the termination of this Agreement.

VII.      **Electronic Communications**. The parties hereto may communicate with each other by electronic mail or otherwise transmit documents in electronic form during the course of this engagement.  The parties hereto each accept the

*Hoag Urgent Care*



*August 29, 2017*
*Page 9 of 10*

inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices).

VIII.    **Entire Agreement**.  This Agreement contains the entire agreement between the parties hereto, and no representations, inducements, promises or agreements, oral or otherwise, entered into prior to the execution of this Agreement will alter the covenants, agreements and undertakings herein set forth.  This Agreement shall not be modified in any manner, except by an instrument in writing executed by the parties.

IX.    **Force Majeure**.  Each party shall have no liability for delays, failure in performance, or damages due to fire, explosion, lighting, power surges or failures, strikes or labor disputes, water, acts of god, the elements, war, civil disturbances, acts of civil or military authorities, telecommunications failure, fuel or energy shortages, acts or omissions of communications carriers, or other causes beyond each party's control whether or not similar to the foregoing.

X.    **Good Faith**.  The parties hereto shall deal with each other fairly and in good faith so as to allow each party to perform its duties and earn the benefits of this Agreement and shall not interfere, prevent or prohibit the other, in any manner, prior to or during the term of this Agreement from carrying out its duties and obligations under the Agreement.

XI.    **Indemnification**.

A.    The Company shall defend, indemnify and hold harmless Keen-Summit and its affiliates, and its respective directors, officers, employees, agents, representatives and controlling persons (Keen-Summit and each such entity or person being an "Indemnified Party") from and against any and all losses, claims, damages, expenses and liabilities (including but not limited to counsel fees and disbursements in connection with the investigation of, preparation for, or defense of any pending or threatened claim) (collectively, "Losses"), as incurred, to which such Indemnified Party may become subject, related to or arising out of activities performed by or on behalf of an Indemnified Party pursuant to this Agreement, any transactions contemplated hereby, or the Indemnified Party's role in connection therewith. The Company shall have no obligation to indemnify and hold harmless an Indemnified Party for any Losses found in a final judgment by a Court of competent jurisdiction to have resulted primarily from actions taken or omitted to be taken by the Indemnified Party in bad faith or from the Indemnified Party's negligence, gross negligence, self-dealing, breach of fiduciary duty, or willful misconduct in performing the services described.

B.    The Company also agrees that Keen-Summit, its affiliates, and their respective directors, officers, employees, agents, representatives and controlling persons shall not be liable (whether directly or indirectly, in contract or tort or otherwise) to the Company or its security holders or creditors, for any matter, cause or thing related to or arising out of the engagement of Keen-Summit pursuant to, or the performance by Keen-Summit of the services contemplated by, this Agreement, except to the extent that Keen-Summit is found in a final judgment by a Court of competent jurisdiction to have acted or failed to act in bad faith or with negligence, gross negligence, self-dealing, breach of fiduciary duty,  or willful misconduct in performing the services described in this Agreement.

XII.    **Multiple Clients**.  From time to time, Keen-Summit, or one of its related entities, may and shall have the right to advise or provide services to several industry participants, some of which may be competitors of the Company.  The Company, its directors and shareholders, waive any right to commence any action, suit or proceeding or make any demand, complaint or claim against Keen-Summit, its subsidiaries or affiliates, or their partners, directors, officers or other personnel, that arises out of Keen-Summit's, or one of its related entities', right to advise or provide services to industry competitors of the Company.

XIII.    **No Time Records**. The services to be provided by Keen-Summit pursuant to this Agreement are transactional in nature and except with respect to hourly fees, for which Keen-Summit will maintain contemporaneous time records in half-hour increments and not on a project category basis, Keen-Summit will not be billing Company by the hour nor keeping a record of its time spent on behalf of Company.

XIV.    **Relationship**.

A.    Keen-Summit's role shall be as the Company's agent and Keen-Summit hereby acknowledges its fiduciary responsibilities to Company.    Nevertheless, Company shall remain fully responsible for all decisions and matters as to which Keen-Summit's advice is sought.    Keen-Summit is assuming no management responsibilities.  Company acknowledges and agrees that its engagement of Keen-Summit hereunder does not and is not intended to confer rights upon any person not a party hereto, including but not limited to any security holders or creditors of Company's bankruptcy estate.

*Hoag Urgent Care*



*August 29, 2017*
*Page 10 of 10*

    B.      Keen-Summit's duties hereunder run solely to the Company.  All advice, written or oral, provided by Keen-Summit to the Company pursuant to this Agreement is intended solely for the use and benefit of the Company, which agrees that such advice may not be disclosed publicly or made available to third parties without the prior written consent of Keen-Summit.  Keen-Summit may condition the granting of such prior written consent upon obtaining a non-reliance letter and release from any such third parties.

    C.      The provisions of this section of the Agreement shall survive the termination of this Agreement.

XV.    **Successors and Assigns/Change of Control**.  Upon the Effective Date of this Agreement, it shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns.  The Company's obligations hereunder shall survive any change in control or ownership of the Company.  In the event the proceeding is converted from the Chapter 11 to Chapter 7, this Agreement shall remain in full force and effect.  The provisions of this section of the Agreement shall survive the termination of this Agreement.

# EXHIBIT B



# Matthew Bordwin

Home » **Contact Us** » Matthew Bordwin



### *Matthew Bordwin*

Principal and Managing Director
(646) 381-9202
Email vCard

## Experience

Matthew is responsible for all aspects of business development and execution at Keen-Summit Capital Partners. He focuses primarily on the development of new business, marketing and implementing strategic real estate plans for his clients. Those plans involve real estate analysis, real estate acquisitions and dispositions, lease modifications and terminations, and corporate finance and capital market services. Matthew has more the 19 years of real estate advisory and transactional experience, which particular expertise in workouts and restructurings, specializing in strategic planning, the sale of real estate assets and lease negotiations. He has represented financial, corporate and retail clients. As a recognized expert on real estate restructuring issues, Matthew is a frequent speaker on industry topics, has been quoted in national and industry publications. Matthew is a current member of the National Board of Trustees of the Turnaround Management Association and former member of the national Board of Directors of the American Bankruptcy Institute.

## Representative Clients

Federal Receiver in Peregrine Financial

Long Island National Golf Course

Blockbuster

Tommy Hilfiger

Silverpoint

Cable & Wireless

Fleming

Warnaco

Dollar General

Club at Cordillera


Citibank

Arthur Anderson

Food Locker

Angelo Gordon

Yucaipa

Family Golf Centers

Spiegel

Casual Male

Esprit

Aziz Convenience Stores


## Education

BA, 1991, Tufts University, Medford, MA

JD, 1994, Fordham University School of Law, New York, NY

## Licenses/Certifications

Licensed Real Estate Broker

General Securities Representative (Series 7)

Registered Principal (Series 24)

Case 8:17-bk-13077-TA    Doc 82    Filed 08/29/17    Entered 08/29/17 13:47:43    Desc
Main Document      Page 27 of 27

Securities Agent (Series 63)

Investment Banking Representative (Series 79)

## Memberships in Organizations

International Council of Shopping Centers

Turnaround Management Association (former Member of National Board of Trustees)

American Bankruptcy Institute (former Member of National Board of Directors)

New York State Bar

## Prior Experience

GA Keen Realty Advisors, Co-President, 2010-2014

KPMG LLC, Principal, 2009-2010

KPMG Corporate Finance, Managing Director, 2007-2010

Keen Consultants, Vice President and Principal, 1996-2007